# EXHIBIT 28

# EXHIBIT 28

# EXHIBIT 28A

1

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

MAY 1 7 2005

PATRICIA PRESLEY, COURT CLERK
By_____
Deputy

COPY

RECEIVED

JUL 0 6 2005
OIDS
APPELLATE DIVISION

```
 1            IN THE DISTRICT COURT OF OKLAHOMA COUNTY,

 2                        STATE OF OKLAHOMA

 3   STATE OF OKLAHOMA,          )

 4            PLAINTIFF,         )

 5   Vs.                         )       Case No.  CF-02-46

 6   ZJAITON WOOD,               )

 7            DEFENDANT.         )

 8

 9                   TRANSCRIPT OF JURY TRIAL

10           HAD ON THE 20th DAY OF SEPTEMBER, 2004

11                         BEFORE THE

12                   HON. RAY C. ELLIOTT

13                      DISTRICT JUDGE

14

15   APPEARANCES:

16           Ms. Fern Smith and Mr. George Burnett,

17   Assistant District Attornys, Oklahoma County District

18   Attorney's Office.  Oklahoma County Office Building,

19   Oklahoma City, Oklahoma.

20           Mr. L. Wayne Woodyard and Mr. Lynn Burch,

21   Attorney at Law, Oklahoma Indigent Defense System, Norman,

22   Oklahoma, appearing on behalf of the defendant Zjaiton

23   Wood.

24   REPORTED BY:  Barbara A. Ross, CSR, RPR.  Oklahoma County

25   Courthouse, Suite 700, Oklahoma City, Oklahoma.
```

1    statement with the qualification, if you will, that the

2    state will be directed not in anyway to argue that he is

3    in fact the stabber because unless there is evidence

4    presented that wasn't presented in the last trial, which I

5    assume doesn't exist or one side or the other would have

6    mentioned it today, because I think if they do that then

7    they are arguing inconsistent theories.  So it will be

8    sustained with that qualification.  Any clarification

9    needed?

10            MS. SMITH:  Yes, your Honor.  Will the state be

11   allowed to argue that -- I believe there was evidence that

12   the knife did in fact belong to Mr. Zjaiton Wood --

13            THE COURT:  Absolutely.

14            MS. SMITH:  -- that but for him Mr. Termane Wood

15   would not have been where he was.  Would not have done

16   what he did.  That kind of evidence.  Not that Mr. Termane

17   Wood -- we believe from the evidence that we heard that

18   Mr. Termane Wood was in fact the stabber.  But we also

19   believe it doesn't really matter, since it is felony

20   murder.  But we also believe that Mr. Zjaiton Wood is

21   really the worst of the two of them, considering the

22   evidence that we know about and that but for Mr. Zjaiton

23   Wood, Termane Wood would not have acted in the manner he

24   did.

25            THE COURT:  Certainly.  You will be allowed to

# EXHIBIT 28B

1

```
 1              IN THE DISTRICT COURT OF OKLAHOMA COUNTY

 2                        STATE OF OKLAHOMA

 3    STATE OF OKLAHOMA,           )

 4              PLAINTIFF,         )

 5    Vs.                          )        Case No. CF-02-46

 6    ZJAITON TYRONE WOOD,         )

 7              DEFENDANT.         )
```

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

MAY 1 7 2005

PATRICIA PRESLEY, COURT CLERK
By
Deputy

F-2005-246

# ORIGINAL

```
 8

 9              TRANSCRIPT OF JURY TRIAL

10         HAD ON THE 23rd DAY OF FEBRUARY, 2005

11                    BEFORE THE

12              HON. RAY C. ELLIOTT

13                 DISTRICT JUDGE
```

**FILED**
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

JUL 1 1 2005

MICHAEL S. RICHIE
CLERK

```
15    APPEARANCES:

16              Ms. Fern Smith and Mr. George Burnett,

17    Assistant District Attornys, Oklahoma County District

18    Attorney's Office.  Oklahoma County Office Building,

19    Oklahoma City, Oklahoma.

20              Ms. Wayna Tyner, Mr. L. Wayne Woodyard and

21    Mr. Lynn Burch, Attorney at Law, Oklahoma Indigent Defense

22    System, Norman, Oklahoma, appearing on behalf of the

23    defendant Zjaiton Wood.

24    REPORTED BY:  Barbara A. Ross, CSR, RPR.  Oklahoma County

25    Courthouse, Suite 700, Oklahoma City, Oklahoma.
```

1  A. He said that he wishes --

2  Q. Not concerning you, but just the death of

3 Mr. Ronnie Wipf?

4  A. That he killed Ronnie Wipf.

5  Q. Does he refer to him some way?

6    MS. TYNER:  Objection, your Honor.

7    THE COURT:  Sustained.

8  Q. (Ms. Smith)  He said he killed Ronnie Wipf?

9  A. Yes.

10    MS. SMITH:  Thank you.  Pass the witness, your

11 Honor.

12    THE COURT:  All right.  Ladies and gentlemen, it

13 is 12:20.  We will take our recess at this time.  I

14 discussed it with the lawyers.  We will reserve cross-

15 examination until after lunch.  It is 12:20.  Let's be on

16 our noon recess until ten minutes until two.  Ten minutes

17 until two.  I remind you the room upstairs is available

18 during this break if you wish to use it.  I must remind

19 you, the admonition is in full force and effect.  Anyone

20 need it repeated raise your hand.  No hands raised.

21 Again, the case ask on-going.  You heard testimony and

22 evidence, but the case is not over.  Do not form or

23 express any opinions in reference to this case.  Do not

24 discuss the case with anyone else or allow anyone to

25 discuss the case with you.  That includes each other.  You

1    Q.   And did you hear at that time in April of 2004,

2    during that trial, the defendant in this case Zjaiton Wood

3    testify under oath?

4    A.   I did.

5    Q.   And have you seen a transcript of the proceedings

6    in which Mr. Zjaiton Wood testified in that trial?

7    A.   Yes, I have.

8    Q.   I'm going to ask you some questions about the

9    questions that were asked and the answers that Mr. Zjaiton

10   Wood gave during that trial.

11          MR. WOODYARD:   Renew our objection for the

12   previously stated reasons.

13          THE COURT:   Yes.   Noted for the record and

14   overruled.   You may proceed, Ms. Smith.

15          MS. SMITH:   Thank you.

16   Q.   Detective Ricketts, did you hear the defendant

17   Zjaiton Wood testify that Ronnie Wipf was fighting for his

18   life in that room?

19   A.   I did.

20   Q.   And did you hear the defendant Zjaiton Wood

21   testify that Ronnie Wipf screamed in pain when he was

22   stabbed?

23   A.   Yes, ma'am, I did.

24   Q.   And did you hear the defendant Zjaiton Wood

25   testify that he killed Ronnie Wipf?

```
 1        A.    I did.
 2        Q.    Do you recall when the defendant Zjaiton Wood
 3   testify, him giving a reason why he had killed Ronnie
 4   Wipf?    Do I need to refresh your memory?
 5        A.    That is why he killed him?
 6        Q.    Yes.
 7        A.    They were involved in a fight.   They were
 8   fighting.   A person in the room was fighting with
 9   Mr. Wipf.   And had hollered for help.   And the defendant
10   went to that person's aid and began fighting with Mr. Wipf
11   there.
12        Q.    Do you recall Mr. Zjaiton Wood saying that he
13   killed Ronnie Wipf just to let Ronnie know that he was a
14   force to be reckoned with?
15        A.    Yes.
16        Q.    Mr. Zjaiton Wood said that?
17        A.    Yes, he said that.
18        Q.    And did you -- were you present in the courtroom
19   when Zjaiton Wood testified that Mr. Ronnie Wipf was
20   moaning --
21        A.    I was.
22        Q.    -- after he was stabbed?
23        A.    Yes.
24        Q.    Were you present in the courtroom when the
25   question was asked of Mr. Zjaiton Wood did he take the
```

# EXHIBIT 28C

1

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

MAY 1 7 2005

PATRICIA PRESLEY, COURT CLERK

By_____
DEPUTY

1              IN THE DISTRICT COURT OF OKLAHOMA COUNTY

2                       STATE OF OKLAHOMA

3    STATE OF OKLAHOMA,           )

4              PLAINTIFF,          )

5    Vs.                          )    Case No.  CF-02-46

                                       F-2005-246

6    ZJAITON WOOD,                )

7              DEFENDANT.          )    **ORIGINAL**

8

9                  TRANSCRIPT OF JURY TRIAL

10          HAD ON THE 24th DAY OF FEBRUARY, 2005

11                     BEFORE THE

                                   **FILED**
                          IN COURT OF CRIMINAL APPEALS
12              HON. RAY C. ELLIOTT        STATE OF OKLAHOMA

13                   DISTRICT JUDGE        **JUL 1 1 2005**

14   APPEARANCES:                  MICHAEL S. RICHIE
                                        CLERK

15          Ms. Fern Smith and Mr. George Burnett,

16   Assistant District Attornys, Oklahoma County District

17   Attorney's Office.  Oklahoma County Office Building,

18   Oklahoma City, Oklahoma.

19          Ms. Wayna Tyner, Mr. L. Wayne Woodyard and

20   Mr. Lynn Burch, Attorney at Law, Oklahoma Indigent Defense

21   System, Norman, Oklahoma, appearing on behalf of the

22   defendant Zjaiton Wood.

23   REPORTED BY:  Barbara A. Ross, CSR, RPR.  Oklahoma County

24   Courthouse, Suite 700, Oklahoma City, Oklahoma.

25

1  Warden's testimony. The fact that Casey Warden (sic) said
2  that she was taking this defendant over to Linda Wood's
3  house after the commission of the crime is corroboration
4  of Brandy Warden's testimony. Brandy Warden testified to
5  that. Casey Odell, who is not an accomplice, came in and
6  told you, yes, that's true. That's corroboration.
7  Another corroboration is this defendant's admission that
8  he killed Ronnie Wipf. That's his own statement. This
9  defendant. His admission that he killed Ronnie Wipf when
10  he wrote a letter to Brandy Warden saying, "I killed
11  Ronnie Wipf." Linda Wood's testimony that Zjaiton and
12  Termane were in the Wal-Mart photographs buying the gloves
13  and masks. That's corroboration for Brandy Warden's
14  testimony. Coleman Givens, the man who was in Room 404 at
15  the motel that night corroborates Brandy Warden. He
16  identified the voice of Zjaiton Wood from the shouting
17  that he heard in Room 204. And then later on in court,
18  Zjaiton Wood told Coleman, "Don't say an F'ing thing."
19  Coleman Wood (sic) came and testified Zjaiton Wood said,
20  "Don't say an F'ing thing." That is corroboration of
21  Brandy Warden's testimony.

22       The phone calls to the defendant's pager from the
23  motel, that is corroboration. Andre Wood, the defendant's
24  own brother, older brother, the drawing of the knife that
25  he made to Detective Ricketts. And you heard Detective

1  the blood had been to the defendant you would have heard

2  about it.  If it had been from anybody other than Ronnie

3  Wipf, you would have heard about it.

4      You look at the photographs.  You will have them

5  with you.  He pulled that knife out of his chest and laid

6  it on the bed.  Fell down in between the beds and died.

7  Bled all over everything.  It was Ronnie Wipf's blood in

8  that room.  If there had been anything else, you would

9  have heard about it.  This is not "CSI Miami."  You don't

10 decide this case on what you don't hear.  You decide it on

11 what you do hear.  That's what the law says.

12      Ms. Tyner says, Well, Andre Wood told you that

13 this is not -- State's Exhibit No. 3 -- this is not

14 Zjaiton's knife.  I submit to you, Zjaiton Wood said it's

15 his knife and he said it's the knife he used to kill

16 Ronnie Wipf.

17      Miss Tyner says, well the defendant took the

18 stand in his brother's trial.  Yes, he did.  He took the

19 stand and he admitted killing Ronnie Wipf just to show

20 Ronnie Wipf he was a force to be reckoned with.  I submit

21 to you, ladies and gentlemen, it's time for Zjaiton Wood

22 to be held accountable for the murder that he committed of

23 Ronnie Wipf.  And it's your job to follow the law that the

24 Judge gives you and to hold him accountable under the

25 law.  Thank you.

# EXHIBIT 28D

1

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

1          **IN THE DISTRICT COURT OF OKLAHOMA COUNTY**
                      **STATE OF OKLAHOMA**        MAY 1 7 2005
2
                                         PATRICIA PRESLEY, COURT CLERK
3    STATE OF OKLAHOMA,           )      By_____
                                  )            Deputy
4          Plaintiff,             )
                                  )      F-2005-246
5    vs.                          )      Case No. CF-02-46
                                  )
6    ZJAITON TYRONE WOOD,         )
                                  )
7          Defendant.             )      **ORIGINAL**

8
                    *  *  *  *  *  *  *  *  *
9
            **TRANSCRIPT OF JURY TRIAL PROCEEDINGS**
10
        **HAD ON THE 28TH DAY OF FEBRUARY, 2005, BEFORE**
11
        **THE HONORABLE RAY C. ELLIOTT, DISTRICT JUDGE**
12
                    *  *  *  *  *  *  *  *  *
13

14
     **APPEARANCES:**
15
         MS. FERN SMITH and MR. GEORGE BURNETT, Assistant
16   District Attorneys, Oklahoma County District Attorney's
     Office, 320 Robert S. Kerr, 505 County Office Building,
17   Oklahoma City, Oklahoma, appearing on behalf of the State
     of Oklahoma.
18
         MS. WAYNA L. TYNER, MR. L. WAYNE WOODYARD, and MR.
19   LYNN BURCH, Attorneys at Law, Oklahoma Indigent Defense
     System, Norman, Oklahoma, appearing on behalf of the
20   defendant, Zjaiton Tyrone Wood.

21                                       **FILED**
                                    IN COURT OF CRIMINAL APPEALS
22   **REPORTED BY:**                   STATE OF OKLAHOMA

23   Barbara A. Ross, CSR, RPR            JUL 1 1 2005
     Official Court Reporter
24   Oklahoma County Courthouse        MICHAEL S. RICHIE
     Oklahoma City, Oklahoma               CLERK
25

          DISTRICT COURT OF OKLAHOMA COUNTY - OFFICIAL TRANSCRIPT

1   going into that room during the commission of a robbery.

2   It is a felony murder and it happened in the commission

3   of the robbery.  It is part and parcel of this robbery.

4          MR. BURCH:  Well, the imputation rules that

5   occur under felony murder and the joint and several

6   liability in a way that occurs under that theory of first

7   degree murder do not apply in the same fashion when we're

8   talking about individualized sentencing under aggravating

9   circumstances for the death penalty.

10          THE COURT:  I would agree.

11          MS. SMITH:  I might inform the Court that I

12   believe the jury in the other case did in fact find that

13   aggravating circumstance, so the evidence was sufficient

14   at least to convince that jury beyond a reasonable doubt

15   that aggravating did in fact occur.

16          THE COURT:  Yeah.  But I don't think Mr. Albert

17   filed an objection either, as I recall, but he might

18   have.  I don't recall that he filed an objection.  I

19   think they found it in Littlejohn -- the jury found it in

20   Littlejohn too, but the Court of Criminal Appeals didn't

21   agree.

22          MS. SMITH:  We believe it's a question of fact

23   for the jury.

24          THE COURT:  Mr. Woodyard, how do you get by the

25   statement that was quoted in your brief, the italicized

```
 1              Those two cases allow you the authority to seek
 2   the death penalty against someone that you don't believe
 3   actually thrust the knife into a person's chest, for
 4   example.  So I don't think those cases have anything to
 5   do with the issue today.
 6              All right.  Anything else?  You get the last
 7   word.
 8              MR. WOODYARD:  No, sir.
 9              THE COURT:  Well, I think when you look at
10   Littlejohn and combine it with Powell, that the Court of
11   Criminal Appeals, whether people like it or not, that's
12   the law, has narrowed the use of the aggravating
13   circumstance great risk of death to more than one person.
14   And it doesn't matter whether I like it or not.  That's
15   not the issue.  It doesn't matter whether anybody likes
16   it or not.  That's the law until it's changed.
17              But it appears that it began a narrowing of the
18   use of great risk of death to more than one person.  And
19   when you look at Littlejohn and Powell and combine the
20   holdings of those two opinions, it seems clear to me that
21   it's an inappropriate aggravator in this case based upon
22   the evidence that has been presented to me in this case.
23   So the motion to strike that aggravator will be
24   sustained.
25              MS. SMITH:  Your Honor, we would inform the
```

# EXHIBIT 28E

1

FILED IN THE DISTRICT COURT
OKLAHOMA COUNTY, OKLA.

1          IN THE DISTRICT COURT OF OKLAHOMA COUNTY
                                              MAY 1 7 2005
2                   STATE OF OKLAHOMA PATRICIA PRESLEY, COURT CLERK
                                          By
3    STATE OF OKLAHOMA,          )              Deputy

4              PLAINTIFF,        )

5    Vs.                         )    Case No.  CF-02-46

6    ZJAITON WOOD,               )

7              DEFENDANT.        )

8

9                   TRANSCRIPT OF JURY TRIAL

10             HAD ON THE 1st DAY OF MARCH, 2005

11                      BEFORE THE

12                 HON. RAY C. ELLIOTT

13                    DISTRICT JUDGE

14

15   APPEARANCES:

16        Ms. Fern Smith and Mr. George Burnett,

17   Assistant District Attornys, Oklahoma County District

18   Attorney's Office.  Oklahoma County Office Building,

19   Oklahoma City, Oklahoma.

20        Ms. Wayna Tyner, Mr. L. Wayne Woodyard and

21   Mr. Lynn Burch, Attorney at Law, Oklahoma Indigent Defense

22   System, Norman, Oklahoma, appearing on behalf of the

23   defendant Zjaiton Wood.

24   REPORTED BY:  Barbara A. Ross, CSR, RPR.  Oklahoma County

25   Courthouse, Suite 700, Oklahoma City, Oklahoma.

```
 1  suffering of others.  That's the test.  Zjaiton Wood
 2  enjoyed the murder of Ronnie Wipf.  And his letter to
 3  me -- and you will have it in the courtroom with you -- in
 4  the jury room with you -- in his letter to me Zjaiton Wood
 5  described his enjoyment of the suffering of Ronnie Wipf.
 6  And his letter he said, "When I entered that motel room
 7  and stuck that gun in that pecker wood's face, I had a
 8  hard on.  And when I stabbed that dead punk, I almost came
 9  on myself.  To feel the power of that knife slice through
10  the human tissue was a feeling like no other."  How does
11  that make you feel in your heart?  Does that fit the
12  instruction of enjoyment of the suffering of others?  I
13  submit to you, of course, it does.  Is that evil and
14  vile?  Of course, it is.  The Judge tells you, was the
15  death of the victim proceeded by torture or serious
16  physical abuse?  I submit to you that the abuse inflicted
17  to Ronnie Wipf in this case was so serious that it caused
18  his death.  You look at that knife.  You look at the wound
19  and ask yourselves whether or not that was serious
20  physical abuse.  You look at the photos of the defensive
21  wounds to Ronnie Wipf's hands.  He was in a fight for his
22  life.  Did Ronnie Wipf suffer?  He didn't just lay down
23  and die.  He suffered.  That knife was stuck in his chest
24  five inches into his chest.  He walked around in his own
25  blood.  You will have the pictures up there and you have
```

1  Ronnie Wipf's life.  And he knew it was wrong, but he
2  chose to take that innocent life.
3         You've got an  instruction that tells you later
4  on that you may consider mitigating circumstances and when
5  you are reading that mitigating circumstance evidence,
6  remember that Andre Wood, you saw him testify from the
7  witness stand, this is the defendant's older brother.  He
8  is a responsible citizen.  He worked at The Bricktown
9  Brewery for two-and-a-half years as the kitchen manager.
10 He is holding a job now.  And he's not a violent man.  He
11 was raised up in the same environment as this defendant.
12 This defendant testified in his brother's trial, "I killed
13 him because I wanted him to know I was a force to be
14 reckoned with."  You don't cross Zjaiton Wood.  If you do,
15 you die.  Brandy Warden, the letter that he wrote to
16 Brandy Warden is proof of that.  She testified against
17 him.  She crossed Zjaiton Wood and he wants to kill her.
18 I submit to you just like he said in that letter to me, if
19 he is ever unhandcuffed he will get the job done.  He made
20 choices to murder Ronnie Wipf and he will kill again if he
21 gets the chance.  That is a continuing threat to society.
22         Zjaiton Wood has hurt people all of his adult
23 life.  He has been in and out of jail.  These are the ones
24 that you heard evidence about.  Robbery by fear, either in
25 Payne or Logan County, I can't remember which, but you

 1  have the judgment and sentence that tells you.    The
 2  robbery of Keramat Taghizaeh, the little 5'3,", 120 pound
 3  man didn't do anything except made Zjaiton Wood mad.   He
 4  went in and like he should have done pressed the alarm.
 5  Made Zjaiton Wood mad and what did Zjaiton Wood do?   He
 6  beat him in the head with the gun after he had already
 7  fired a shot.   Zjaiton Wood fights with guards in prison
 8  and in jail.   You heard one of the jailers from the
 9  Oklahoma County Jail tell you that Zjaiton Wood is housed
10  on the 12th floor in administrative segregation because of
11  the 2600 inmates in the county jail this defendant Zjaiton
12  Wood is one of the 50 worst.   Somewhere between one and 50
13  he is one of the 50 worst.

14          You also heard from one of the Department of
15  Correction guards that Zjaiton Wood was on administrative
16  segregation when he was in prison, where they put the
17  worst of the worst.   That is Zjaiton Wood.   He fights with
18  inmates.   He fights with guards.   He beats up his
19  girlfriend Laura Clark.   He robbed Arnold Kleinsasser at
20  gunpoint.   He murdered Ronnie Wipf with a knife.   He
21  threatened to murder Brandy Warden.

22          MR. WOODYARD: Objection, your Honor.   May we
23  approach?

24          THE COURT:   Yes.

25          (Thereupon an up-to-the-bench discussion was had

```
 1    threshold requirement --
 2            MS. SMITH:  Your Honor, I object to the speaking
 3    objection.
 4            THE COURT:  Sustained the extent that the jury
 5    has heard the evidence.  I've told you numerous times in
 6    the instructions, the jury decides what the evidence is.
 7    Not me.  Not the lawyers.  You have the instructions to
 8    combined with the evidence in arriving at your verdicts.
 9    So let's move on.
10            MS. SMITH:  All right.  I submit to you when you
11    look at number four you also consider the fact that you
12    have evidence from this defendant's mouth that was
13    testified to in the first stage of the trial that he did
14    in fact murder Ronnie Wipf.  You also have some letters
15    where he, himself, said he murdered Ronnie Wipf.  Not only
16    did he murder Ronnie Wipf, he liked it.  He enjoyed it.
17    How in the world does that mitigate or reduce his moral
18    culpability?  I submit to you it does not.  The defendant
19    testified on behalf of his brother Termane Wood in order
20    to protect his brother.  Well, if you heard that evidence
21    then you should consider it.  But how does that reduce his
22    degree of moral culpability or blame?  How does that
23    reduce his degree of moral culpability or blame?  If he
24    gets up and tells the jury, "I did it," how does that make
25    him less culpable?  If you believe that mitigates the
```

1  between these beds and bled all over this.  You saw the

2  blood on him and blood on the bottom of his feet where he

3  walked in his own blood.  You think for a minute he didn't

4  experience physical suffering?

5          They talk about bringing reality.  Talk about a

6  higher standard.  Higher life.  Well, let's talk about

7  reality, because this is reality right here.  This young

8  man died a terrible death in this motel room.  A death he

9  didn't deserve to die.

10          Regardless of the things that he did, the

11  decisions he made, he does not deserve what happened to

12  him that night.  It comes at the hands of this defendant

13  right here (indicating).  He admitted to you.  It is not

14  wishful thinking.  We showed he is a principal by his

15  admission, by his intent.  We showed the victim fought.

16  That is what changed this case.  That is what changed what

17  happened that night.  That is what shows why he committed

18  this killing.  The victim fought.  They lost control of

19  the situation.  They had control of the robbery at the

20  pizza place.  They had a totally submissive victim.  They

21  lost control in this robbery and that's when they decided

22  they would have to shoot the bastard.  And that is why

23  they decided they would have to plunge a knife into his

24  chest.  Two assailants.  The girls testified to arm in

25  arm, hand in hand, shoulder to shoulder.  Those two men

1  his previous robbery conviction, prior conviction.  Show
2  the threat  to Coleman Givens, continuing threat.  Show
3  the letter that he enjoyed killing  Ronald Wipf,
4  continuing threat.  We finally show he hurt the pizza
5  robbery·victim when he didn't have to, continuing threat.
6  What this does, ladies and gentlemen, it points all of the
7  evidence to Zjaiton Wood deserving the death penalty.
8  This man deserves to die.  He deserves it.  He earned it.
9  We are asking you to follow the law and do what the law
10  requires of you.  The law requires, ladies and gentlemen,
11  when you break the law, with the evidence in this case,
12  when you show that this particular man does the things --
13  you look at all the evidence.  You look at all of the
14  instructions and you weigh everything they talked about.
15  We talked about heinous, atrocious and cruel when a young
16  man's life is taken with (indicating) this.  Was he a
17  major participate in a felony?  When Ronnie Wipf (sic)
18  testified he was down on his hands and knees being robbed,
19  being tapped on the head with the knife blade that is
20  heavy.  Try it.  A major participant, when they went back
21  and forth and the man with the gun threatened him and he
22  described that gun.  Went back and swapped places.
23  Disregard for human life, you think a person that would
24  use something like this (indicating) on another human
25  being has disregard for human life?  You think the last

1   time Arnold Wipf (sic) saw his friend he was laying over

2   here by a room.  And he saw this young man being stabbed

3   to death in a struggle for his life with two assailants,

4   and one is identified as him (indicating.)

5          You know the kind of evidence that we have proven

6   in this case.  He is a significant threat.  He intended to

7   kill.  He admitted to taking the life.  Significant

8   evidence in this case.

9          The bottom line, ladies and gentlemen, this

10  defendant in his letter said, "I'm a force to be reckoned

11  with" and Ronnie Wipf had to die because he was being a

12  bad boy.  He told them he was a force to be reckoned

13  with.  I submit to you, ladies and gentlemen, he has told

14  you he is a force.  This evidence we have proven all four

15  aggravators.  We have shown the mitigation does not

16  deserve him getting life or life without parole.  He says

17  he is a force to be reckoned with --

18          MR. WOODYARD Objection, your Honor.

19          MR. BURNETT: -- put an end to the force.

20          MS. TYNER:  The prosecutor had his finger pointed

21  at my client.  He had his finger probably about three feet

22  away from my client's face, just for the record.

23          THE COURT:  The record will reflect that.  Are

24  you finished?

25          MR. BURNETT: Yes, your Honor.

# EXHIBIT 29

# EXHIBIT 29

**IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA**

FILED
IN COURT OF CRIMINAL APPEALS
STATE OF OKLAHOMA

MAY - 4 2011

MICHAEL S. RICHIE
CLERK

| | |
|---|---|
| KASSIE LAKEI BILLS, | ) |
| Appellant, | ) NOT FOR PUBLICATION |
| v. | ) Case No. F-2009-404 |
| THE STATE OF OKLAHOMA, | ) |
| Appellee. | ) |

## OPINION

**A. JOHNSON, PRESIDING JUDGE:**

Appellant Kassie Lakei Bills was tried by jury in the District Court of Oklahoma County, Case No. CF-2007-1894, and found guilty of First Degree Murder, in violation of 21 O.S.Supp.2006, § 701.7. The jury set punishment as Life Imprisonment Without the Possibility of Parole. The Honorable Ray C. Elliott, who presided at trial, sentenced Bills accordingly. Bills appeals, raising the following propositions of error:

1.     the trial court exceeded its appropriate role in instructing the jury during *voir dire*;

2.     the trial court deprived her of her constitutional rights by unduly restricting her ability to examine prospective jurors on the insanity defense during *voir dire*;

3.     the trial court violated her constitutional rights by refusing to instruct the jury on the lesser offenses of first degree manslaughter and second degree murder;

4.    the trial court abused its discretion by failing to exclude opinion testimony from a police officer;

5.    the trial court violated her constitutional rights by allowing the State to introduce irrelevant character evidence that had nothing to do with the offense charged;

6.    the admission of a pre-mortem photograph of the victim violated her due process right to a fair trial and that Section 2403 of the Oklahoma Evidence Code is unconstitutional;

7.    trial counsel was constitutionally ineffective; and

8.    an accumulation of error deprived her of due process of law.

Bills also requests an evidentiary hearing on her Sixth Amendment claims of ineffective assistance of counsel.

For the reasons set out below, we conclude that Bill's conviction should be reversed and remanded to the District Court for a new trial. We also find that her application for an evidentiary hearing should be denied as moot.

## DISCUSSION

In her first proposition of error, Bills claims that the trial court made numerous improper comments during *voir dire* that denied her due process and a fundamentally fair trial. Among other things, Bills complains that the trial court judge gave instructions during *voir dire* that were designed to influence the jurors about the necessity of reaching a verdict and that these instructions had a coercive effect on the jury. Because Bills did not object to the instructions, we review only for plain error. *See McElmurry v. State*, 2002

2

OK CR 40, ¶ 26, 60 P.3d 4, 16-17 (holding that objections to nature or extent of *voir dire* that are not made before start of testimony are waived except for plain error).

"An important aspect of *voir dire* is to educate prospective jurors on what will be asked of them under the law." *Eizember v. State*, 2007 OK CR 29, ¶ 40, 164 P.3d 208, 221. However, a trial court must not influence jurors in their decision making process. *Johnson v. State*, 2009 OK CR 26, ¶ 4, 218 P.3d 520, 522. The Oklahoma Uniform Jury Instructions-Criminal (2d) are comprehensive instructions that follow a chronology designed to give jurors as much information as they need about the trial proceedings. Trial courts should follow the introductory information provided in the Oklahoma Uniform Jury Instructions. If the court determines that jurors should be instructed on a matter not included within the Uniform Jury Instructions, the court may give an instruction that is "simple, brief, impartial and free from argument." 12 O.S.2001, § 577.2. Analogies and examples may be used to illustrate the uniform opening instructions, but trial courts should be objective and careful not to appear to guide the jury to a particular decision. *Johnson*, 2009 OK CR 26, ¶ 4, 218 P.3d at 522.

In this instance, while the trial court judge incorporated material from the uniform instructions into the *voir dire* proceeding, he also included his own additional commentary on the deliberation process. In particular, the court told the prospective jurors:

3

> [Y]our job is a very narrowly defined responsibility, to
> see if the State has met their burden to each of the
> listed elements.      Nothing more, nothing less.
> Otherwise, you're going to be that run-away jury and
> you may be up there for months trying to reel
> yourselves in. So that's what I said earlier, when you
> get up there and if one of your fellow jurors starts to
> stray off, gets far outside of this narrowly defined
> responsibility, the other eleven of you have got to go,
> wait a minute, let's go, we don't want to be up here all
> day, all week, all month, all year. Let's get the case
> decided within the rules of what the Judge gave us.
> Let's play by the rules. You, too, come on in number
> 12. Okay? Everybody understand? Okay.

(Tr. Vol. 1, 158). Then, a few moments later, he said:

> Jury duty is not rocket science.  Okay?  Everybody
> understand the point I'm trying to make? So don't be
> one of those hard-heads, so to speak. My mother used
> to call me a hard-head all the time.  I never really
> understood until I became a judge. When the lawyers
> started calling me that, I kind of understood, maybe.
> So don't be one of those hard-heads and say, well, you
> know, there's no way I can figure out what somebody
> else is intending. Sure you can. Sure you can. You
> look at all surrounding and attending circumstances.

(Tr. Vol. 1, 169). By making these comments, the trial judge obviously was

trying to instruct the jury on how to avoid deadlock.    In that sense, these

comments are similar to a so-called *Allen* charge that a judge gives to a

deadlocked jury.[1]    Normally, however, an *Allen* charge, or deadlocked jury

---

[1] In *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), the United States Supreme Court found that a supplemental instruction to deliberating jurors urging them to continue discussing the evidence and to listen "to each other's arguments," but also emphasizing that "the verdict must be the verdict of each individual juror, and not the mere acquiescence in the conclusion of his fellows," was proper. An instruction of this type, issued to a deliberating, but apparently deadlocked jury, is known as an *Allen* charge.     The fundamental principle of *Allen* charge jurisprudence is that a defendant has "the right to have the jury speak without being coerced." *United States v. Burgos*, 55 F.3d 933, 936 (4th Cir. 1995)(quoting *United States v. Sawyers*, 423 F.2d 1335, 1341 (4th Cir. 1970)).

instruction, is given only **after** jurors start their deliberations.    *See e.g.,*
*McCarty v. State*, 1995 OK CR 48, ¶ 51, 904 P.2d 110, 125 ("[t]his Court has, in
the past, found no error in the giving of *Allen* instructions after the jury has
announced itself to be deadlocked after several hours of deliberation).    In
*Johnson v. State*, 2009 OK CR 26, ¶ 4, 218 P.3d 520, 522, in a similar
situation, this Court reversed and remanded a case for a new trial where,
among other things, the trial court's *voir dire* comments "about the deliberation
process were premature and effectively a preemptive *Allen* charge."    We have
the same situation here.

In this instance, the trial court's admonition to jurors not to be "hard-
headed" and to reel in fellow jurors who might wander or stray because "we
don't want to be up here all day, all week, all month, all year" is obviously a
preemptive attempt to head off a deadlocked jury by suggesting that majority-
view jurors must be prepared to urge minority-view jurors to abandon their
honestly held convictions if maintaining those convictions would impede a
decision or prolong deliberations.    This is a misstatement of the law as it is set
out in Oklahoma's version of the *Allen* charge, known as the Deadlocked Jury
Charge at Instruction No. 10-11 OUJI-CR(2d).

Instruction No. 10-11 directs jurors to "give respectful consideration to
each other's views" and "resolve any differences and come to a common
conclusion" so the "case may be completed."    It also tells jurors that no juror
"should surrender their honest convictions as to the weight or effect of any
evidence solely because of the opinion of other jurors or because of the

5

importance of arriving at a decision." *Id.* Furthermore, Instruction No. 10-11 tells jurors that "[y]ou may be as leisurely in your deliberations as the case may require and take all the time necessary." *Id.*

To the extent, therefore, that the trial court's *voir dire* comments urged jurors to reach a verdict quickly and urged majority jurors to reel in individual "hard-headed" jurors whose views were impeding a decision, it was a misstatement of the law that was an inherently coercive intrusion into the jury's deliberative process. *See Johnson*, 2009 OK CR 26, ¶ 4, 218 P.3d at 522 ("[i]t is important that each juror make his or her own decision and not be encouraged to abandon their own personal beliefs"); *McCarty v. State*, 1995 OK CR 48, ¶ 51, 904 P.2d 110, 125 (warning that trial court is required to exercise "great caution to say nothing to coerce an agreement or to indicate his feelings in the case"). This was plain error. *See Hancock v. State*, 2007 OK CR 9, ¶ 80, 155 P.3d 796, 815 ("'[p]lain errors are violations of legal rules clear from the appellate record that go to the foundation of the case or take from the defendant a right essential to his defense"). Bills' conviction must be reversed and the case remanded for a new trial.

Because we reverse and remand for a new trial, it is unnecessary to address either Bills' remaining propositions of error or her application for an evidentiary hearing on her claims of ineffective assistance of counsel.

## DECISION

The Judgment and Sentence of the District Court is **REVERSED AND REMANDED FOR A NEW TRIAL.** Bills' application for an evidentiary hearing

is **DENIED AS MOOT**.  Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2011), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY
THE HONORABLE RAY C. ELLIOTT, DISTRICT JUDGE

**APPEARANCES AT TRIAL**
DAVID SMITH
216 E. EUFAULA
NORMAN, OK 73069

SARA McFALL
309 S. PETERS
NORMAN, OK 73069

ATTORNEYS FOR DEFENDANT

DAVID PRATER
DISTRICT ATTORNEY
JENNIFER CHANCE
ASSISTANT DISTRICT ATTORNEY
320 ROBERT S. KERR AVE., STE 505
OKLAHOMA CITY, OK 73102
ATTORNEYS FOR STATE

**APPEARANCES ON APPEAL**
JAMIE D. PYBAS
P. O. BOX 926
NORMAN, OK 73070
ATTORNEY FOR APPELLANT

W. A. DREW EDMONDSON
OKLAHOMA ATTORNEY GENERAL
DONALD D. SELF
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR APPELLEE

**OPINION BY:  A. JOHNSON, P.J.**
LEWIS, V.P.J.:  Concur
LUMPKIN, J.:  Concur
C. JOHNSON, J.:  Concur
SMITH, J.:  Concur

RC

7

# EXHIBIT 30

# EXHIBIT 30

**01**

NO. 79-680
NO. _____

NO. _____

## ARREST REPORT

| IE OF PERSON ARRESTED | | | | | | ALIAS OR NICKNAME(S) | | ARREST DATE |
|---|---|---|---|---|---|---|---|---|
| Gross, Raymond Jr. | | | | | | | | 042779 |

| ADDRESS OF SUSPECT | OCCUPATION | TIME ☐ AM |
|---|---|---|
| 413 S. 1st  Guthrie, Okla | | 8:55 ☒ PM |

| SOCIAL SECURITY NO. | STATE | DRIVER'S LICENSE INFORMATION | | | |
|---|---|---|---|---|---|
| ▓▓▓▓ | | LICENSE NUMBER | TYPE | EXPIRES | |

| AGE | RACE | SEX | EYES | HAIR | HEIGHT | WEIGHT | DATE OF BIRTH | PLACE OF BIRTH | TATTOOES OR ID. MARKS |
|---|---|---|---|---|---|---|---|---|---|
| 33 | N | M | Brn | Blk | 6'3 | 240 | ▓▓ 45 | Guthrie, Okla | Yes, See FP Card |

| WHERE ARRESTED | HOW ARREST MADE: ☐ ON VIEW ☐ CALL ☒ WARRANT | |
|---|---|---|
| ▓▓▓# 219 W. Springer  Guthrie, Okla | WARRANT NO.  SW-79-7 | WARRANT DATE  042779 |

| OFFENSE(S) SUSPECTED OR CHARGED |
|---|
| Operating a Open Salon |

| DATE OFFENSE COMMITTED | TIME | ☐ A.M. | COURT |
|---|---|---|---|
| 042779 | 8:55 | ☒ P.M. | District |

| WHERE OFFENSE COMMITTED | TYPE PREMISES | BUSINESS TRADE NAME |
|---|---|---|
| 219 W. Springer / 402 S. Second  Guthrie, Okla  Unknown | | Unknown |

| ARMED ☐ YES ☒ NO | CHECK ALL ITEMS WHICH APPLY |
|---|---|
| TYPE WEAPON | ☐ DRUNK ☒ DRINKING ☒ CURSED ☐ RESISTED ☐ |

| PREVIOUS ARRESTS | OTHER PERSONS ARRESTED FOR SAME OFFENSE |
|---|---|
| Several w/GPD | None |

| VEHICLE | YEAR | MAKE | MODEL | STYLE | COLOR | LICENSE # | STATE | EXP. | IMPOUNDED ☐ YES ☐ NO |
|---|---|---|---|---|---|---|---|---|---|
| INVOLVED · N/A | | | | | | | | | WHERE |

| PROPERTY PLACED IN PROPERTY ROOM |
|---|
| See Property Card |

| NAME OF COMPLAINANT | RELATION OF COMPLAINANT & SUSPECT - IF ANY? |
|---|---|
| Marang / Eischeid / Harris | None |

| RESS OF COMPLAINANT | | BEST PHONE | OTHER PHONE |
|---|---|---|---|
| 312 W. Oklahoma  Guthrie, Okla | | 282-3535 | |

| WITNESSES NAME. | BEST CONTACT ADDRESS | AGE | BEST PHONE | OTHER PHONE | PARENT OR GUARDIAN |
|---|---|---|---|---|---|
| 1 Larry Pottroff/Earnest Norwood/Wayne | | | | | |
| 2 Collins/Henry Cotton | | | 282-3535 | 282-4100 | |

NOTE FACTS OF ARREST NOT INCLUDED ABOVE.

On this date with a search Warrant I and the above following Officers went to said location. Upon entering the building I went over to the S and advised him that we had a Search Warrant for this place and then I handed the S a copy of the warrant. At that time the above Officers and I started searching for the items mentioned in the warrant. After ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ I started around to the backside of the counter Sgt Pottroff handed me a small foil wrap and when I opened the wrap up I found a green leafy substance believed to be marijuana inside the wrap. Also during the course of the search the items listed on the attached sheet were found and taken into custody ss evidence. I asked Sgt. Pottroff where the foil wrap came from and Sgt. Pottroff advised me that he had seen the S pitch the stuff. Also I observed one person drinking from the cup I took into wvidence.

| ARRESTEE'S RIGHTS GIVEN BY | DATE | TIME | PLACE | |
|---|---|---|---|---|
| Steven Harris | 042779 | 8:55 P.M. | 219 W. Springer | |

| RESULTS OF INVESTIGATION | NCIC # |
|---|---|
| Charged pending in District Court | |

| ARRESTING OFFICERS | REVIEWED BY | FINAL DISPOSITION |
|---|---|---|
| Cotton / Harris | Steven Harris | |

Use supplementary report for additional information not covered above.

AR-1

02

NO. 79-594

NO. 79-595

**ARREST REPORT**

NO. 75-596

NO.

| NAME OF PERSON ARRESTED | ALIAS OR NICKNAME(S) | ARREST DATE |
| --- | --- | --- |
| Cross Raymond | | 4-13-79 |

| ADDRESS OF SUSPECT | OCCUPATION | TIME |
| --- | --- | --- |
| 413 S 1st Guthrie Okla | | 8:00 ☐ AM ☒ PM |

| SOCIAL SECURITY NO. | STATE | DRIVER'S LICENSE INFORMATION LICENSE NUMBER | TYPE | EXPIRES |
| --- | --- | --- | --- | --- |
| / / | | | | |

| AGE | RACE | SEX | EYES | HAIR | HEIGHT | WEIGHT | DATE OF BIRTH | PLACE OF BIRTH | TATTOOS OR ID. MARKS |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| 33 | W | M | BRN | BLK | 6'3 | 240 | | | |

| WHERE ARRESTED | HOW ARREST MADE: ☒ ON VIEW ☐ CALL ☐ WARRANT |
| --- | --- |
| 219 W. Springer | WARRANT NO.      WARRANT DATE |

| OFFENSE(S) SUSPECTED OR CHARGED |
| --- |
| Interferring w/Officer |

| DATE OFFENSE COMMITTED | TIME | COURT |
| --- | --- | --- |
| 4-13-79 | 7:45 ☐ A.M. ☒ P.M. | Mun |

| WHERE OFFENSE COMMITTED | TYPE PREMISES | BUSINESS TRADE NAME |
| --- | --- | --- |
| 219 W. Springer | Club | |

| ARMED ☐ YES ☒ NO | | CHECK ALL ITEMS WHICH APPLY |
| --- | --- | --- |
| TYPE WEAPON | | ☐ DRUNK ☐ DRINKING ☐ CURSED ☒ RESISTED ☒ Interferring |
| PREVIOUS ARRESTS | | OTHER PERSONS ARRESTED FOR SAME OFFENSE |
| Several w/GPD | | None |

| VEHICLE INVOLVED | YEAR | MAKE | MODEL | STYLE | COLOR | LICENSE # | STATE | EXP. | IMPOUNDED ☐ YES ☐ NO |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| N/A | | | | | | | | | WHERE |

| PROPERTY PLACED IN PROPERTY ROOM |
| --- |
| See Property Card |

| NAME OF COMPLAINANT | RELATION OF COMPLAINANT & SUSPECT - IF ANY? |
| --- | --- |
| Sgt. Macana / Off. Harris | None |

| ADDRESS OF COMPLAINANT | BEST PHONE | OTHER PHONE |
| --- | --- | --- |
| 312 W. Okla. Guthrie, OK | 282-3535 | |

| WITNESSES NAME | BEST CONTACT ADDRESS | AGE | BEST PHONE | OTHER PHONE | PARENT OR GUARDIAN |
| --- | --- | --- | --- | --- | --- |
| Lt. Bowers /Off. McAllister | | | 282-3531 | | |
| Res. Off. Williams | | | | | |

NOTE FACTS OF ARREST NOT INCLUDED ABOVE.

while carrying evidence from inside 219 W. Springer to the patrol car as the result of the arrest of 8 persons for City Ordinance Violation the above suspect push me back a step and stated that I was not going to take his beer out this door. After ordering the S to move, numerous times, and in return the Sus shoving me several times I managed to get out & then informed the S that if he attempted in any manner to keep an Officer from doing his (Official) job that the S would be filed on. I again attempted to carry out some evidence and again S stood in front of

| ARRESTEE'S RIGHTS GIVEN BY | DATE | TIME | PLACE |
| --- | --- | --- | --- |
| | | | |

| RESULTS OF INVESTIGATION | NCIC # |
| --- | --- |
| | |

| ARRESTING OFFICERS | REVIEWED BY | FINAL DISPOSITION |
| --- | --- | --- |
| | Lt. Bowers | |

Use supplementary report for additional information not covered above.

COPY

AR-1

03

| FORM OR-1 | | NCIC AGENCY IDENT. NO. | 48. CASE NO. |
| --- | --- | --- | --- |
| | | OKOK20100 | 20-09378 |

| 49. CODE SECTION | 50. CRIME | 51. CLASSIFICATION |
| --- | --- | --- |
| | CITYWallant # 9001028§ 9001028§ | MISD /ARRESt |

| 52. VICTIM'S NAME—LAST, FIRST, MIDDLE, (FIRM IF BUS.) | 53. ADDRESS | RESIDENCE | BUSINESS X | 54. PHONE |
| --- | --- | --- | --- | --- |
| City of Guthrie | 802 W Oklahoma | | | 282-3538 |

| 55. SUSPECT NO. 1 (LAST, FIRST, MIDDLE) | 56. RACE-SEX-ETHNIC ORIGIN | 57. AGE | 58. HT. | 59. WT. | 60. HAIR | 61. EYES | 62. ID NO. OR DOB. | 63. ARRESTED |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Cross Raymond Sr | B/m | 44 | L02250 | BLK | Bro | ▓▓▓/43 | YES ☒ NO ☐ |

| 64. ADDRESS, CLOTHING AND OTHER IDENTIFYING MARKS OR CHARACTERISTICS |
| --- |
| 413 S 1st |

| 65. SUSPECT NO. 2 (LAST, FIRST, MIDDLE) | 66. RACE-SEX-ETHNIC ORIGIN | 67. AGE | 68. HT. | 69. WT. | 70. HAIR | 71. EYES | 72. ID NO. OR DOB | 73. ARRESTED |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | | YES ☐ NO ☐ |

| 74. ADDRESS, CLOTHING AND OTHER IDENTIFYING MARKS OR CHARACTERISTICS | 75. CHECK IF MORE NAMES IN SUPPLEMENT ☐ |
| --- | --- |

On July 20, 1990 at approx ____ hrs, I advised Dispatch that I would be out a 414 S Wentz on subject Raymond Cross Sr DOB/ ▓▓▓ /45 B/m. I then had Dispatch to check warrants on this subject. Dispatch advised that we held two local warrants of this subject for NO Insurance and DUS. subject was then placed under arrest and Transported to GPD where he later released after paying his fine.

| REPORTING OFFICERS | RECORDING OFFICER | TYPED BY | DATE AND TIME | CASE NUMBER |
| --- | --- | --- | --- | --- |
| Deub M | Deuly M | | 8-20-90 | |

| FURTHER ACTION | COPIES TO: | | | |
| --- | --- | --- | --- | --- |
| ☒ YES | ☒ DETECTIVE | ☐ OSBI | | |
| ☐ NO | ☐ JUVENILE | ☐ PATROL | | |
| | ☐ CO. ATTNY. | ☐ OTHER | | |
| | ☐ S.O./P.D. | ☐ OTHER | REVIEWED BY | |

**04**

FORM OR-1

| | NCIC AGENCY IDENT. NO. | 48. CASE NO. |
|---|---|---|
| | OK0120100 | 90-09378 |

| 49. CODE SECTION | 50. CRIME 9001028S | 51. CLASSIFICATION |
|---|---|---|
| | City Warrant 9001028S | MSD /Arrest |

| 52. VICTIM'S NAME—LAST, FIRST, MIDDLE, (FIRM IF BUS.) | 53. ADDRESS | RESIDENCE | X BUSINESS | 54. PHONE |
|---|---|---|---|---|
| City of Duthrie | 870 W Oklahoma | | | 282-3538 |

| 55. SUSPECT NO. 1 (LAST, FIRST, MIDDLE) | 56. RACE-SEX-ETHNIC ORIGIN | 57. AGE | 58. HT. | 59. WT. | 60. HAIR | 61. EYES | 62. ID NO. OR DOB. | 63. ARRESTED |
|---|---|---|---|---|---|---|---|---|
| Cross, Raymond Sr | B/m | 44 | 602 | 250 | Blk | Bro | ▓▓ 43 | YES ☒ NO ☐ |

64. ADDRESS, CLOTHING AND OTHER IDENTIFYING MARKS OR CHARACTERISTICS

413 S 1st

| 65. SUSPECT NO. 2 (LAST, FIRST, MIDDLE) | 66. RACE-SEX-ETHNIC ORIGIN | 67. AGE | 68. HT. | 69. WT. | 70. HAIR | 71. EYES | 72. ID NO. OR DOB | 73. ARRESTED |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | YES ☐ NO ☐ |

| 74. ADDRESS, CLOTHING AND OTHER IDENTIFYING MARKS OR CHARACTERISTICS | 75. CHECK IF MORE NAMES IN SUPPLEMENT |
|---|---|
| | |

On July 20, 1990 at approx ___ hrs, I advised Dispatch
that I would be out a 414 S Wentz on subject Raymond
Cross Sr DoB ▓▓▓ /45 B/m. I then had Dispatch to check
warrants on this subject, Dispatch advised that we held
two local warrants of this subject for NO Insurance and
DUS. Subject was then placed under arrest and Transported to
GPD where he later released after paying his fine.

| REPORTING OFFICERS | RECORDING OFFICER | TYPED BY | DATE AND TIME | CASE NUMBER |
|---|---|---|---|---|
| Denb M | Denb M | | 7-20-90 | |

| FURTHER ACTION | ☑ YES  ☐ NO | COPIES TO: | ☑ DETECTIVE | ☐ OSBI | | |
|---|---|---|---|---|---|---|
| | | | ☐ JUVENILE | ☐ PATROL | | |
| | | | ☐ CO. ATTNY. | ☐ OTHER ___ | | |
| | | | ☐ S.O./P.D. | ☐ OTHER ___ | REVIEWED BY | |

SCOM.QD.OLN/███████ TYP/S.REF/336

MESSAGE ACCEPTED - GUTH 0110 19:03 07/20/90


SCOM        6992 19:03
GUTH        0181 19:03 07/20/90

REFERENCE: 336

INQUIRY BY: GUTH
DRIVER LICENSE MASTER RECORD

*** FLAGGED ***

TYPE:OPERATOR
GROSS,RAYMOND JR
DOB:████/45.  SEX:M    413 S 1ST              EXP/09-93
FR FLAG-SUSPENSION  RAC:N  HGT:604    WGT:225    GUTHRIE    OK 730440000
DI FLAG-NONE                              EYE:BR  RENEWED:11-89
                                               DUP ISSUED/00-00
  *RESTRICTIONS*                         TRAFFIC RECORD-YES
NONE
  *PREVIOUS NAMES*
V .E

SCOM.QD.OLN/███████    ---- END OF RECORD ----
                  TYP/C

```
SCOM.QD.OLN/          .TYP/C

MESSAGE ACCEPTED - GUTH O111 19:04 07/20/90




SCOM       6996 19:04
GUTH       O182 19:04 07/20/90

REFERENCE:
                    INQUIRY BY: GUTH
                DRIVER LICENSE TRAFFIC RECORD
NAM/GROSS,RAYMOND JR          OLN/            DOB/     /45
                ***FOR LAW ENFORCEMENT USE ONLY***
                    ---ARREST CONVICTIONS----
OFFENSE
  DATE       OFFENSE                                DISP
040489 FTA NOTICE (IN-STATE NOTIFICATION)       DATE  CRT CITY/CNTY
040489 RADAR CHECKED SPEEDING VIOLATION         042789 DIS PAYNE
032890 FAIL TO MAINTAIN LIABILITY INSURANCE     101889 DIS PAYNE
                ----DEPARTMENTAL ACTION---      052390 MUN GUTHRIE
  DATE     ACTION
061689 BAIL BOND SUSPENSION - NRVC              STATUTE CASE NO
101889 PROOF OF APPEARANCE                       11155   000891366
012090 CANC/DENIAL - ELIG. FOR REIN WITH PAYMENT OF FEE  270   000891366
032090 LICENSE RECEIVED                          6201   891221037
040990 REINSTATEMENT FEE RECEIVED                317   000000000
040990 REINSTATMENT D.I. DIVISION                270   000891366
040990 REINSTATMENT D.I. DIVISION                270   000891366
061990 F.R. SUSPENSION - FAILURE TO CARRY SEC. VERIFI.  317   891221037
*** CURRENT POINT LEVEL ---> O2                 7605   159808134
                --- END OF RECORD ---
```

**07**

```
NCIC.2L01GUTH 1128.QR.OK0420100.FBI/487879JA6.PUR/C.DPT/GUTHRIE
PD.ATN/OFF DENBY   .BLD/CITY HALL.ADR/312 W OKLAHOMA.CIS/GUTHRIE,
OK.ZIP/73044

MESSAGE ACCEPTED - GUTH 0113 19:07 07/20/90




NCIC      3315 19:07
GUTH      0185 19:07 07/20/90
FL01GUTH 112831840R
OK0420100
THIS INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
RECORD REQUEST FOR FBI/487879JA6.  THE FOLLOWING WILL RESPOND TO YOUR
AGENCY:
  FBI          - FBI/487879JA6

END
```

```
NCIC.1LO1GUTH 1111.QW.OK0420100.NAM/GROSS, RAYMOND JR.
DOB/███45.RAC/B.SEX/M

MESSAGE ACCEPTED - GUTH 0106 18:59 07/20/90




NCIC ·        3233 18:59
GUTH          0178 18:59 07/20/90
1LO1GUTH 11113103QW
OK0420100
NO NCIC WANT DOB/███45 NAM/GROSS, RAYMOND JR SEX/M RAC/B
```

```
NCIC      3316 19:07
GUTH      0186 19:07 07/20/90
4L01GUTH 112831840R
OK0420100
ATN/OFF DENBY
THIS RECORD IS BASED ONLY ON THE FBI NUMBER IN YOUR REQUEST-487879JA6.
BECAUSE ADDITIONS OR DELETIONS MAY BE MADE AT ANY TIME, A NEW COPY
SHOULD BE REQUESTED WHEN NEEDED FOR SUBSEQUENT USE.

                  - FBI IDENTIFICATION RECORD -

WHEN EXPLANATION OF A CHARGE OR DISPOSITION IS NEEDED, COMMUNICATE
DIRECTLY WITH THE AGENCY THAT FURNISHED THE DATA TO THE FBI.

NAME                                FBI NO.      DATE REQUESTED
GROSS,RAYMOND-JR                    487879JA6    07/20/90

SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE
 M    B      ___/45     604     258    BRO   BLK   OKLAHOMA

FINGERPRINT CLASS
DO 16 16 PO 13
PO PM PM PM 13


1-ARRESTED OR RECEIVED 06/16/88
    AGENCY-SHERIFF'S OFFICE STILLWATER (OK0600000)
        AGENCY CASE-88433
        CHARGE 1-AGGRAVATED ASSAULT
        CHARGE 2-VIOLATION OF EMERGENCY PROTECTIVE ORDER


2-ARRESTED OR RECEIVED 06/24/88
    AGENCY-SHERIFF'S OFFICE GUTHRIE (OK0420000)
        AGENCY CASE-20345
        CHARGE 1-OBTAIN FOOD STAMPS BY FALSE STATEMENT
        CHARGE 2-A&B

    COURT-
        10/04/88 DISPOSITION-
        CHARGE-FALSE REPRESENTATION IN OBT FOOD STAMPS
        SENTENCE-
        UNIFORM DISPOSITION

THE USE OF THIS RECORD IS REGULATED BY LAW.  IT IS PROVIDED FOR
OFFICIAL USE ONLY AND MAY BE USED ONLY FOR THE PURPOSE REQUESTED.
END OF RECORD
```

'CIC.2L01GUTH 1127.QH.OK0420100.NAM/GROSS, RAYMOND JR.
.DOB/███45.RAC/B.SEX/M.PUR/C.ATN/OFF DENBY

MESSAGE ACCEPTED - GUTH 0112 19:05 07/20/90

NCIC        3301 19:05
GUTH        0183 19:05 07/20/90
7L01GUTH 11273169QH
OK0420100
THIS NCIC INTERSTATE IDENTIFICATION INDEX RESPONSE IS THE RESULT OF YOUR
INQUIRY ON NAM/GROSS,RAYMOND JR SEX/M RAC/B DOB/███45 PUR/C

NAME                              FBI NO.        INQUIRY DATE
GROSS,RAYMOND-JR                  487879JA6      07/20/90

SEX  RACE  BIRTH DATE  HEIGHT  WEIGHT  EYES  HAIR  BIRTH PLACE
M    B     ████/45     604     258     BRO   BLK   OKLAHOMA

  FINGERPRINT CLASS
.DO 16 16 PO 13
PO PM PM PM 13

ALIAS NAMES
GROSS,R

SOCIAL SECURITY
████████

IDENTIFICATION DATA UPDATED .06/01/89

THE CRIMINAL HISTORY RECORD IS MAINTAINED AND AVAILABLE FROM THE
FOLLOWING:
  FBI            - FBI/487879JA6

THE RECORD(S) CAN BE OBTAINED THROUGH THE INTERSTATE IDENTIFICATION
INDEX BY USING THE APPROPRIATE NCIC TRANSACTION.
END

```
SCOM.QC.NAM/GROSS, RAYMOND JR.
DOB/████45.REF/OFF DENBY

MESSAGE ACCEPTED - GUTH 0107 19:00 07/20/90




SCOM        6970 19:00
GUTH        0179 19:00 07/20/90

REFERENCE: OFF DENBY        INQUIRY BY: GUTH
                     OSBI IDENTIFICATION RECORD
      NO CAUTIONS              CONTACT OSBI FOR FURTHER INFORMATION
GROSS,RAYMOND JR                              OBI NO:440043
DOB/████45   RAC/N    SEX/M   HGT/  O   WGT/258  EYE/BRO   HAI/BLK
FBI NO:487879JA6          SOC/████████        BIRTH STATE:OK
MNU/OASOSTLWTR433    MNU/OADOBO92744      FPC/PO1516PO12POPMPMPO12
SMT/                 SMT/                      SMT/
     *ALIAS NAMES*                        *ALIAS NAMES*
WILLIER,JOHN                              LEWIS,JOHN
GROSS,R
                     ---- END OF RECORD ----
```

**POLICE DEPARTMENT**
312 West Oklahoma
282-3535

**CITY OF GUTHRIE**
**County of Logan**
**State of Oklahoma**

# Property Release
# Affidavit

I, the undersigned, of lawful age, do dispose and say that the property described below is legally mine; that I have full knowledge of the present condition of said property; that once I have affixed my signature to this Affidavit, I have released the Guthrie Police Department from any and all claims which may arise.

## Items Released

1- POLICE IDENTIFICATION ID CARD
1- CHIEF OF POLICE BADGE #231

*Raymond Gross*
PROPERTY OWNER

413 S. 1st
ADDRESS

7:32 P M. 7-20- 19 90
TIME        DATE

*Michael R. Werby*
RELEASING OFFICER

*Terry Jones*
WITNESS

```
OSBI
GUTH

REQUEST COMPLETE RECORD ON SUBJECT RAYMOND GROSS JR. DOB/    45
B/M OBI NO:   440043.

THANKS IN ADVANCE
AUTH/OFF DENBY
OPER/LISA 07/20/90 19:04
```

IN THE DISTRICT COURT OF LOGAN COUNTY, STATE OF OKLAHOMA FILED

THE STATE OF OKLAHOMA,
                    Plaintiff,,                          JUN 14 1 02 PM '9

    -vs-                                        POINTING A DEADLY WEAPON
                                                WEAPON
                                    No. CRM-90-327 (21 OS 1279)
RAYMOND GROSS, JR.,                             ($50. to $500.
                    Defendant.                  and/or
                                                3-12 mos.)

                              INFORMATION

    In the name and by the authority of the State of Oklahoma,
Paul R. Anderson, District Attorney of Logan County on his official
oath gives this honorable Court to know and be informed that on or
about the 13th day of June, 1990, and prior to the filing of this
information, the defendant RAYMOND GROSS, JR., did, in Logan
County, State of Oklahoma, commit the crime of POINTING A DEADLY
WEAPON in the following manner and fashion by willfully, wrongfully
and unlawfully POINT A CERTAIN DEADLY WEAPON, TO-WIT: A PISTOL, AT
LINDA WOOD, ANDRE WOOD, ZJAITON WOOD AND TREMANE WOOD,
contrary to the form of the statute in such cases made and provided
against the peace and dignity of the State of Oklahoma.
Dated this 14th day of June, 1990.

                                    PAUL R. ANDERSON,
                                    District Attorney,

                                    By_____
                                       Laura Austin Thomas,
                                       Assistant District Attorney

STATE OF OKLAHOMA, COUNTY OF LOGAN, SS:

    Randy Biggs, of lawful age being first duly sworn deposes and
says that he has read the above and foregoing information, knows
the allegations and statement therein contained, and that the same
are true.

                                    _____
                                    Complaining Witness

Subscribed and sworn to before me            BARBARA HAYES,
this 14th day of June, 1990.                 Court Clerk of Logan County

                                             By:_____
WITNESSES:                                              Deputy
Linda Wood, P.O. Box 723                     I have examined the facts in
    Stillwater, Okla.                        the within and foregoing
Andre Wood    "    "                         information and recommend that
Zjaiton Wood  "    "                         a warrant do issue.
Tremane Wood  "    "                         PAUL R. ANDERSON,
Acie Anderson "    "                         District Attorney,
Bill O'Brien, % District
    Attorney's Office,                       By:_____
    Payne/Logan County
Randy Biggs, Deputy Sheriff                  Assistant/District Attorney
F. E. McAnally, P.O. Box 249,
    Coyle, Okla. 73027

                                                ROLL 147 PAGE 603

15

Praecipe for Subpoena – District

STATE OF OKLAHOMA, COUNTY OF LOGAN, SS:

IN THE DISTRICT COURT OF LOGAN COUNTY

STATE OF OKLAHOMA
LOGAN COUNTY SS:
FILED FOR RECORD ON

91 MAR 13  PH 3: 10

BARBARA HAYES
COURT CLERK

BY _____ DEPUTY

State of Oklahoma

Plaintiff.

VS.

RAYMOND GROSS, JR.

Defendant.

PRAECIPE.

CRM-90-329

The Clerk of the District Court will issue a Subpoena to the following named Witnesses:

Linda Wood, Andre Wood, Zjalton Wood and Tremane Wood, P.O. Box 723, Langston, Oklahoma;

Ania Anderson, P.O. Box 723, Langston, Oklahoma; Randy Biggs, Deputy Sheriff; F. E.

McAnally, P.O. Box 249, Coyle, Oklahoma; Bill O'Brien, % District Attorney's Office

Stillwater, Oklahoma 74074                    the Logan County Courthouse

to be and appear before the District Court of said County at ........................................................

on the .....25th..... day of .......March...........  A.D., 19...91.., at ........8:30............. o'clock ..............A..... M., to

testify on behalf of the ......State of Oklahoma..............in said action.

Martin McLaughlin, ASSISTANT Dist. Atty.

Attorney for Plaintiff

**16**

| | |
|---|---|
| 5/14/1991<br>CRM-90-329 | Judge William W. Wheeler<br>State of Oklahoma vs Raymond Gross, Jr.<br><br>The State appears by Martin McLaughlin, Assistant District Attorney.<br>The Defendant appears in person with Brad Morelli who is appearing<br>on behalf of Bob Ward. At the Defendant's request and without<br>objection by the State, the Court continues this case to June 4, 1991,<br>at 2:00 p.m., for the purpose of assigning a trial date. The Defendant<br>may remain free on his present bond until that time. |
| 6/4/1991<br>CRM-90-329 | Judge William W. Wheeler<br>State of Oklahoma vs Raymond Gross, Jr.<br><br>The State appears by Martin McLaughlin, Assistant District Attorney.<br>The Defendant appears by his attorney, Bob Ward. At the Defendant's<br>request and without objection by the State, the Court continues this<br>case to July 16, 1991, at 2:00 p.m., for the purpose of assigning a<br>trial date. The Defendant may remain free on his present bond until<br>that time. |
| 7/16/1991<br>CRM-90-329 | Judge William W. Wheeler<br>State of Oklahoma vs Raymond Gross, Jr.<br><br>The State appears by Martin McLaughlin, Assistant District Attorney.<br>The Court, on its own motion, continues this case to August 20, 1991,<br>at 1:30 p.m., for the purpose of selecting a trial date. The Defendant<br>and his attorney are to appear in person at that time. |
| 8/20/1991<br>CRM-90-329 | Judge William W. Wheeler<br>State of Oklahoma vs Raymond Gross, Jr.<br><br>The State appears by Martin McLaughlin, Assistant District Attorney.<br>The Defendant appears in person with his attorney, Bob Ward. At the<br>Defendant's request and without objection by the State, the Court<br>continues this case to October 8, 1991, at 2:00 p.m., for the purpose<br>of selecting a trial date. The Defendant may remain free on his<br>present bond until that time. |
| 10/8/1991<br>CRM-90-329 | Judge William W. Wheeler<br>State of Oklahoma vs Raymond Gross, Jr.<br><br>The State appears by Martin McLaughlin, Assistant District Attorney.<br>The Defendant appears in person with his attorney, Bob Ward. The<br>State's motion to dismiss this case upon payment of court costs is<br>sustained. The Court hereby dismisses this case upon payment of<br>court costs. The Court grants a stay of execution on the payment<br>of the costs until October 17, 1991, at 1:30 p.m. |
| 10/21/1991<br>CRM-90-329 | Judge William W. Wheeler<br>State of Oklahoma vs Raymond Gross, Jr.<br><br>The State appears by Larry R. Brooks, Assistant District Attorney.<br>The Defendant appears in person and requests additional time in<br>which to pay the costs due in this case. The Court grants a<br>further stay of execution until November 12, 1991, at 1:30 p.m. |

**17**

6/14/1990
CRM-90-329

Judge Penny L. Howard
State of Oklahoma vs Raymond Gross, Jr.

This case comes on for initial appearance. The State appears by
and through Laura Austin Thomas. The Defendant appears in person
pro se. The Defendant is advised of the penalty range of the charges
against him. The Court is advised that this count carries up to a
$500.00 fine and up to twelve (12) months in the county jail. The
information is read aloud in open court. The Defendant is advised
of all constitutional rights. The Court sets a $500.00 bond and
orders the Defendant to reappear July 9, 1990, at 1:30 P.M.

9/21/1990
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by Martin McLaughlin, Assistant District Attorney.
The Defendant appears in person with his attorney, Bob Ward. At the
Defendant's request, the Court sets this case to pick a trial date
on October 2, 1990, at 1:30 P.M. The Defendant may remain free on
his present bond until that time.

10/2/1990
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by Larry R. Brooks, Assistant District Attorney.
The Defendant appears in person with his attorney, Bob Ward. At
the Defendant's request, the Court sets this case for jury trial
on November 27, 1990, at 9:00 A.M. The Defendant may remain free
on his present bond until that time.

11/21/1990
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by Laura Austin Thomas, Assistant District Attorney.
The Defendant appears by his attorney, Bob Ward. At the Defendant's
request and without objection by the State, the Court strikes the
jury trial date previously scheduled and continues this case to select
a new trial date on December 18, 1990, at 1:30 P.M. The Defendant may
remain free on his present bond until that time.

12/18/1990
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by Martin McLaughlin, Assistant District Attorney.
The Defendant appears in person with his attorney, Bob Ward. At the
Defendant's request, the Court sets this case to assign a jury
trial date on March 12, 1991, at 2:00 P.M. The Defendant may remain
free on his present bond until that time.

3/12/1991
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by Martin McLaughlin, Assistant District Attorney.
The Defendant appears in person with his attorney, Bob Ward. At the
Defendant's request, the Court sets this case for jury trial on
March 25, 1991, at 9:00 A.M. The Defendant may remain free on his
present bond until that time.

3/25/1991
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by Martin McLaughlin, Assistant District Attorney.
The Defendant appears in person with his attorney, Bob Ward. At the
Defendant's request and without objection by the State, the Court
continues this case until April 8, 1991, at 9:30 A.M., for further
pre-trial. The Defendant may remain free on his present bond until
that time.

4/8/1991
CRM-90-329

Judge William W. Wheeler
State of Oklahoma vs Raymond Gross, Jr.

The State appears by W. F. O'Brien, Assistant District Attorney.
The Defendant appears in person with his attorney, Bob Ward.
At the Defendant's request, the Court continues this case to
May 14, 1991, at 2:00 p.m., for further pre-trial. The Defendant
may remain free on his present bond until that time.

   

**18**

IN THE DISTRICT COURT OF LOGAN COUNTY, STATE OF OKLAHOMA

THE STATE OF OKLAHOMA
vs.
Raymond Gross, Jr.,
                    Defendant.

No. CRM-79-142

POSSESSION OF LIQUOR WITH
UNLAWFUL INTENT
(37 OSA 568)

**INFORMATION**

In the name and by the authority of the State of Oklahoma, James C. Langley, District Attorney of Logan County on his official oath gives this honorable Court to know and be informed that on or about the 27th day of April, 19 79, and prior to the filing of this Information, the defendant Raymond Gross, Jr.

_____ did, in Logan County, State of Oklahoma, commit the crime of possession of liquor with unlawful intent

In the following manner and fashion by willfully, wrongfully and unlawfully  have in his possession alcoholic beverages, to-wit:

three 1/2 pint bottles Seagram Dry Gin; five 1/2 pint bottles Bacardi Rum; one 1/2 pint

bottle Windsor Canadian whisky; twenty-five 7 oz. bottles Pink Champale; twenty-seven

7 oz bottles Grape Malt Duck with the intent to unlawfully sell the same without having

first procured a license therefor from the Oklahoma Alcoholic Control Board as provided

by law,

contrary to the form of the statute in such cases made and provided against the peace and dignity of the State of Oklahoma.
Dated this 30th day of April, 19 79

James C. Langley, District Attorney

By _Larry R. Brooks_
Larry Brooks, Assistant District Attorney

STATE OF OKLAHOMA, COUNTY OF LOGAN, SS:
Steve Harris of lawful age being first duly sworn, deposes and says that he has read the above and foregoing Information, knows the allegations and statement therein contained, and that the same are true.

Subscribed and sworn to before me
this 30th day of April, 19 79

WITNESSES
Officer Steve Harris, GPD; Capt. Daryl
Marang, GPD; Officer Greg Eischeid,
GPD; Officer Larry Pottroff, GPD;
Henry Cotton, Deputy Sheriff;
Licensing Officer, Oklahoma Alcoholic
Beverage Control Board, 210 N. W. 4½,
Oklahoma City, Oklahoma

_Steve Harris_
Complaining Witness

_Lois Willebby Barker_
Court Clerk of Logan County

I have examined the facts in the within and foregoing Information and recommended that a warrant do issue.
James C. Langley, District Attorney

By _Larry R. Brooks_
Larry Brooks, Assistant District Attorney

ROLL  44  1445

IN THE DISTRICT COURT OF LOGAN COUNTY, STATE OF OKLAHOMA

STATE OF OKLAHOMA

Plaintiff

VS.

Raymond Gross, Jr.

Defendant

NO. CRM-79-142

## MOTION TO DISMISS

Comes now James C. Langley —————————— District Attorney in and for Logan County, Oklahoma, and moves the Court to dismiss the above entitled cause for the reason that it is in the best interest of justice.

FILED
Aug 23  2 45 PM '79
STATE OF OKLAHOMA
LOGAN COUNTY CLERK
LOGAN COUNTY COURT CLERK
BY _____ DEPUTY

James C. Langley
~~District Attorney~~
District Attorney

By _Larry R. Brooks_
~~District Attorney~~/Larry R. Brooks
Assistant District Attorney

## ORDER OF DISMISSAL

Now on this 23rd day of August , 19 79 , comes on for hearing the above Motion to Dismiss. The Court being fully and sufficiently advised in the premises finds that said cause should be dismissed for the reason that it is in the best interest of justice.

IT IS THEREFORE ORDERED BY THE COURT that said cause now pending against said Raymond Gross, Jr. be dismissed.

_William W. Wheeler_
William W. Wheeler, Associate Dist. Judge

**20**

W.1

IN THE DISTRICT COURT OF LOGAN COUNTY, STATE OF OKLAHOMA

THE STATE OF OKLAHOMA )
 vs. )
RAYMOND GROSS, JR., )                    AGGRAVATED ASSAULT AND BATTERY
                  Defendant. )                    (21 OS 646)

No. CRM-88-230

### INFORMATION

In the name and by the authority of the State of Oklahoma, Paul R. Anderson, District Attorney of Logan County on his official oath gives this honorable Court to know and be informed that on or about the ___31st___ day of ___May___, 19_88_, and prior to the filling of this Information, the defendant(s) _____Raymond Gross, Jr._____

_____ did, in Logan County, State of Oklahoma, commit the crime of ___aggravated assault and battery___

In the following manner and fashion by willfully, wrongfully and unlawfully commit an aggravated assault and battery

upon the person of one Linda Gross by then and there striking and beating her about the

head and body with his hands and fists with force and violence, and did imprison her against

her will by hand cuffing her and then tying her to a bed, and further said defendant knocked

out one tooth, and did thereby inflict grievous wounds and great bodily injury upon the

body of the said Linda Gross, with the unlawful intent to do her corporal hurt and great

bodily injury,



contrary to the form of the statue in such cases made and provided against the peace and dignity of the State of Oklahoma.
Dated this ___31st___ day of ___May___, 19_88_.

                              Paul R. Anderson, District Attorney

                         By _____, Assistant District Attorney
                              Laura A. Austin

STATE OF OKLAHOMA, COUNTY OF LOGAN, SS:
         Linda Gross _____ of lawful age being first duly sworn deposes and says that she has read
the above and foregoing Information, knows the allegations and statement therein contained, and that the same are true.

21

*copy*

ARREST
WARRANT

STATE OF OKLAHOMA, COUNTY OF LOGAN, SS:        CRM-88-230

TO THE SHERIFF OF LOGAN COUNTY, STATE OF OKLAHOMA

WHEREAS, _____ Linda Gross _____ has made Complaint in writing upon
his oath and said Complaint is filed before me, Associate Special District Judge of the District Court, of said County, that

_____ RAYMOND GROSS, JR. _____

late of the aforesaid County, did on or about the 31st day of _____ May _____, 19 88 at and in the County
of Logan, State of Oklahoma, unlawfully ____ and wrongfully commit the crime of _____
AGGRAVATED ASSAULT AND BATTERY

You are therefore commanded to forthwith take the said __ Raymond Gross, Jr. __ (daytime or nighttime)

_____

and bring him before me, at the office of said Court, to be dealt with according to law.

Given under my hand and seal this 31st day of ____ May ____ 19-88

Merle G. Smith, Jr., Special Associate District Judge.

22

IN THE DISTRICT COURT OF THE NINTH JUDICIAL DISTRICT IN AND FOR LOGAN COUNTY, OKLAHOMA.

State of Oklahoma   ss.       AFFIDAVIT for ARREST WARRANT    CRM-88-230
County of Logan.

On this 31st day of _____May_____, 19 88 , _____Linda Gross_____ being first
duly sworn, upon oath deposes and says:

That probable cause exists to cause the arrest of _Raymond Gross_ , for
the public offense against said County and State, to-wit: Aggravated Assault and
Battery 21 O.S. 8646 , and that the probable cause of affiant
believing such facts exist as follows, to-wit:

On 5/31/88 at approximately 10:30 a.m., at Langston University, Raymond Gross brutually
attacked me.  He slammed my face into his car hood and twisted my arms behind my back
and handcuffed me.  He also knocked my front tooth out.  He then threw me in his car
against my will and hit me in the nose with his fist.  He tightened the hand cuffs
so tight he severely brused my wrist, he then took me home and continued to hit me.
Ripped my clothes off and tied me to the bed with extension cords.  He also threw the
keys away to the car I was driving belonging to a friend.  I finally called the Shriff
and got away

_Linda Gross_
Linda Gross,                    Affiant

Subscribed and sworn before me this 31st day of _May_ , 19 88 .
My Commission Expires on the _____ day of _____

_Barbara Hayes, Court_
Clerk

23

IN THE DIST   T COURT OF LOGAN COUNTY, STATE   OKLAHOMA          W.I.
THE STATE OF OKLAHOMA
          vs.

RAYMOND GROSS JR., and                                OBTAINING FOOD STAMP
LINDA GROSS aka LINDA WOOD                            ASSISTANCE BY FALSE STATEMENT
acting conjointly and together,      No. CRF 88-76        56 OSA 243
                    Defendants
                              PRELIMINARY
                              INFORMATION

In the name and by the authority of the State of Oklahoma, Paul R. Anderson, District Attorney of Logan County on his official oath gives this honorable
Court to know and be informed that  between 5/2/86 and 6/30/86, and between 12/1/86 and 1/31/88   and prior
to the filing of this information, the defendent(s) Raymond Gross Jr., and Linda Wood aka Linda Gross, acting
conjointly and together
      obtaining food stamp assistance by false statement      did, in Logan County, State of Oklahoma, commit the crime of
in the following manner and fashion by wilfully, wrongfully and unlawfully,  fraudulently and feloniously obtain food
stamp assistance in the sum of $2,076.00 from the Department of Human Services, State of
Oklahoma, by means of deception and false and fraudulent representations and statements
made and used by said defendants to cause the Department of Human Services to part with
said money in manner and means as follows:  the defendants submitted falsified C-5 monthly
report forms which represented that their family income was lower than actually what it
was during that time and further that they submitted false supportive documents to reflect
lower income than what they actually received during that time.  That the Department of
Human Services relied on the aforesaid statements and representations made and used by
said defendants and delivered possession of the aforesaid money to said defendants.
That all of said representations and statements were false and untrue and were knowingly
made and used by said defendants with the unlawful, wilful, wrongful, fraudulent and
felonious intent then and there to deceive the said Department of Human Services and to
swindle, beat, cheat, and defraud the Department of Human Services out of said money.

contrary to the form of the statute in such cases made and provided, against the peace and dignity of the State of Oklahoma.
Dated this   23rd   day of   June          19   88

                                        Paul R. Anderson, District Attorney
                                   By   Larry R. Brooks
                                        Larry Brooks, Assistant District Attorney

STATE OF OKLAHOMA, COUNTY OF LOGAN, SS:
    Virgil Smith                         of lawful age being first duly sworn deposes and says that he has read
the above and foregoing information, knows the allegations and statement therein contained, and that the same are true.
                                        Virgil Smith
Subscribed and sworn to before me                   Complaining Witness
this   23rd   day of   June    19  88    Court Clerk of Logan County   Barbara Hayes
                                   By   Patricia Coker
                                        Deputy

WITNESSES
 Elizabeth Vickers, DHS Guthrie
 Cheryl Walters, DHS, Guthrie
 Laurie Richert, DHS, Guthrie          I have examined the facts in the within and foregoing information and
 Julian D. Anderson, PO Box 53, Langston, OK   recommended that a warrant do issue.
 James H. Davis, PO Box 547, Langston, OK   Paul R. Anderson, District Attorney
 Trisha White, PO Box 385, Langston, OK
 Viola Jones, PO Box 370, Langston, OK   By   Larry R. Brooks
 Sam Seal, Kettle Restaurant, 1412 Fir, Perry, OK       Larry Brooks, Assistant District Attorney
 Sherri Smith, Overpayments, P O Box 25352, OK
 Mukesh Parikh, PO Box 776, Langston, OK
 Virgil Smith, P O Box 25352, OKC
 Larry Burton, PO Box 25352, OKC
 Mal Phillips, PO Box 25352, OKC

24

IN THE DISTRICT COURT OF LOGAN COUNTY, STATE OF OKLAHOMA,

FILED

JUN 23  4 12 PM '88

STATE OF OKLAHOMA
LOGAN COUNTY
BARBARA HAYES
COURT CLERK
BY_____ DEPUTY

THE STATE OF OKLAHOMA,

               Plaintiff,

-vs-

RAYMOND GROSS JR., and LINDA GROSS
aka LINDA WOOD,

               Defendant.

No. CRF 88-76

## A F F I D A V I T

On this 23rd day of June , 19 88 , Virgil Smith being first duly sworn, upon oath deposes and says:

That probable cause exists to cause the arrest of Raymond Gross Jr., and Linda Gross aka Linda Wood, for the public offense against said County and State, to-wit: obtaining food stamp assistance by false statement , and that the probable cause of affiant believing such facts exist as follows, to-wit: Your affiant is supervisor-fraud investigations for the Department of Human Services. Your affiant has conducted an investigation of Raymond Gross Jr., and Linda Gross aka Linda Wood in relation to obtaining food stamp assistance by false statements. Over the period from 5/2/86 to 6/30/86 and 12/1/86 to 1/31/88, your affiant determined that the defendants submitted falsified C-5 monthly report forms which represented their income to be less than actually what they were receiving during that time and further that they submitted supporting documents to the Department of Human Services that were false and also represented that their income was less than it actually was during that time. Based on these documents the Department of Human Services delivered food stamp assistance to defendants in Logan County beyond the amount to which they would otherwise have been entitled. The amount of food stamp assistance illegally obtained by defendants during this time was $2,076.00. Your affiant has personally interviewed the endorsed witnesses and has inspected all documents pertinent to this investigation.

                                                        Virgil Smith,        Affiant

Subscribed and sworn to before me this 23rd day of June , 19 88 .

                              Barbara Hayes, Court Clerk

(SEAL)                         By: Patricia _____
                                                        Deputy

### FINDING OF PROBABLE CAUSE

The undersigned Judge of this Court, upon sworn testimony and/or Affidavit, hereby determines there to be probable cause to detain the defendant in the daytime or nighttime.

DATED this 23rd day of June , 19 88 .

                                                      JUDGE

25

FILED

IN THE DISTRICT COURT OF LOGAN COUNTY

STATE OF OKLAHOMA

| | | |
|---|---|---|
| State of Oklahoma | ) | |
| Plaintiff | ) | |
| | ) | |
| vs | ) | No. CRF-88-76 |
| RAYMOND GROSS, JR., and LINDA GROSS aka | ) | |
| LINDA WOOD acting conjointly and together, | ) | |
| Defendant | ) | |

### MOTION TO DISMISS

Comes now the State of Oklahoma by and through Paul Anderson, duly elected District Attorney in and for Logan County and moves this Court to dismiss the above styled cause/with/without costs for the following reasons: the United States Attorney in Oklahoma City is going to prosecute this case in Federal Court.

PAUL ANDERSON
District Attorney

Larry R. Brooks,
by _____
Assistant District Attorney

### ORDER

Now on this  4th   day of October 19 88  , comes on for hearing the above motion to dismiss.  The Court being fully and sufficiently advised in the premises finds that said cause should be dismissed for the reasons as stated above.

It is therefore the order of this of this Court that the above styled cause be dismissed with/without costs to _____ as per the Court Clerk's docket.

JUDGE OF THE DISTRICT COURT

BOOK 125 PAGE 1582

# EXHIBIT 31

# EXHIBIT 31

Article - Lawyer's absences lead to his arrest                      http://archive.newsok.com/Repository/getFiles.asp?Style=OliveXLib:Lo...

Publication: The Oklahoman; Date: Mar 10, 2006; Section: Local & State; Page: 14A



# Lawyer's absences lead to his arrest

An Oklahoma City attorney was arrested Thursday on a contempt-of-court complaint, according to court papers.

Johnny Albert failed to show up for court at least seven times, and Oklahoma County District Court Judge Tammy Bass Jones issued a bench warrant for his arrest, she said.

Albert met with Bass Jones Thursday afternoon in her chambers. Neither would comment about what was discussed.

Albert sat handcuffed in the courtroom Thursday under the supervision of a sheriff's deputy.

According to the arrest warrants, Albert failed to appear in court for clients accused of murder and drug trafficking.

Albert was released on $50,000 bond, according to court papers. He will not have to serve any jail time, said his brother, Victor Albert.

Staff Writers Jesse Olivarez and ly McMahan

# EXHIBIT 32

# EXHIBIT 32

**IN THE COURT OF CRIMINAL APPEALS FOR THE STATE OF OKLAHOMA**

TREMANE WOOD,                    )
                                 )
       Petitioner,              )      NOT FOR PUBLICATION
                                 )
    -vs-                         )      No. PCD-2005-143
                                 )
STATE OF OKLAHOMA,               )
                                 )          **FILED**
       Respondent.              )  IN COURT OF CRIMINAL APPEALS
                                               STATE OF OKLAHOMA

### OPINION DENYING APPLICATION FOR POST-CONVICTION RELIEF

JUN 3 0 2010

MICHAEL S. RICHIE
CLERK

**A. JOHNSON, VICE-PRESIDING JUDGE:**

Before the Court is Petitioner Tremane Wood's original application for post conviction relief. Wood was convicted by jury in the District Court of Oklahoma County, Case No. CF-2002-46, of Count 1 - First Degree Felony Murder in violation of 21 O.S.2001, § 701.7(B), Count 2 – Robbery with Firearms, After Former Conviction of a Felony in violation of 21 O.S.2001, § 801, and Count 3 – Conspiracy to Commit a Felony, After Former Conviction of a Felony in violation of 21 O.S.2001, § 421. The jury recommended the death penalty on Count 1.[1] The jury fixed punishment on Counts 2 and 3 at life imprisonment. The Honorable Ray C. Elliott, who presided at trial, sentenced Wood accordingly and ordered the sentences to be served consecutively. We affirmed Wood's Judgment and Sentence in *Wood v. State*,

---

[1] Wood's jury found three aggravating circumstances: 1) that Wood knowingly created a great risk of death to more than one person; 2) that the murder was especially heinous, atrocious, or cruel, and that Wood posed a continuing threat to society. *See* 21 O.S.2001, §§ 701.12 (2), (4) and (7).

2007 OK CR 17, 158 P.3d 467. The United States Supreme Court denied certiorari in *Wood v. Oklahoma,* 552 U.S. 999, 128 S.Ct. 507, 169 L.Ed.2d 355 (2007).

Wood raises six propositions of error in his application for post-conviction relief. Under the Capital Post-Conviction Procedure Act, the only claims that may be raised are those that "[w]ere not and could not have been raised in a direct appeal" and that also "[s]upport a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent." 22 O.S.Supp.2006, § 1089(C)(1) and (2). "This Court will not consider issues which were raised on direct appeal and are barred by *res judicata,* or issues which have been waived because they could have been, but were not, raised on direct appeal." *Cummings v. State,* 1998 OK CR 60, ¶ 2, 970 P.2d 188, 190. The burden is on the applicant to show that his claim is not procedurally barred. *See* 22 O.S.Supp.2006, § 1089(C).

### 1. Error at the Evidentiary Hearing

While Wood's case was pending on direct appeal, this Court remanded the case to the district court for an evidentiary hearing on Wood's claim of ineffective assistance of trial counsel. The district court concluded, and we agreed, that Wood was not denied effective assistance of counsel at trial. *See Wood,* 2007 OK CR 17, ¶ 38 and ¶ 44, 158 P.3d at 479 and 481. He now claims on post-conviction that the district court erred in excluding expert testimony during the evidentiary hearing.

2

The evidentiary hearing on Wood's claim of ineffective assistance of counsel was held before this Court heard oral argument in the direct appeal and decided Wood's case. Both parties were provided an opportunity to submit supplemental briefs after the evidentiary hearing prior to oral argument. Wood chose not to raise any claim in his supplemental brief about the judge's ruling excluding his expert's testimony. Accordingly, this claim is waived because Wood could have raised it on direct appeal.

### 2. Newly Discovered Evidence

Wood claims that he is entitled to post conviction relief because newly discovered evidence shows that his trial attorney was ineffective. He further claims that he is entitled to post-conviction relief because other newly discovered evidence, namely a report by Dr. Kate Allen, supports a finding that the outcome of his trial would have been different had the new evidence been admitted. And lastly, Wood claims he is entitled to post-conviction relief because his jury was not instructed on the 85% Rule.

This Court rejected Wood's claim of ineffective assistance of trial counsel on direct appeal; he now argues on post-conviction that newly discovered evidence not previously presented to this Court warrants a different finding on the issue and a new trial in this case. To support his claim, he points to: 1) a transcript showing that trial counsel was involved in direct contempt proceedings regarding counsel's performance in several unrelated cases two weeks after trial counsel was a witness at the evidentiary hearing investigating

3

his performance in Wood's case; and 2) an affidavit showing that trial counsel was suspended indefinitely from the practice of law within two months following the evidentiary hearing in this case. Wood has further provided for this Court's review materials related to the 2006 disciplinary proceedings involving trial counsel and the grievances filed against him.[2] Wood has also furnished the Court with the Findings of Fact and Conclusions of Law from hearings conducted in two other death penalty cases investigating trial counsel's performance in those matters.[3] Wood maintains such evidence is "critical" in deciding whether trial counsel rendered ineffective assistance in Wood's case.

Wood appears to claim that these materials show that trial counsel's representation was so deficient as to give rise to prejudice per se under *United States v. Cronic*, 466 U.S. 648, 658-61, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (noting that there are circumstances when a presumption of prejudice is appropriate, but requiring the defendant in that case to demonstrate that his trial counsel had made specific errors).[4] We disagree and fail to see how trial

---

[2] Trial counsel had a number of grievances filed against him from April 2005 to March 2006.

[3] This Court ultimately granted relief in each case based on ineffective assistance of counsel. *See Littlejohn v. State*, 2008 OK CR 12, ¶¶ 25-28, 181 P.3d 744-45 (reversed for a new sentencing proceeding); *Fisher v. State*, 2009 OK CR 12, ¶¶ 6-25, 206 P.3d 607, 609-14 (reversed for new trial).

[4] The circumstances warranting a presumption of prejudice include: 1) the complete denial of counsel, in which the accused is denied the presence of counsel at a critical stage; 2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and 3) when counsel is placed in circumstances in which competent counsel very likely could not render assistance. *Cronic*, 466 U.S. at 659-60, 104 S.Ct. at 2047.

counsel's appearance at a contempt proceeding involving unrelated cases almost two years after acting as counsel at Wood's 2004 death penalty trial proves counsel was ineffective. Nor do we see how the fact that trial counsel was suspended from the practice of law two years after Wood's trial proves that trial counsel was ineffective. The Findings of Fact and Conclusions of Law from Keary Littlejohn's case indicate that trial counsel's secretary noticed an increase in trial counsel's consumption of alcohol around the time of Wood's trial. Trial counsel's client neglect, abuse of drugs and alcohol and emotional instability, however, appear to have begun—based on the materials provided by Wood—after Wood's death penalty trial had been completed.[5] Without proof trial counsel was suffering from his addiction during Wood's trial, evidence of trial counsel's subsequent struggles with substance abuse and other difficulties does not prove or show that he was more than likely incapacitated or ineffective during Wood's trial.

The aspects of counsel's performance challenged by Wood are plainly of the same sort as other specific attorney errors subject to the performance and prejudice test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). As noted above, Wood raised an ineffective assistance of counsel claim on direct appeal, primarily challenging trial counsel's investigation and presentation of mitigating evidence or lack thereof.

---

[5] Evidence adduced during trial counsel's disciplinary proceeding showed that his problems with alcohol and substance abuse peaked in March 2006 and trial counsel himself recalled that

This Court remanded the matter for an evidentiary hearing and ultimately concluded that trial counsel was not ineffective. We found that the substance of material testimony from credible witnesses not called at trial was nonetheless presented to Wood's jury during the penalty phase of his trial and that Wood failed to show that the outcome of his case would have been different had the credible evidence developed at the evidentiary hearing been presented during his capital sentencing proceeding. *Wood,* 2007 OK CR 17, ¶ 44, 158 P.3d at 481. Nothing in the materials provided by Wood about his trial counsel's subsequent personal and professional difficulties calls into doubt our prior finding that trial counsel rendered effective assistance of counsel to Wood or convinces us to revisit that decision and order a new trial.

Next, Wood contends that a supplemental report by Dr. Kate Allen, the expert whose testimony was excluded from the evidentiary hearing, is newly discovered evidence that entitles him to post-conviction relief. To determine if a defendant is entitled to a new trial on the basis of newly discovered evidence, we consider: (1) whether the evidence is material; (2) whether the evidence could have been discovered before trial with reasonable diligence; (3) whether the evidence is cumulative; and (4) whether the evidence creates a reasonable probability that, had it been introduced at trial, it would have changed the outcome. *Ellis v. State,* 1992 OK CR 45, ¶ 50, 867 P.2d 1289, 1303.

---

his substance abuse disorder began in earnest in March 2005, a year after Wood's death penalty trial.

6

Information contained in Dr. Allen's report is not newly discovered, but a new assessment of previously presented and discovered evidence.[6]  On direct appeal, we noted that trial counsel presented evidence about Wood's troubled background and about his childhood growing up in an abusive household with little parental supervision and absent parents. *Wood*, 2007 OK CR 17, ¶ 43, 158 P.3d at 481. We found that evidence of Wood's chaotic home life and background was presented for the jury to consider in balancing the aggravating circumstances against the mitigating evidence. *Id.* at ¶ 44, 158 P.3d at 481. The information cited by Wood does not meet the criteria of this Court's test for newly discovered evidence and thus we deny Wood post-conviction relief on that basis.

Lastly, Wood argues he is entitled to post-conviction relief because his jury was not instructed on the 85% Rule in 21 O.S. 2001, § 13.1.[7]  This claim is waived because Wood failed to raise this issue on direct appeal. This Court's rules provide that a party may file a supplemental brief to raise new propositions of error "on an issue of first impression decided after an appellant's brief-in-chief is filed but before the appellant's case is decided by this Court." Rule 3.4(F)(2), *Rules of the Oklahoma Court of Criminal Appeals,*

---

[6] Dr. Allen found that Wood's father failed him and continues taking no responsibility for the abuse he inflicted on the family, that domestic violence shaped Wood, that Wood's family had 11 of the 14 known indicators of domestic violence likely to end in death, and that Wood is remorseful.

[7] Under the "85% Rule," persons convicted of crimes enumerated in 21 O.S., § 13.1 are required to serve at least 85% of their sentences before they can be considered for parole.

Title 22, Ch. 18, App. (2005). Wood's post-conviction claim is predicated on our decision in *Anderson v. State*, 2006 OK CR 6, 130 P.3d 273 decided on February 22, 2006. Wood's brief-in-chief was filed on June 28, 2005, but his case was not decided until April 30, 2007. This claim could have been raised under our rules on direct appeal and is therefore waived.

### 3. Ineffective Assistance of Counsel

Wood's third proposition of error is a protracted complaint detailing numerous allegations of ineffective assistance of his trial and appellate counsel. This Court reviews claims of ineffective assistance of counsel *de novo*, to see whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive the defendant of a fair trial with reliable results. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Davis v. State*, 2005 OK CR 21, ¶ 7, 123 P.3d 243, 246. Under this test, Wood must not only overcome the presumption of competence but show that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Head v. State*, 2006 OK CR 44, ¶ 23, 146 P.3d 1141, 1148. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* We need not determine whether counsel's performance was deficient if the claim can be disposed of on the ground of lack of prejudice. *See Ball v. State*, 2007 OK CR 42, ¶ 59, 173 P.3d 81, 96.

8

### A. Ineffective assistance of appellate counsel for failing to supplement the record

Wood claims that his appellate counsel should have supplemented the direct appeal record with evidence that trial counsel was involved in contempt proceedings in 2006 due to client neglect and a substance abuse problem and that trial counsel was suspended from the practice of law. As discussed above, evidence of trial counsel's involvement in a contempt proceeding in unrelated cases and his suspension from the practice of law two years after Wood's conviction does not prove that trial counsel was ineffective during Wood's trial. For this reason, Wood cannot show that the outcome of his appeal would have been different had appellate counsel supplemented the record with this material.

### B. Ineffective assistance of appellate counsel at evidentiary hearing

Wood claims that appellate counsel provided ineffective assistance at the evidentiary hearing investigating trial counsel's performance. Wood contends that appellate counsel failed to impeach trial counsel and clarify the number of cases that trial counsel had lost, resulting in a death sentence. Trial counsel testified at the evidentiary hearing that he had tried fifteen capital murder cases in which he estimated three resulted in the imposition of the death penalty. Records provided by Wood show that trial counsel was incorrect and that the death penalty had been imposed in seven cases. The accuracy of trial counsel's testimony about his success rate in other cases has no bearing on whether he rendered effective assistance in Wood's case. Neither the trial

9

court's findings of fact and conclusions of law finding counsel effective nor this Court's affirmation of the trial court's findings and conclusions rest in any way on trial counsel's win-loss record. Because it has no bearing, Wood cannot show that the outcome of the evidentiary hearing or his appeal would have been different had appellate counsel impeached trial counsel with evidence the death penalty had been imposed in seven of the fifteen capital cases trial counsel had tried.

Wood argues next that appellate counsel should have impeached trial counsel with his statement in second stage opening statement, listing the three witnesses he intended to present in mitigation. He contends the transcript would have contradicted trial counsel's testimony at the evidentiary hearing that the defense was going to call other mitigation witnesses until Wood told trial counsel not to call any other family members after his mother's emotional testimony. Wood suggests that trial counsel's testimony was nothing more than a self-serving attempt to avoid being found ineffective and that had counsel been impeached with his opening statement, trial counsel would have been forced to admit he never intended to call any other family members.

Appellate counsel confronted trial counsel at the evidentiary hearing about Wood's alleged request not to call additional family members following his mother's testimony. Appellate counsel emphasized that Wood's request pertained only to family members and did not include friends, mentors or workers from the Office of Juvenile Affairs. Appellate counsel further elicited

that trial counsel did not have any other witnesses present and ready to testify in mitigation except the ones called. The point Wood claims should have been made—that trial counsel failed to investigate other witnesses and to present their testimony—was made. In addition, both the trial court and this Court have reviewed the mitigating evidence Wood claimed trial counsel failed to uncover and present. We found that the substance of material testimony from credible witnesses not called at trial was nonetheless presented to Wood's jury in deciding his fate. Wood cannot show that the outcome of the evidentiary hearing or his direct appeal would have been different had appellate counsel impeached trial counsel with his opening statement in second stage.

Wood argues appellate counsel should have reminded the trial court of its concern about trial counsel's preparation by asking trial counsel about a pre-trial exchange with the trial court on the subject. This claim is based on a mistaken memory and is without merit. Prior to jury selection, the trial judge asked trial counsel about his preparation time because the judge recalled trial counsel stating at an earlier status conference that trial counsel would be in trial the week before Wood's trial was set to begin. The trial judge inquired, in light of his memory, whether trial counsel had adequate time to prepare. Trial counsel explained that the trial court was confusing a co-defendant's lawyer's statement with his, that he had plenty of time to prepare, and that he was ready to proceed. We find no prejudice in appellate counsel's failure to point out this exchange at the evidentiary hearing.

11

Wood also claims appellate counsel failed to present evidence at the evidentiary hearing in support of Wood's claim that his father, Raymond Gross, Jr., was abusive to his wife and children. Wood contends appellate counsel should have used documents related to Wood's parents' divorce and to Gross' criminal conviction for feloniously pointing a weapon at Wood's mother to corroborate Wood's mother's testimony of abuse and to discredit Gross' testimony.

The documents Wood provides now and claims should have been used at the evidentiary hearing are insufficient to convince us that appellate counsel was ineffective. The divorce petition filed by Wood's mother contained nothing more than allegations that Ms. Wood was seeking a divorce in part because of Mr. Gross' "extreme cruelty" and stated that he was a "violent man." The divorce decree shows the divorce was granted on the grounds of incompatibility; it notes only that Ms. Wood was entitled to a permanent restraining order against Gross without listing any facts or reasons for the provision. Ms. Wood's requests for protective orders offer no proof that abuse occurred as they memorialize only her allegations in support of her petition. The fact that emergency protective orders were issued is of little consequence since such orders are routinely issued upon complaints; the orders were rendered practically meaningless here because all were later dismissed for failure to prosecute. We fail to see how the allegations of abuse contained in

these documents would have bolstered Ms. Wood's testimony or changed the trial court's findings of fact or the outcome of the evidentiary hearing.

Wood appears to argue also that appellate counsel was ineffective for failing to point out to this Court the fact trial counsel had previously signed an affidavit purporting to admit ineffective assistance that trial counsel did not explicitly repudiate at the evidentiary hearing. Appellate counsel questioned trial counsel about his performance and the affidavit in depth at the evidentiary hearing. Appellate counsel did, in fact, put trial counsel's performance and the affidavit in issue.

Wood argues that appellate counsel was ineffective for failing to cite all of the factual inaccuracies he asserts exist in the trial court's findings of fact and conclusions of law. Appellate counsel filed a ten page supplemental brief after the evidentiary hearing in accordance with this Court's order remanding the case for evidentiary hearing. Appellate counsel went through each question this Court asked the district court to consider and explained why the district court's findings and conclusions were wrong. Appellate counsel outlined as many inconsistencies within the limitations imposed by the page constraint set by this Court allowed. Wood has not shown that appellate counsel's decision about what to include in his limited space was anything but a sound strategic

decision. We will not second-guess that decision.[8]  *See Hanson v. State*, 2009 OK CR 13, ¶ 37, 206 P.3d 1020, 1032.

Wood contends appellate counsel was ineffective for failing to raise a claim in the supplemental brief about the exclusion of the defense mitigation expert at the evidentiary hearing.  Wood concedes that appellate counsel preserved the claim by admitting the expert's report for appeal, but argues he failed to present the claim in his brief and failed to "provide what she [the expert] would have testified to had she been allowed."   As noted above, appellate counsel went through the questions the district court considered and addressed the district court's findings and conclusions.  Appellate counsel chose to utilize the ten page limit to challenge the trial court's decision that trial counsel was effective with evidence presented at the hearing rather than attack the trial court's decision excluding his expert. This was a reasonable strategy.   Furthermore, appellate counsel did provide this Court with the expert's findings by admitting the expert's report below.   This claim, like Wood's other claims, must fail, because he can show neither deficient performance nor prejudice.

Wood argues that appellate counsel was ineffective in failing to obtain a handwriting exemplar from one of the State's witnesses. Wood maintains that he was prejudiced by this failure because, if he had been able to conclusively

---

[8] We note that appellate counsel in the supplemental brief raised complaints that the trial court's finding that trial counsel had all the records was erroneous and that the trial court's findings concerning the testimony of a former juror was wrong.

prove the witness wrote two letters she denied writing, her trial testimony would have been impeached.   We rejected a similar claim on direct appeal, finding that, because the witness admitted making statements similar to those in the letters, trial counsel was able to impeach the witness as effectively as she could have been had it been proven conclusively that she had authored the letters.  *Wood*, 2007 OK CR 17, ¶ 45, 158 P.3d at 481-82.  Because we have already held that Wood was not prejudiced by the failure to impeach the witness with proof that she had written the letters, he cannot have been prejudiced by appellate counsel's failure to obtain a handwriting exemplar from the witness for the evidentiary hearing. This claim is denied.

Wood argues that appellate counsel should have introduced a videotape at the evidentiary hearing entitled "Gangs in Stillwater." The videotape, apparently made by the Stillwater Police Department, depicts gang graffiti on buildings in Stillwater, some Stillwater gang members with blurred faces to conceal their identities, and some weapons confiscated from these gang members.  Wood contends the tape would have proved what a former parole and probation officer was not allowed to testify about, namely how the police viewed the Wood brothers and the community's low tolerance for biracial people. This tape had no specific connection to Wood. Its message was that the Stillwater community should take measures to address problems associated with street gangs. Wood fails to convince us that the videotape was relevant and that he was prejudiced by counsel's failure to offer it.   We cannot,

15

therefore, find appellate counsel ineffective for failing to offer the videotape at the evidentiary hearing.

Finally, Wood argues appellate counsel was ineffective in failing to present evidence at the evidentiary hearing that Brandy Warden, Wood's former girlfriend and accomplice-turned-State's-witness, had her sentence reduced after she testified against him and may have received lenient treatment in other cases.[9] The trial court knew that Warden had not been charged with the robbery of a local pizza restaurant along with the other defendants in this case because she admitted this fact at trial. The trial court was also aware that her sentence on charges related to Wood's case had been reduced over the strenuous objection of the State because the trial court had ordered it and presided over the other defendants' proceedings. There is nothing in the record to suggest that Warden testified against Wood to receive a sentence reduction. Because the trial court was aware of the rewards Warden had received for testifying and had ordered her sentence reduction after Wood's trial, we cannot find that appellate counsel was ineffective for failing to present evidence of Warden's sentence reduction at the evidentiary hearing.

---

[9] Warden was sentenced to 45 years imprisonment for accessory to murder and 10 years for conspiracy, running concurrently. After Wood's trial, the trial court reduced her 45 year sentence to 35 years.

## C. Failure of Appellate Counsel to present additional reasons in support of Wood's ineffective assistance of trial counsel claim

Wood raises ten complaints about trial counsel's performance not included in appellate counsel's ineffective assistance of trial counsel claim on direct appeal.[10]   According to Wood, he received ineffective assistance of appellate counsel on direct appeal based on appellate counsel's failure to include these issues.

A review of Wood's complaints shows that he can neither show that counsel's decision on which claims to include on direct appeal was unsound strategy nor that the outcome of his appeal would have been different had appellate counsel raised these issues. Appellate counsel has a duty to raise relevant issues for this Court's consideration, but there is no obligation to raise every available non-frivolous issue. *See Martinez v. State,* 1999 OK CR 47, ¶ 22, 992 P.2d 426, 432. It appears to us that appellate counsel presented to this Court those claims, he believed, in light of his professional judgment, had the best chances for success that would fit within this Court's page limitation in a capital case. Appellate counsel raised seven propositions of error that

---

[10] The complaints include:
1. Trial counsel failed to present available evidence to support his defense.
2. Trial counsel failed to list a crucial mitigating circumstance.
3. Trial counsel failed to request a *Harjo* hearing.
4. Trial counsel failed to challenge the admissibility of DNA evidence.
5. Trial counsel failed to object to handwriting exemplars.
6. Trial counsel failed to object to improperly excused jurors.
7. Trial counsel failed to object when jurors moved their vehicles.
8. Trial counsel failed to request an instruction on the 85% Rule and for a definition of life imprisonment with the possibility of parole.
9. Trial counsel failed to request proper jury instructions.
10. Trial counsel failed to object to prosecutorial misconduct.

filled his allotted 100 pages of brief space, dedicating more than a quarter of his brief to a claim of ineffective assistance of trial counsel. Appellate counsel's efforts resulted in this Court remanding the matter for an evidentiary hearing to investigate the ineffective assistance of trial counsel claim. On this record, we cannot find that Wood has shown that his appellate counsel's performance in presenting ineffective assistance of trial counsel claims was deficient or that he was prejudiced thereby. For this reason, his claim that appellate counsel was ineffective must be denied.

### 4. Other Crimes Evidence and Prosecutorial Misconduct

Wood argues that he was denied a fair trial by the introduction of improper other crimes evidence and prosecutorial misconduct. Wood's claims are all record-based claims that could have been raised previously on direct appeal. Accordingly, this claim is waived.

### 5. Jury Sequestration

Wood argues that he was denied a fair trial because jurors were allowed to separate to move their cars at the conclusion of both first and second stage after being sworn but before deliberations began. He also argues he was denied a fair trial because the bailiff may not have been sworn in his case. Again, these claims are record-based claims that could have been previously raised on direct appeal and are waived.

18

### 6. Cumulative Error

Wood claims in his final proposition that the accumulation of error on appeal and in post-conviction requires relief. "No authority allows this Court to consider, on post-conviction, errors raised on direct appeal which were not also raised as error in the post-conviction claim." *Harris v. State,* 2007 OK CR 32, ¶ 20, 167 P.3d 438, 445. We have determined that Wood is not entitled to a new trial on the basis of newly discovered evidence. We have further found that neither trial nor appellate counsel were ineffective. There is no cumulative error to consider.

### DECISION

Having reviewed Wood's application for post-conviction relief, we conclude: (1) there exist no controverted, previously unresolved factual issues material to the legality of Wood's confinement; (2) Wood's grounds for review have no merit or are barred from review; and (3) the Capital Post-Conviction Procedure Act warrants no relief in this case. Accordingly, Wood's Application for Post-Conviction Relief is **DENIED**. Because Wood's claims can be disposed of on the materials provided, his motions for discovery and an evidentiary hearing are **DENIED.** Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2010), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

**ATTORNEY FOR PETITIONER:**

JULIE GARDNER
ATTORNEY AT LAW
228 ROBERT S. KERR.
SUITE 100
OKLAHOMA CITY, OK 73102

**ATTORNEYS FOR THE STATE:**

W. A. DREW EDMONDSON
ATTORNEY GENERAL OF OKLAHOMA
PRESTON SAUL DRAPER
ASSISTANT ATTORNEY GENERAL
313 N.E. 21st STREET
OKLAHOMA CITY, OK 73105

**OPINION BY**: A. JOHNSON, V.P.J.
C. JOHNSON, P.J.:  Concur
LUMPKIN, J.:  Concur
LEWIS, J.:  Concur

RA

20

# EXHIBIT 33

# EXHIBIT 33

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TERMANE WOOD | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | )   Case No. 5:10-CV-0829-HE |
| RANDALL WORKMAN, Warden, OKLAHOMA | ) |
| STATE PENITENTIARY | ) |
| | ) |
| Defendant(s) | ) |

## NOTICE OF CONVENTIONAL FILING

**Please take notice** that (Plaintiff/Defendant) ___Termane Wood___ ,(Name of Party)
_____,

shall conventionally file the original and one copy of the following document, paper or other material:

___DVD containing Arnold Kleinsasser police interview 1/2/02___

(Title of Document, Paper or Other Material)

This document, paper, or other material has not been filed electronically because:

- ☐ it cannot be converted to electronic format

- ☑ the electronic file size of this material exceeds 10 megabytes (MB)

- ☐ it is filed under seal

- ☐ the Court by Order has excused electronic filing

- ☐ it is exempt from electronic filing pursuant to § II.A.1 of the ECF Policy & Procedures
  Manual

The document, paper, or other material will be conventionally served on all parties.

s/ Robin Konrad
_____
Name  Robin Konrad
Attorney bar number, if applicable  Ala. 2194-N76K
Address 850 West Adams Street, Suite 201
City  Phoenix
State, Zip Code  Arizona, 85007
Phone: 602.382.2865
Fax: 602.889.3960
E-mail: robin_konrad@fd.org

*Certificate of Service*

☑ I hereby certify that on (date) _June 30, 2011_____, I electronically transmitted the

attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on

file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrants: (insert names)

Jennifer L. Strickland
Seth S. Branham
Assistant Attorney Generals
Office of the Attorney General
313 N.E. 21st Street
Oklahoma City, OK 73105

☐ I hereby certify that on (date) _____, I served the attached document by

(service method) _____ on the

following, who are not registered participants of the ECF System: (insert names and addresses)

_s/ Robin Konrad_____
s/ Attorney Name