## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

TREMANE WOOD,              )
                                    )
                Petitioner,      )
vs.                             )          NO. CIV-10-0829-HE
                                    )
ANITA TRAMMELL, Warden,    )
Oklahoma State Penitentiary,     )
                                    )
             Respondent.[1]    )

## MEMORANDUM OPINION

Petitioner, a state court prisoner, has filed a petition for a writ of habeas corpus seeking relief pursuant to 28 U.S.C. § 2254. Doc. 35. Petitioner challenges the convictions entered against him in Oklahoma County District Court Case No. CF-2002-46. Tried by a jury in 2004, petitioner was found guilty of first degree felony murder, robbery with firearms, and conspiracy to commit a felony. Petitioner was sentenced to death for the murder. In support of his death sentence, the jury found three aggravating circumstances: (1) petitioner knowingly created a great risk of death to more than one person; (2) the murder was especially heinous, atrocious, or cruel; and (3) the existence of a probability that petitioner would commit criminal acts of violence that would constitute a continuing threat to society. For his non-capital crimes, petitioner received consecutive life sentences (O.R. IV, 614-22, 756-61).[2]

---

[1] *Pursuant to Fed. R. Civ. P. 25(d), Anita Trammell, who currently serves as warden of the Oklahoma State Penitentiary, is hereby substituted as the proper party respondent in this case.*

[2] *Although unnoted in the verdicts or the judgment, petitioner was charged with (and the jury was instructed on) felony murder only (O.R. I, 1, 79; O.R. III, 538; O.R. IV, 648, 653-54).*

Petitioner has presented ten claims for relief. Respondent has responded to the petition and petitioner has replied. Docs. 35, 65, and 80. In addition to his petition, petitioner filed several motions; however, with the exception of his request for an evidentiary hearing, all of these motions have been determined. After a thorough review of the entire state court record (which respondent has provided), the pleadings filed in this case, and the applicable law, the court concludes that an evidentiary hearing is unwarranted and petitioner is not entitled to habeas relief. [3]

## I. Procedural History.

Petitioner appealed his convictions and sentences to the Oklahoma Court of Criminal Appeals (hereinafter "OCCA"). The OCCA affirmed in a published opinion. Wood v. State, 158 P.3d 467 (Okla. Crim. App. 2007), cert. denied, 552 U.S. 999 (2007). Petitioner also filed two post-conviction applications, which the OCCA denied in unpublished opinions.

---

[3] *Petitioner objects to the page limits imposed on his petition and briefs by General Order 10-1, arguing that the limit is an "arbitrary constraint" on his ability to present his case and that it violates his due process rights. Petitioner cites no authority for that proposition, probably because there isn't any. As the Tenth Circuit observed several years ago in connection with a similar argument: "Reduced to its pure form, petitioner's argument is that due process entitles him to file a brief of whatever length he believes is necessary to argue his case. He cites no authority so holding, and we know of none." Simpkins-Bey v. Henderson, No. 90-1378, 1991 WL 80745, at *1 (10th Cir. May 16, 1991). Page limitations are routinely imposed by both trial and appellate courts, with many being significantly more restrictive than those applied here. His direct appeal was limited to 100 pages. Rule 9.3(A), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. Any appeal to the Tenth Circuit will be subject to limits of 30 pages for the opening brief and 15 pages for a reply brief. Fed.R.App.P. 32(a)(7). Here, General Order 10-1 imposes a limit of 100 pages for the petition or opening brief and 25 pages for the reply brief. In addition, petitioner sought to file an oversize brief and was granted leave to exceed the limit by 10 pages. Doc. 33. There is nothing in petitioner's circumstances which plausibly suggests his obviously capable counsel could not make all meritorious arguments in 135 pages or less. And if they weren't meritorious, the deficiency can't be made up by volume.*

Wood v. State, No. PCD-2011-590 (Okla. Crim. App. Sept. 30, 2011) (unpublished);

Wood v. State, No. PCD-2005-143 (Okla. Crim. App. June 30, 2010) (unpublished).

## II. Facts.

In adjudicating petitioner's direct appeal, the OCCA set forth a summary of the presented evidence. Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." Although this presumption may be rebutted by petitioner, the court concludes that petitioner has not done so.[4] Thus, as determined by the OCCA, the facts are as follows:

> [Petitioner] and three others were involved in and charged with the murder of Ronnie Wipf and the robbery of Arnold Kleinsasser. Clarity requires us to set forth the relationship between these defendants and the outcome of their cases. In addition to [petitioner], the defendants include [petitioner's] older brother Zjaiton Wood, Zjaiton's girlfriend Lanita Bateman, and the mother of one of [petitioner's] sons, Brandy Warden.[FN3] Brandy Warden entered into a plea agreement, cooperated with the State and testified against her co-defendants. She pled guilty to Accessory After the Fact and Conspiracy. [FN4] Zjaiton and Lanita were each found guilty in separate trials of felony murder, robbery with firearms, and conspiracy.[FN5]
>
> > FN3. Brandy had previously dated [petitioner], but was not in a romantic relationship with him at the time this crime was committed.
> >
> > FN4. The district court sentenced her to 45 years for accessory after the fact and 10 years for conspiracy.
> >
> > FN5. Zjaiton Wood was sentenced to life imprisonment without the possibility of parole for felony murder and 60 years imprisonment for robbery and conspiracy. [The OCCA] affirmed his convictions in

---

[4] *In his statement of the facts, petitioner attempts to tell the "untold story of the crime," and in doing so, he relies on information not presented to the jury, including an affidavit executed by one of his co-defendants seven years after his trial. Petition, pp. 3-6.*

Wood v. State, Case No. F–2005–246 (Okl.Cr., Dec. 20, 2006) (unpublished opinion). Lanita Bateman was sentenced to life imprisonment for felony murder, 101 years imprisonment for robbery and 10 years imprisonment for conspiracy. [The OCCA] affirmed her convictions in Bateman v. State, Case No. F–2003–647 (Okl.Cr., April 19, 2004) (unpublished opinion).

On New Years Eve 2001, Ronnie Wipf and Arnold Kleinsasser went to the Bricktown Brewery in Oklahoma City where Zjaiton, [petitioner], Lanita and Brandy were celebrating. Near closing time, Wipf and Kleinsasser met Lanita and Brandy believing they were two ordinary girls celebrating the new year together. Lanita and Brandy agreed to accompany Wipf and Kleinsasser to a motel on the pretext of continuing to celebrate the new year. Brandy, Lanita, [petitioner], and Zjaiton then made a plan whereby the women would pretend to be prostitutes and the brothers Wood would arrive at the motel later and rob Wipf and Kleinsasser.

Once in their room at a Ramada Inn, Lanita made a telephone call to Zjaiton to let him know where they were, ending her conversation by saying, "Mom, I love you" so the victims would not be suspicious. The call to "Mom" was followed by some general conversation among the four which included a discussion of what each did for a living. Lanita told Kleinsasser that "this" is what she did and he realized that she meant she earned her living by having sex with men. That revelation was followed by a negotiation whereby the two women agreed to have sex with Wipf and Kleinsasser for $210.00. Since neither man had that much money, Brandy drove Kleinsasser to a nearby ATM. He gave her the money he withdrew and they returned to the room.

Back at the motel, the women went into the bathroom together, and shortly after, someone pounded on the door and called out, "Brandy, are you in there? Brandy, are you ready to go home?" Wipf refused to open the door and urgently told Kleinsasser to call the police. Before he could reach the phone, Lanita picked it up and pretended to call the police. Since it was now clear that the women were not going to have sex with them, Wipf demanded the return of their money. After a brief period of pandemonium in the room, Wipf opened the door and the women ran out. Recognizing a white car as the one Zjaiton and [petitioner] were driving, they got in and waited. Meanwhile, two masked men rushed into the motel room, a larger man, subsequently identified as Zjaiton Wood, holding a gun and a smaller man, subsequently identified as [petitioner], brandishing a knife.[FN6] Zjaiton pointed the gun at Kleinsasser's head and demanded money. Kleinsasser gave him the rest of the

money in his wallet. Zjaiton then joined [petitioner] in his attack on Wipf. As the three struggled, Kleinsasser heard one of the intruders say, "Just shoot the bastard" and then a gunshot. [Petitioner] then turned his attention to Kleinsasser, demanding more money. Kleinsasser showed him his empty wallet, and [petitioner] hit him on the head with the knife. [Petitioner] rejoined the struggle with Wipf and the fight moved into the bedroom area. Kleinsasser could see Wipf was bleeding and knew that he was seriously injured. While the two intruders struggled with Wipf, Kleinsasser escaped and sought help from the motel office. Before anyone could unlock the office door and help him, however, Kleinsasser fled to a nearby apartment complex to hide. From his vantage point there, he watched the motel and saw a white car leave the parking lot. He saw people come and go throughout the night, but, with no sense of whom they were, remained in hiding. It was 6:00 a.m. before he returned to the scene of the attack and learned of Wipf's death from a police detective.

> FN6. Kleinsasser could not identify his attackers because they remained masked throughout the entire incident so he described the men's actions distinguishing the men by their size. Zjaiton is the larger of the Wood brothers. According to their mother's estimates, Zjaiton is the taller of the two brothers and outweighs [petitioner] by some 50 pounds, making him easily distinguishable from [petitioner].

The medical examiner concluded that Wipf died as the result of a stab wound to the chest. There was no evidence he had sustained any kind of gunshot wound. Surveillance videotape from the motel's camera showed Brandy and Lanita renting the room with Wipf and Kleinsasser. The motel's phone records showed that three calls were made from the room to Zjaiton's pager and one to the house where [petitioner] lived. Surveillance videotape from a local Wal–Mart showed Brandy, Lanita, Zjaiton, and [petitioner] buying ski masks and gloves earlier in the evening.[FN7] As part of her plea bargain, Brandy testified against [petitioner] detailing the events of the evening from buying the masks and gloves through their actions the morning after the murder.

> FN7. Prior to going to the Bricktown Brewery, Zjaiton and [petitioner] robbed a local pizza restaurant and attacked the owner, wearing the masks and gloves they had just purchased and using the gun and knife that they later used in the robbery-murder at the Ramada Inn. According to the restaurant owner, the smaller man had the knife and the larger man had the gun.

Zjaiton testified for the defense, against the advice of counsel. He said that it was he who stabbed Wipf, aided in the crime by a man named Alex. Zjaiton claimed that he took the knife from Alex and stabbed Wipf with it. He testified that [petitioner] was not involved in the crime.

Wood, 158 P.3d at 471-72.

### III. Standard of Review.

#### A. Exhaustion as a Preliminary Consideration.

The exhaustion doctrine is a matter of comity. It provides that before a federal court can grant habeas relief to a state prisoner, it must first determine that he has exhausted all of his state court remedies. As acknowledged in Coleman v. Thompson, 501 U.S. 722, 731 (1991), "in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." While the exhaustion doctrine has long been a part of habeas jurisprudence, it is now codified in 28 U.S.C. § 2254(b).

#### B. Procedural Bar.

Beyond the issue of exhaustion, a federal habeas court must also examine the state court's resolution of the presented claim. "It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'" Cone v. Bell, 556 U.S. 449, 465 (2009) (quoting Coleman, 501 U.S. at 729). "The doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Coleman, 501 U.S. at 729-30.

**C.    Merits.**

When a petitioner presents a claim to this court, the merits of which have been addressed in state court proceedings, 28 U.S.C. § 2254(d) governs his ability to obtain relief. Cullen v. Pinholster, 563 U.S. 170, ___, 131 S.Ct. 1388, 1398 (2011) (acknowledging that the burden of proof lies with the petitioner).  Section 2254(d) provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The focus of Section 2254(d) is on the reasonableness of the state court's decision.  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."  Schriro v. Landrigan, 550 U.S. 465, 473 (2007).

"Under § 2254(d), a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  Harrington v. Richter, 562 U.S. 86, 102 (2011). Relief is warranted only "where there is no possibility fairminded jurists could disagree that

the state court's decision conflicts with [the Supreme Court's] precedents." Id. The deference embodied in "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." Id. at 102-03 (citation omitted). When reviewing a claim under Section 2254(d), review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 131 S.Ct. at 1398.

## IV. Analysis.

### A.    Claim One:  Ineffective Assistance of Trial Counsel.

In his first claim, petitioner asserts that trial counsel was ineffective in the investigation and presentation of mitigating evidence.  Petitioner presented this claim to the OCCA in his direct appeal opening brief and in a Rule 3.11 motion.[5]  The OCCA granted petitioner's Rule 3.11 motion, and the trial court conducted a three-day evidentiary hearing during which twenty-five witnesses testified.  After the hearing, the trial court made findings of fact and conclusions of law, which the OCCA reviewed after supplemental briefing by the parties.  Applying Strickland v. Washington, 466 U.S. 668 (1984), the OCCA concluded that petitioner was not denied constitutionally effective counsel because the evidence petitioner faulted trial counsel for failing to present was not new evidence but only more detail of the same evidence the jury heard.  Wood, 158 P.3d at 479-81.

_____

[5] *Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App., permit a defendant the opportunity to further develop a claim of ineffective assistance of trial counsel "predicated upon an allegation of failure of trial counsel to properly utilize available evidence or adequately investigate to identify evidence which could have been made available during the course of the trial . . . ."*

Because the OCCA addressed this claim on the merits, petitioner acknowledges that review is governed by Section 2254(d). However, arguing that the OCCA's decision is contrary to or an unreasonable application of Supreme Court law and that it is also based on unreasonable factual determinations, petitioner urges this court to review the claim de novo[6] (along with numerous declarations, reports, and records which were not a part of the state court record on direct appeal).[7] Respondent argues that this claim must be reviewed with triple deference (deference afforded the trial court in making credibility determinations, deference afforded trial counsel by Strickland, and deference afforded the OCCA's decision by the AEDPA) and denied. The court agrees with respondent.

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance . . . ." Burt v. Titlow, 571 U.S.___, 134 S.Ct. 10, 18 (2013). Whether counsel has provided constitutional assistance is a question to be reviewed under the familiar standard set forth in Strickland. To obtain relief, a petitioner is required to show not only that his counsel performed deficiently, but that he was prejudiced by it. Strickland, 466 U.S. at 687. The assessment of counsel's conduct is "highly

---

[6] See Panetti v. Quarterman, 551 U.S. 930, 953 (2007) ("When a state court's adjudication of a claim is dependent on an antecedent unreasonable application of federal law, the requirement set forth in § 2254(d)(1) is satisfied. A federal court must then resolve the claim without the deference AEDPA otherwise requires."); Milton v. Miller, 744 F.3d 660, 670-71 (10th Cir. 2014) (citing Panetti for the proposition that a petitioner's satisfaction of Section 2254(d) does not in and of itself require relief, but it does permit the habeas court to review the claim de novo).

[7] Not only were they not a part of the direct appeal record, but almost half of petitioner's exhibits (Petitioner's Exhibits 4-8, 12, 14-15, 19, 23-25, 27, 31, and 33) have never been presented to the OCCA (even though petitioner filed two post-conviction applications after his direct appeal, one of which was even filed after the filing of the petition in this case).

deferential," and a petitioner must overcome the strong presumption that counsel's actions constituted sound trial strategy. Id. at 689. A showing of prejudice under Strickland "is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In Richter, the Supreme Court addressed not only the limitations of the AEDPA, but how those limitations specifically apply to a claim of ineffective assistance of counsel that a state court has denied on the merits. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Richter, 562 U.S. at 101 (internal quotation marks and citation omitted). The Supreme Court bluntly acknowledged that "[i]f this standard is difficult to meet, that is because it was meant to be." Id. at 102.

> [The AEDPA] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.

Id. at 102-03 (internal quotation marks and citation omitted). When these limits imposed by the AEDPA intersect with the deference afforded counsel under Strickland, a petitioner's ability to obtain federal habeas relief is even more limited.

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry

threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so[.] The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Richter, 562 U.S. at 105 (internal quotation marks and citations omitted).[8]

In denying petitioner relief on this claim, the OCCA held as follows:

In his sixth proposition, [petitioner] argues that he was denied his Sixth Amendment right to effective counsel because his trial attorney failed to fully investigate his background and present mitigating evidence at his capital sentencing proceeding. . . . Pursuant to Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2005), [petitioner] applied for an evidentiary hearing to supplement his ineffective

---

[8] *In his reply, Reply, pp. 2-3, petitioner argues against the application of Richter's "fairminded jurists" standard; however, it is applicable Supreme Court precedent on the AEDPA's standard of review, and it has been reaffirmed by the Supreme Court and applied by the Tenth Circuit on multiple occasions. Woods v. Donald, 575 U.S. ___, 135 S.Ct. 1372, 1376 (2015); White v. Woodall, 572 U.S. ___, 134 S.Ct. 1697, 1702 (2014); Titlow, 134 S.Ct. at 15-16; Parker v. Matthews, 567 U.S. ___, 132 S.Ct. 2148, 2155 (2012); Hanson v. Sherrod, 797 F.3d 810, 825 (10th Cir. 2015); Bonney v. Wilson, 754 F.3d 872, 880-81 (10th Cir. 2014); Frost v. Pryor, 749 F.3d 1212, 1223, 1225-26 (10th Cir. 2014) Howell v. Trammell, 728 F.3d 1202, 1213 (10th Cir. 2013); Black v. Workman, 682 F.3d 880, 892-93 (10th Cir. 2012).*

assistance of counsel claim, appending to his application, *inter alia*, numerous records detailing his contacts with the Office of Juvenile Affairs and various affidavits from individuals involved in his case or in his life. This Court found that [petitioner] had met his burden to warrant a hearing on his ineffective assistance of trial counsel claim and remanded the matter to the district court for an evidentiary hearing.[FN24] The district court held an evidentiary hearing and submitted written findings of fact and conclusions of law concerning the availability of and use of the evidence that was presented in [petitioner's] application, the effect of any evidence not presented on the trial proceedings, whether the failure to use the evidence was trial strategy, and whether the evidence was cumulative or would have affected the verdict. The district court found that the evidence presented in the application was available to trial counsel and that trial counsel presented during [petitioner's] trial "substantially all of the credible evidence." The district court found no overall failure to investigate because "most" of the available mitigating evidence was admitted through the testimony of the defense expert during [petitioner's] capital sentencing proceeding. The district court concluded that any evidence omitted from the trial that was presented during the evidentiary hearing would have had little or no effect on the outcome of the trial proceedings.

> FN24. "Order Remanding to the District Court of Oklahoma County for Evidentiary Hearing on Claim of Ineffective Assistance of Counsel," Case No. D–2005–171 (Nov. 16, 2005).

In reviewing the district court's findings, we accord them "strong deference." Rule 3.11(B)(3)(b)(iv), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2006). We must, however, decide the ultimate issue whether trial counsel was ineffective.

> Ineffective assistance under <u>Strickland</u> is deficient performance by counsel resulting in prejudice, with performance being measured against an "objective standard of reasonableness," "under prevailing professional norms." This case, like some others recently, looks to norms of adequate investigation in preparing for the sentencing phase of a capital trial, when defense counsel's job is to counter the State's evidence of aggravated culpability with evidence in mitigation. In judging the defense's investigation, as in applying <u>Strickland</u> generally, hindsight is discounted by pegging adequacy to "counsel's perspective at the time" investigative decisions are made, and by giving a "heavy measure of deference to counsel's judgments[.]"

Rompilla v. Beard, 545 U.S. 374, 380–81, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005) (citations omitted).

The crux of [petitioner's] claim is that trial counsel failed to obtain his juvenile records from the Office of Juvenile Affairs and consequently failed to discover mitigation witnesses who could have testified about positive relationships they had with him during his life or corroborate positive or mitigating information about his background.

The district court concluded that trial counsel and the defense psychological expert had possession of [petitioner's] background records, including his relevant juvenile records. This finding is supported by the record. The psychological expert testified at trial that he had reviewed records from the Department of Human Services, patient records from [petitioner's] brief stay at Meadow Lake Mental Health Hospital, prison records and police records. He also referred to records from "juvenile sources" and testified about [petitioner's] placement in therapeutic foster care. He indicated that he had reviewed records from [petitioner's] placement in the Vision Quest program [FN25] as well as [petitioner's] juvenile petitions to adjudicate him delinquent for various crimes. He testified that [petitioner] did well in his juvenile placements and, in fact, had his best year ever while living in therapeutic foster care. The defense psychologist was not called at the evidentiary hearing on ineffective assistance of counsel to further identify the records he had reviewed in preparation for the capital sentencing proceeding in this case.

> FN25. Dr. Hand did testify that he did not have [petitioner's] records from his placement in the COJAC program.

[Petitioner's] trial attorney testified at the evidentiary hearing that he believed he had the necessary records to put on his case in mitigation. He referred to [petitioner's] school records and his "growing up" records. Counsel recalled specifically having records from the Office of Juvenile Affairs, the Department of Human Services and Meadow Lake Mental Health Hospital.[FN26] Counsel testified that he gave the records he had to his expert and employed a mitigation strategy that had proved successful for him in the past. The strategy consisted of presenting a psychologist to testify about [petitioner's] background, family history and the expert risk assessment of [petitioner's] future dangerousness,[FN27] along with testimony from family witnesses.[FN28] Counsel testified that while he did not interview or speak with any of [petitioner's] foster family members or mentors that he was

assigned while in juvenile custody, he did speak with everyone [petitioner] himself identified as a potential mitigation witness.[FN29]

FN26. The records custodian from the Office of Juvenile Affairs testified at the evidentiary hearing that there had not been a records request for [petitioner] prior to appellate counsel's request. There was, however, testimony that the Office of Juvenile Affairs was part of the Department of Human Services until approximately 1995 and that there was some records overlap. Trial counsel also had access to the background records in Zjaiton's case through the prosecutor's open file policy.

FN27. Counsel testified that he believed the expert was the key witness in presenting a mitigation case and that family witnesses were not as important.

FN28. Defense counsel presented [petitioner's] godmother as the defense's first witness followed by the psychologist and then [petitioner's] mother. [Petitioner] told defense counsel not to put on any other family witnesses after his mother's testimony because he did not want to subject them to such an emotional experience.

FN29. At the evidentiary hearing, the defense called the jury foreperson at [petitioner's] trial to testify, consistent with her affidavit, that her verdict likely would have been different had she heard the omitted testimony. Post trial, the juror was shown isolated affidavits by an investigator for appellate counsel which were presented out of the context of the State's evidence and without benefit of cross-examination and the jury process. The district court found that the testimony of the juror was of little value given the circumstances. This juror was an incompetent witness and her affidavit and testimony should have been disallowed under 12 O.S.2001, § 2606(B). It is a well settled rule that jurors may not impeach or contradict their verdict by affidavits or testimony after they have been discharged from the jury. Wacoche v. State, 1982 OK CR 55, ¶ 17, 644 P.2d 568, 572. The reasoning behind the rule is simple. Were individual jurors allowed to make affidavits or give testimony disclosing the manner of deliberations and their reasons for rendering a particular verdict, there would be no reasonable end to litigation. See Matthews v. State, 2002 OK CR 16, ¶ 14, 45 P.3d 907, 915. Jurors would be harassed by both sides and find themselves being repeatedly questioned about their

decision. See id. Such an unsettled state of affairs would be a disservice to the parties and an unconscionable burden upon citizens who serve on juries. This rationale applies with equal weight when affidavits or testimony by former jurors is offered in an attempt to show that evidence not presented by counsel might well have produced a different result because it requires jurors to reveal the mental processes undertaken in deliberations. Any other result would potentially subject jurors to a barrage of queries concerning how they would have voted if presented any one of an inestimable number of pieces of evidence. Since such testimony is inadmissible, we will not consider it in our consideration of this claim.[9]

The standard for counsel's performance is competence. The trial court on remand for evidentiary hearing found that counsel's representation did not fall below that standard. Counsel presented evidence concerning [petitioner's] troubled background and about his childhood growing up in an abusive (both physically and emotionally) household with little parental supervision or guidance. He presented evidence that [petitioner] filled the void created by the absence of his parents by following in the footsteps of his older unstable, delinquent brother, whose affection and approval he sought. He presented evidence that when [petitioner] was away from his brother's influence, he obeyed the rules set for him and did well. Trial counsel also presented evidence through the psychologist about the risk factors in [petitioner's] background and how those factors affect development and behavior. He presented evidence about the expert risk assessment of [petitioner] to contest the State's claim that [petitioner] constituted a continuing threat to society. And he presented evidence that [petitioner] was a loving parent and that his family cared for him and would maintain contact with him if he were given a sentence of imprisonment.[FN30]

---

[9] *Petitioner asserts that the OCCA's failure to consider this juror's affidavit constitutes an unreasonable application of* Strickland *and* Wiggins v. Smith, *539 U.S. 510 (2003). Petition, pp. 24 n.25, 31 n.30. The OCCA refused to consider the affidavit based on a state evidentiary rule, and petitioner has not shown that the OCCA acted unreasonably in doing so. See* Matthews v. Workman, *577 F.3d 1175, 1183 (10th Cir. 2009) ("There is nothing in clearly established Supreme Court law requiring states to take cognizance of evidence excludable under such common evidentiary rules."). Moreover, the fact that the OCCA did not consider this evidence does not mean that it unreasonably applied* Strickland's *prejudice prong. The OCCA is fully capable of making the objective determination of whether "there is a reasonable probability that at least one juror would have struck a different balance" without consideration of post-trial juror affidavits.* Wiggins, *539 U.S. at 537.*

FN30. From the mitigation case presented by counsel, the district court identified for the jury seventeen mitigating circumstances, including that [petitioner's] parents were divorced when he was young, [petitioner] had no father figure during childhood and little support from his natural father, [petitioner's] mother was absent during most of his childhood and he was faced with substitute parenting, [petitioner] can live in a structured prison environment without hurting anyone, [petitioner] spent time in foster care, and [petitioner] took directions from his older brother Zjaiton. (O.R.634–35)

Evidence of [petitioner's] chaotic home life and background was presented to the jury through both an expert and lay witness. While other witnesses not called at trial could have provided further detail to support the mitigation evidence that [petitioner] did well in his juvenile placements, grew up in an abusive home and was negatively influenced by his older brother, credible evidence was presented covering these areas. We find the trial court correctly concluded that the material testimony from those credible witnesses not called at trial was nonetheless presented to the jury. We further find that [petitioner] has failed to show that the outcome of his case would have been different had the credible evidence developed at the evidentiary hearing been presented during his capital sentencing proceeding.

Wood, 158 P.3d at 479-81.

Petitioner attacks the OCCA's decision on multiple grounds. Petitioner's first argument is that the OCCA's decision is unreasonable under both provisions of Section 2254(d) due to an evidentiary ruling made by the trial judge who presided over the state court evidentiary hearing. The ruling prevented petitioner from presenting a licensed clinical social worker, Dr. Kate Allen, whom he asserts would have "contextualize[d] [his] childhood" and "put all of [the] information from [his] lay witnesses in perspective." Petition, pp. 21, 23. The record reflects that the trial judge sustained the state's objection to

this witness on two grounds, her qualifications to testify as a mental health expert[10] and the duplicative nature[11] of her testimony (E.H. Tr. 2/27/06, 221).  Petitioner asserts that the trial judge made an unreasonable determination of the facts when he determined that the witness was unqualified, and that without this expert testimony, the OCCA was unable to conduct a proper legal analysis under Strickland.

In response to this argument, respondent faults petitioner for not challenging the trial court's ruling in his supplemental brief to the OCCA.  Respondent asserts that because petitioner did not complain to the OCCA about the trial court's evidentiary ruling, the issue is unexhausted and subject to procedural default.  Although the court is not convinced that petitioner's failure to raise the issue in his supplemental brief results in the application of a procedural bar,[12] the court nevertheless concludes that the OCCA's determination of

_____

[10] *In her report, Dr. Allen, a licensed social worker with a doctorate in family sociology, states that petitioner suffers from post-traumatic stress disorder and general anxiety disorder due in large part to the domestic violence he witnessed between his parents. She further states that she saw no evidence of paranoia or schizotypal personality traits, but that she "can certainly support diagnostic impressions of rebellious attitude, immaturity, self-indulgence, depression, dependency, generalized anxiety and PTSD . . . ."  Petitioner's Exhibit 18, pp. 3, 5-6.*

[11] *Dr. Allen's report discusses matters presented at petitioner's trial including how petitioner's parents failed him, how his older brother assumed the parenting role, and how well petitioner did during the periods of time he was removed from the home as a juvenile.  Petitioner's Exhibit 18.*

[12] *Respondent has not shown by court rule or case law authority that the OCCA applies a waiver to issues not presented in a supplemental brief, and per court rule, supplemental briefs are optional.  See Rule 3.11(B)(3)(b)(vi), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App. Moreover, despite petitioner's failure to challenge the trial court's exclusion of Dr. Allen's testimony, it is clear that petitioner's claim, ineffectiveness of trial counsel, which was presented to the OCCA on direct appeal and denied on the merits, is exhausted.  The court notes, however, that petitioner has not presented a direct challenge to the trial court's evidentiary ruling. Instead, he relies upon it here in an attempt to overcome the limitations of Section 2254(d), and in*

petitioner's trial counsel ineffectiveness claim cannot be deemed legally or factually unreasonable based on Dr. Allen's report and what testimony she might have given at the state court evidentiary hearing.

"Federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." Williams v. Taylor, 529 U.S. 420, 437 (2000). Section 2254(d)(1) "carries out 'AEDPA's goal of promoting comity, finality, and federalism by giving state courts the first opportunity to review [a] claim, and to correct any constitutional violation in the first instance.'" Pinholster, 131 S.Ct. at 1401 (quoting Jimenez v. Quarterman, 555 U.S. 113, 121 (2009)). Because "[i]t would be strange to ask federal courts to analyze whether a state court's adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court[,]" Pinholster makes clear that a state-court decision is to be reviewed based on the record before it. Pinholster, 131 S.Ct. at 1398, 1399. Section 2254(d)(1)'s "backward-looking language requires an examination of the state-court decision at the time it was made." Id. at 1398. Its focus is "on what a state court knew and did." Id. at 1399.[13]

The OCCA did not consider any issue related to Dr. Allen because it had no reason to. Dr. Allen was precluded from testifying and her report was not admitted into evidence.

_his Claim Three, he asserts that appellate counsel was ineffective for failing to raise the issue in the supplemental brief._

[13] _Although Pinholster only addressed Section 2254(d)(1), the Supreme Court acknowledged that by its plain language, Section 2254(d)(2) is limited to the state-court record as well. Pinholster, 131 S.Ct. at 1400 n.7._

Although the trial court did admit Dr. Allen's report for the sole purpose of giving petitioner an opportunity to have its ruling reviewed by the OCCA (E.H. Tr. 2/27/06, 220, 223), petitioner made absolutely no mention of Dr. Allen or her report in the permitted supplemental brief he filed. Consequently, in determining that petitioner was not denied the effective assistance of counsel, the OCCA made absolutely no reference to Dr. Allen either. Wood, 158 P.3d at 479-81. Despite these circumstances, petitioner asks this court to find that the OCCA acted unreasonably in denying him relief on his trial counsel ineffectiveness claim based on an issue which the OCCA was never called to rule upon. The AEDPA does not permit this type of sandbagging. On direct appeal, the OCCA was not presented with any claim of error related to Dr. Allen, and therefore, it was not even given the opportunity to act unreasonably with respect to it.[14] Petitioner's first argument is therefore denied.

---

[14] *The parties dispute whether or not Dr. Allen's report was a part of the state court record. Respondent contends that it was not because it was admitted for the sole purpose of permitting appellate review and petitioner did not seek review of the trial court's ruling in his supplemental brief. Response, pp. 44-45. Petitioner contends that it was a part of the state court record because the trial court admitted it for purpose of appellate review. Petitioner notes that in his first post-conviction proceeding, the OCCA even acknowledged that appellate counsel had provided Dr. Allen's report on direct appeal. Reply, p. 6 & n.4. However, the court's decision is not based on this hair-splitting determination, and the court does not believe that Pinholster requires it. What Pinholster requires is that this court step into the state-court's shoes and review its determination in light of the circumstances before it. Pinholster places the focus on what the "state court knew and did." Id. at 1399. The OCCA did not consider Dr. Allen's report or any error related thereto because it was not asked to, and no fairminded jurist could impute fault here. The OCCA was under no obligation to search the trial court evidentiary hearing transcripts and sua sponte raise potential errors which petitioner declined to do. It therefore follows that the OCCA cannot be said to have acted unreasonably for something it was never asked to consider.*

Next, petitioner asserts that the OCCA's decision is based on four unreasonable factual determinations. The AEDPA has two provisions which govern state-court factual determinations. Section 2254(d)(2) permits habeas relief where the state court rendered "a decision that was based on an unreasonable determination of the facts in light of the evidence presented[,]" and Section 2254(e)(1) affords a presumption of correctness to state-court factual determinations that can only be rebutted by clear and convincing evidence. Because the Supreme Court has not yet decided the relationship between these provisions, the court will assess petitioner's factual arguments under Section 2254(d)(2), the one most favorable to him. Titlow, 134 S.Ct. at 15; Wood v. Allen, 558 U.S. 290, 299-01 (2010); Grant v. Trammell, 727 F.3d 1006, 1024 & n.6 (10th Cir. 2013). Even under Section 2254(d)(2), however, petitioner's ability to obtain relief is limited. Although Section 2254(d)(2) is less deferential to the state court's factual findings than Section 2254(e)(1), it is nevertheless "restrictive." Johnson v. Williams, 568 U.S. ___, 133 S.Ct. 1088, 1092 (2013). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Allen, 558 U.S. at 301. Under Section 2254(d)(2), petitioner must also show that the OCCA based its decision on the factual determinations he questions. Grant, 727 F.3d at 1023-24 (emphasizing the "based on" language of Section 2254(d)(2) and noting that findings which "concerned only subsidiary issues that the OCCA mentioned in passing" would not satisfy Section 2254(d)(2)).

Two of the factual determinations challenged by petitioner relate to the credibility of witnesses who testified at the state court evidentiary hearing. In its holding, the OCCA referred to "those credible witnesses not called at trial" and "the credible evidence developed at the evidentiary hearing." Wood, 158 P.3d at 481. Although the OCCA did not specify who the credible witnesses were or what the credible evidence was, the court assumes that the credibility determinations challenged by petitioner formed a basis for the OCCA's ruling. Regarding witness credibility, respondent is correct that the trial court's credibility assessment is to be given great deference. As the Supreme Court acknowledged in Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 575 (1985), deference is warranted because "only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." See also Wainwright v. Witt, 469 U.S. 412, 428 (1985) (noting that "determinations of demeanor and credibility . . . are peculiarly within a trial judge's province"); Marshall v. Lonberger, 459 U.S. 422, 434 (1983) ("28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.").

Petitioner's father, Raymond Gross, who did not testify at trial, testified at the evidentiary hearing that his relationship with petitioner's mother, Linda Wood, was "pretty rocky" (E.H. Tr. 2/23/06, 17). In explaining his answer, Mr. Gross admitted to pushing Ms. Wood one time during an argument. He also admitted that he once handcuffed her to his car when he found her having sex with his nephew. Mr. Gross testified that petitioner

21

witnessed both of these events (E.H. Tr. 2/23/06, 18-19).  Mr. Gross denied any further acts of abuse toward Ms. Wood.  In particular, he denied (1) tying her to a swing, pouring gasoline on her, and threatening her with a match; (2) driving the car while Ms. Wood was handcuffed to it; and (3) ever knocking out any of her teeth (E.H. Tr. 2/23/06, 24). Regarding treatment of his boys, Mr. Gross admitted that he whipped them sore when they needed to be corrected, but he denied ever "sadistically" beating his boys, whipping them in inappropriate places, or punching them in the face (E.H. Tr. 2/23/06, 24-25).

The trial judge found Mr. Gross to be credible.  He noted that Mr. Gross's testimony was consistent and not impeached.  He determined that it would not have been helpful for petitioner to call Mr. Gross as a mitigation witness in support of his contention that he grew up in an abusive home.  The trial judge additionally found that petitioner "provided no evidence that corroborates the claim made by Linda Wood that [*petitioner*] had been abused by his father" (E.H. O.R. II, 233-34) (emphasis added).

In support of his argument that these findings are unreasonable, petitioner's first assertion is that his brothers' evidentiary hearing testimony support his mother's claim that *she* was abused by his father.  Petition, pp. 33-34.  This, however, does not contradict the trial court's findings.  As set forth above, what the trial court found was that the evidence did not support that *petitioner* was abused by his father as Ms. Wood claimed (E.H. Tr. 2/23/06, 118) (Ms. Wood testified on direct examination that Mr. Gross was abusive to her children, although more emotionally and mentally than physically).  Petitioner additionally faults the trial court for finding, based on DHS records, that Ms. Wood had reported abuse which was

later determined to be "unfounded and vindictive" (E.H. Tr. 2/23/06, 233). Although the DHS report to which the trial court referred was admitted at the state court evidentiary hearing (State's Exhibit 1) and clearly supports the trial court's finding, petitioner alleges that the trial court failed to fully consider the exhibit and note an admission by Mr. Gross therein that he had been abusive to Ms. Wood in the past. Petition, p. 35. Once again, however, petitioner misreads the trial court's findings. The trial court simply found that Ms. Wood had previously reported abuse to DHS that was later determined to be unfounded and vindictive. The referenced report was made in response to a complaint by Ms. Wood regarding Mr. Gross's alleged abuse of petitioner's brother, and it clearly supports the trial court's finding. After investigation into the matter, the DHS worker ruled out any abuse or neglect and specifically noted that Ms. Wood "possibly made the referral to be vindictive" (State's Exhibit 1). For these reasons, petitioner has failed to show that these factual determinations related to Mr. Gross's testimony at the state court evidentiary hearing are unreasonable.

Petitioner's second credibility challenge concerns two of petitioner's friends, Leslie James Welch and Michael Hiltzman, who testified at the evidentiary hearing.[15] Although the trial judge noted that both of them are convicted felons, petitioner complains that the judge offered no further explanation as to why he found them incredible (E.H. O.R. II, 235-36).

---

[15] *In the trial court's findings of fact and conclusions of law, the names of these witnesses are correctly set forth in the list of presented witnesses, but incorrectly referenced thereafter as "Wesley Welch" and "Michael Heitzman" (E.H. O.R. II, 232, 235-36).*

Petitioner argues that "[t]o simply discredit the testimony of two witnesses for no reason other than a felony conviction is unreasonable." Petition, pp. 38-39.[16]

Leslie James Welch testified that petitioner was twelve years old when they met at church. They attended school together as well. Mr. Welch testified that petitioner's brother, Zjaiton, was petitioner's father figure and that Zjaiton had a negative influence on petitioner. Mr. Welch described petitioner as "a good boy" and "a good student." He recalled a time when he saw petitioner take up for a boy who was getting picked on at school. Mr. Welch testified that petitioner does not deserve a death sentence (E.H. Tr. 2/23/06, 50-52, 54-56). On cross-examination, Mr. Welch acknowledged that petitioner had stood up to Zjaiton on occasion, refused his demands, and exercised his own choices. Mr. Welch admitted that he did not know the particular facts of petitioner's crime but simply thought petitioner would not have killed someone. Mr. Welch hesitantly admitted that he was a gang member and that he had a prior felony conviction for assault and battery with a dangerous weapon (E.H. Tr. 2/23/06, 58-59, 61-63). Regarding Mr. Welch, the trial court not only noted that he "is a convicted felon who indicated he didn't think his friend deserved the death penalty," but also that "Mr. Welch's overall testimony, combined with his demeanor, appeared less that [sic] reliable or credible. . ." (E.H. O.R. II, 236).

---

[16] *In support of his argument, petitioner also relies on his Exhibit 26; however, because this exhibit was not presented to the OCCA on direct appeal, the court cannot consider it in conducting its Section 2254(d) analysis.* Pinholster, *131 S.Ct. at 1398.*

Michael Hiltzman testified that he went to school with petitioner for about seven years, and that petitioner was a good influence on him. Although he did not know Zjaiton well, Mr. Hiltzman testified that petitioner looked up to Zjaiton. Mr. Hiltzman and petitioner were in the same foster home at one time. He described petitioner's behavior at the foster home as a "responsible big brother." Mr. Hiltzman testified that he loved and missed petitioner (E.H. Tr. 2/27/06, 231-35). On cross-examination, Mr. Hiltzman admitted that he had five felony convictions, including unauthorized use of a motor vehicle, burglary, false declaration of ownership to a pawnbroker, obtaining merchandise by false pretenses, and possession of methamphetamine with intent to distribute (E.H. Tr. 2/27/06, 236). Regarding Mr. Hiltzman, the trial court noted his five felony convictions and found his testimony "not credible" (E.H. O.R. II, 236).

Petitioner has not shown that the trial court's credibility assessments of Mr. Welch and Mr. Hiltzman are unreasonable. First, the trial court's failure to provide more detail or further explanation of its credibility determinations does not render them unreasonable. In addition, it was reasonable for the trial court to consider the prior convictions of these men in assessing their credibility. See Okla. Stat. tit. 12, § 2609 (permitting impeachment of a witness for a prior conviction); Brown v. State, 487 P.2d 963, 965 (Okla. Crim. App. 1971) ("conviction of a crime may be shown to affect credibility"). See also Morales v. Johnson, 659 F.3d 588, 606 (7th Cir. 2011) ("convicted felons have diminished credibility"). Finally, the court notes that beyond the issue of his prior conviction, the trial court found that Mr. Welch's demeanor also affected his reliability, and deference is owed to this observation

which the trial court is best suited to make. Anderson, 470 U.S. at 575; Witt, 469 U.S. at 428. For these reasons, petitioner has failed to show that the trial court's credibility assessments of Mr. Welch and Mr. Hiltzman are unreasonable.

Next, petitioner asserts that the OCCA made two unreasonable factual determinations related to trial counsel's performance and preparation: (1) that trial counsel had his school records; and (2) that trial counsel had all of his records from the Office of Juvenile Affairs (OJA) and the Department of Human Services (DHS) (and that he gave these records to Dr. Ray Hand, the psychologist he presented in mitigation). Petitioner asserts that these findings are unreasonable because school representatives testified at the state court evidentiary hearing that petitioner's records had not previously been requested. Petitioner additionally asserts that if trial counsel had his school records, he surely would have introduced them (or they would have at least been referenced) to support Dr. Hand's testimony that petitioner did well in school while he was living in a foster home. Regarding the OJA and DHS records, petitioner argues that if trial counsel did have all of these records and gave them all to Dr. Hand, then Dr. Hand would not have testified on cross-examination that petitioner did not have any violent weapons charges as a juvenile (because the records show otherwise). Petitioner additionally argues that because trial counsel testified that he had about two to three hundred pages of records, and over 1,100 pages of OJA records were admitted at the state court evidentiary hearing, it was unreasonable for the OCCA to find that trial counsel had all the OJA records. Petition, pp. 35-37.

Petitioner's arguments fail to satisfy Section 2254(d)(2).  First, petitioner has not shown that the OCCA made the factual determinations he claims are unreasonable.  In support of his argument, petitioner cites page 24 of OCCA's slip opinion.[17]  From that reference, it is clear that petitioner relies on the portion of the OCCA's opinion set out in ¶ 42.  In that paragraph, the OCCA recounts trial counsel's testimony at the state court evidentiary hearing.  The OCCA states that trial counsel "testified," "believed," "referred to," and "recalled."  These are not findings of fact but statements of fact, i.e., what trial counsel testified to at the hearing, and petitioner does not assert that the OCCA misstated the content of trial counsel's testimony.  In this referenced portion of its opinion, the OCCA draws no conclusions from trial counsel's testimony nor does it make any assessment of trial counsel's credibility.  The OCCA does not affirm, adopt, or accept as true what trial counsel said.  It simply sets forth an accurate summary of his testimony.  Second, even if the court were to find that the OCCA determined the particular "facts" petitioner challenges, petitioner has not shown that the OCCA based its decision on these "facts."  The OCCA denied petitioner relief because trial counsel presented evidence which advised the jury of petitioner's mitigating circumstances.  It found that "[w]hile other witnesses not called at trial could have provided further detail to support the mitigation evidence that [petitioner] did well in his juvenile placements, grew up in an abusive home and was negatively influenced by his older brother, credible evidence was presented covering these areas."  <u>Wood</u>, 158 P.3d at 481.  The

---

[17] *When referring to the OCCA's published decision in petitioner's direct appeal, the court would have preferred citation to the official court reporter.*

OCCA's holding is not based on what particular records trial counsel did or did not have, but on the mitigation case he presented at trial and the evidence which petitioner faults counsel for not including.

Finally, petitioner takes issue with a portion of the OCCA's summary of the mitigation evidence presented at trial. In particular, petitioner challenges the following two sentences contained in the OCCA's direct appeal opinion:

> Counsel presented evidence concerning [petitioner's] troubled background and about his childhood growing up in an abusive (both physically and emotionally) household with little parental supervision or guidance. He presented evidence that [petitioner] filled the void created by the absence of his parents by following in the footsteps of his older unstable, delinquent brother, whose affection and approval he sought.

Wood, 158 P.3d at 481. Petitioner contends that this summary is unreasonable because at trial there was no evidence of (1) "confirmed" abuse by petitioner's father to his mother; (2) emotional abuse in the home; (3) limited parental supervision and guidance; and (4) Zjaiton's delinquency and petitioner's need for his approval. Petition, pp. 38-39. Petitioner's contentions are completely without merit.

Dr. Hand testified that a part of petitioner's family history and background was that he had an older brother that he looked up to (J.Tr. 4/5/04, 43). The jury was introduced to petitioner's older brother, Zjaiton, when he testified in the first stage. Zjaiton, who is two years older than petitioner, told the jury that "[a]ll of [his] life . . . [he] tried to raise [petitioner]" (J.Tr. 4/2/04, 107). Through his first stage testimony, the jury learned that Zjaiton was a Hoover Crip who had been in prison for six to eight years; that his convictions

included robbery by fear (1994), unlawful possession of a firearm (1995), and possession of a firearm after former conviction of a felony (1998); and that he had only been out of prison for approximately two and a half months when the crimes for which he and petitioner were charged occurred (J.Tr. 4/2/04, 87, 89, 107, 111-12).[18] Given the circumstances at home, Dr. Hand testified that "there wasn't anybody else [for petitioner] to follow except [Zjaiton]," and petitioner got into trouble over and over again following Zjaiton (J.Tr. 4/5/04, 57). Petitioner's mother also testified to Zjaiton's influence over petitioner (J.Tr. 4/5/04, 98-100).

The circumstances of petitioner's home life were detailed by both Dr. Hand and petitioner's mother. In his testimony, Dr. Hand mentioned conflict in the home and how petitioner had "one of his very best years" when he was in foster care. Detached from his "chaotic family" and away from his brother, petitioner experienced "a little bit of stability with some folks who were willing to set some limits and be consistent with him" (J.Tr. 4/5/04, 44). Dr. Hand told the jury that petitioner's life was shaped by certain circumstances, which included, among other things, being raised in an "[e]motionally chaotic family" with "[d]omestic violence" and divorce. As a result, petitioner experienced unpredictable parenting and inconsistent parental contact and discipline (Defendant's Exhibit 3). Dr. Hand noted negativism between petitioner's parents, the allegations of abuse

---

[18] *Petitioner was 21 years old at the time these crimes were committed. On November 5, 1998, at the age of 19, he committed the crime of knowingly concealing stolen property. Petitioner pled guilty to this offense and received a two-year prison sentence (State's Exhibits 118 and 118A). Petitioner had been free from prison (and from further trouble) for some time prior to Zjaiton's release in October 2001 (J.Tr. 4/5/04, 59, 98-100).*

going back and forth between them, and how this environment affected petitioner. In particular, Dr. Hand testified:

> So there is a lot of chaos here at four or five or six, seven, and eight when kids are supposed to be developing good habits. When the rules get laid down. When the structure of attitudes and behavior get set. Here is a young fellow, little bitty guy. . . . Little bitty kid, five-years-old, who doesn't know what to expect. Doesn't know who is going to be there for him and doesn't know how he is going to deal with life. Doesn't know who to believe.

> . . . .

> So he was already struggling at a young age. . . .[H]e was sure having a hard time adapting. . . . There is a lot of unpredictability here. Not only in which parent is going to be taking care of him, but which parent is going to do what at what point. You know, there is - - there is this on-going history of anger and frustration and what we wind up summing up with these two simple little words called domestic violence. But what in reality is really traumatizing for kids. For those of us that heard our moms and dads argue occasionally that is not domestic violence. But when you are a kid and you see and hear fists hitting bone between your parents, that leaves a mark on you, I promise.

(J.Tr. 4/5/04, 53, 55).

Petitioner's mother testified that she divorced petitioner's father when petitioner was eight years old, but prior to that time, petitioner had seen a lot of violence in their home (J.Tr. 4/5/04, 92-93). She testified that she and her boys were all afraid of petitioner's father, and she described her relationship with petitioner's father as "very abusive." She testified that she "had been beaten many, many times in front of [her] children" (J.Tr. 4/5/04, 90, 91). In light of this testimony and the other evidence detailed above, petitioner's argument that the OCCA mischaracterized the mitigation case presented to the jury is completely baseless. The OCCA's summation of the mitigation case presented by trial

counsel is not "an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d)(2).

For the foregoing reasons, the court concludes that petitioner has not shown that the OCCA rendered a decision on his trial counsel ineffectiveness claim which is unreasonable under Section 2254(d). Claim One is denied.

### B. Claim Two: Prosecutorial Misconduct.

In Claim Two, petitioner contends that he was denied a fair trial due to prosecutorial misconduct. Petitioner's claim is based on three allegations: (1) inconsistent theories advanced by the prosecution at his trial and the trial of his brother a year later; (2) a comment on his right to remain silent; and (3) the cumulative impact of these two complaints. Petitioner presented these arguments to the OCCA in his first post-conviction application. Finding that petitioner could have made these arguments on direct appeal, the OCCA did not directly address the merits of petitioner's prosecutorial misconduct claim. Wood, No. PCD-2005-143, slip op. at 18. Both parties assert, however, that because the OCCA examined whether petitioner's trial and/or appellate counsel were ineffective for failing to preserve and/or present these arguments on direct appeal, the OCCA in effect made a merits determination on the underlying claims. Petition, p. 72; Response, p. 74; Reply, p. 13 n.18. Irrespective of the procedural posture of this claim, the court concludes that even under de novo review, petitioner is not entitled to relief. See Brown v. Sirmons, 515 F.3d 1072, 1092-93 (10th Cir. 2008) (quoting Snow v. Sirmons, 474 F.3d 693, 717 (10th Cir. 2007), and acknowledging that "the interest of efficiency" is served by this suggested approach); Snow,

474 F.3d at 717 ("We can avoid deciding procedural bar questions where claims can readily be dismissed on the merits.").

Allegations of prosecutorial misconduct are given due process review. Stouffer v. Trammell, 738 F.3d 1205, 1221 (10th Cir. 2013). The question is whether the prosecutor's actions or remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). A fundamental fairness inquiry "requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase." Le v. Mullin, 311 F.3d 1002, 1013 (10th Cir. 2002). "The ultimate question is whether the jury was able to fairly judge the evidence in light of the prosecutors' conduct." Bland v. Sirmons, 459 F.3d 999, 1024 (10th Cir. 2006).

Petitioner argues that he is entitled to a new trial, or at least a new sentencing hearing, because the prosecution argued in his trial that he was the one who stabbed Ronnie Wipf and then later argued in Zjaiton's trial that Zjaiton was the actual killer. Citing Berger v. United States, 295 U.S. 78 (1935), and Bradshaw v. Stumpf, 545 U.S. 175 (2005), petitioner contends that the prosecution's advancement of these inconsistent theories constitutes misconduct warranting relief. In Berger, the Supreme Court acknowledged that a prosecutor is the pursuer of justice. "It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one." Berger, 295 U.S. at 88. In Stumpf, 545 U.S. at 177-78, the Supreme Court addressed the issue of inconsistent theories as it related to the validity of a defendant's guilty plea and

sentence of death. The Court concluded that Stumpf's plea was unaffected by what occurred in the subsequent prosecution of his co-defendant. Regarding Stumpf's sentence, however, the Court did not foreclose the possibility of relief, and it remanded the issue for further consideration.[19] Id. at 186-88. Prior to Stumpf, the Supreme Court had "never hinted, much less held, that the Due Process Clause prevents a State from prosecuting defendants based on inconsistent theories." Id. at 190 (Thomas, J., concurring).[20]

In support of his argument, petitioner has provided transcript excerpts from Zjaiton's trial. However, these excerpts confirm that even after petitioner's trial, the prosecution maintained its belief that petitioner "was in fact the stabber." Petitioner's Exhibit 28A.[21] Reviewing Petitioner's Exhibits 28B, 28C, and 28E,[22] it is apparent that among the evidence admitted against Zjaiton at his trial were letters he wrote confessing to killing Mr. Wipf (one to co-defendant Brandy Warden and one to the prosecutor) and the testimony he gave at petitioner's trial in which he admitted to stabbing him. There is no indication that the state

_____

[19] *On remand, the Sixth Circuit denied relief, and the Supreme Court declined to revisit the case.* Stumpf v. Robinson, *722 F.3d 739 (6th Cir. 2013),* cert. denied, *134 S.Ct. 905 (2014).*

[20] Stumpf *was decided after petitioner's trial (and Zjaiton's trial), but prior to the OCCA's determination of petitioner's direct appeal.*

[21] *Respondent has provided a complete copy of this transcript. Doc. 68. Repeatedly, the state reaffirms its position that petitioner was the stabber, and the trial judge, the same judge who presided over petitioner's trial, makes it abundantly clear that he will not permit the state to argue otherwise. Although the state was permitted to use Zjaiton's own incriminating statements against him, it was not allowed to present a theory that Zjaiton was the stabber, a theory inconsistent with what the state asserted at petitioner's trial (*State v. Zjaiton Wood, *Case No. CF-2002-46, Tr. 9/20/04, 4-26).*

[22] *Respondent has also provided a complete copy of this transcript. Doc. 68.*

utilized this evidence to argue that Zjaiton stabbed Mr. Wipf, but Zjaiton's statements were relevant to the jury's determination of whether Zjaiton was guilty as a principal to the felony murder charge and to the jury's determination of an appropriate sentence. Without question, the state used Zjaiton's own statements against him, but this course of action in no way infringed petitioner's due process rights. See Stumpf, 722 F.3d at 751 ("Making legal arguments from the record . . . can hardly be called 'chicanery,' an 'affirmative effort to deceive the court,' or 'a refusal to correct known error.'") (citation omitted).

Next, petitioner complains about the prosecutor's second stage closing argument. In particular, petitioner asserts that the prosecutor's references to his lack of remorse amounted to impermissible comments on his right to remain silent. See Donnelly, 416 U.S. at 643 ("When specific guarantees of the Bill of Rights are involved, . . . special care [is taken] to assure that prosecutorial conduct in no way impermissibly infringes them."); Paxton v. Ward, 199 F.3d 1197, 1217 (10th Cir. 1999) ("[A] claim that the misconduct effectively deprived the defendant of a specific constitutional right . . . may be the basis for habeas relief without proof that the entire proceeding was unfair."). In the first comment, the prosecutor noted that petitioner's mitigation expert, Dr. Hand, gave no testimony which indicated that petitioner was sorry for what he did. The prosecutor then argued that Dr. Hand did not mention remorse because petitioner did not have any (J.Tr. 4/5/04, 133). Thereafter, the prosecutor made a second remark that petitioner was "[a] man who can kill an innocent victim without mercy and without remorse" (J.Tr. 4/5/04, 139). Neither comment spurred an objection from defense counsel.

Although petitioner labels these references as "egregious," Petition, p. 71, the court disagrees. The comments about which petitioner complains were made during the state's first penalty stage closing argument, and they were brief in nature. The comments did not elicit an objection from defense counsel, and it is clear that counsel did not object because the comments were permissible under Oklahoma law. The OCCA has repeatedly held that a defendant's lack of remorse is relevant to the continuing threat aggravator. Warner v. State, 144 P.3d 838, 891 (Okla. Crim. App. 2006) ("Lack of remorse is an appropriate consideration for the jury in the second stage of a capital trial."); Powell v. State, 995 P.2d 510, 529 (Okla. Crim. App. 2000) (acknowledging that a "lack of remorse is a proper subject" for second stage closing argument); Charm v. State, 924 P.2d 754, 762-63 (Okla. Crim. App. 1996) (acknowledging that a defendant's lack of remorse is one of "[t]he most common grounds alleged to prove the continuing threat aggravator"). Because the state alleged that petitioner was a continuing threat (O.R. I, 72-73), the prosecutor's comments on remorse were relevant, and no due process violation occurred. See Coleman v. Brown, 802 F.2d 1227, 1240 (10th Cir. 1986) (finding no error in the prosecutor's argument because the petitioner's "failure to show regret or remorse for his actions may have helped the jury determine whether he was likely to commit crimes in the future"). See also James v. Gibson, 211 F.3d 543, 559 (10th Cir. 2000) (finding that the continuing threat aggravator was supported in part by the petitioner's lack of remorse).

For the foregoing reasons, the court concludes that petitioner has not shown that he was denied a fair trial due to prosecutorial misconduct. The court additionally concludes that

because neither of the complaints alleged by petitioner have merit, there is no reason to consider their cumulative effect. Petitioner's Claim Two is denied.

### C. Claim Three: Ineffective Assistance of Appellate Counsel.

In Claim Three, petitioner asserts that his appellate counsel was ineffective. Petitioner not only faults his appellate counsel for omitting four issues from his direct appeal brief, but he additionally contends that his appellate counsel failed him at the state court evidentiary hearing and in the supplemental briefing which followed. Petitioner presented his third claim to the OCCA in his first post-conviction application. Addressing the merits, the OCCA denied relief. Wood, No. PCD-2005-143, slip op. at 8-18. Respondent argues that this claim must be denied because petitioner has failed to meet the high standard for AEDPA relief. The court agrees.

Claims regarding the effectiveness of appellate counsel are governed by Strickland. Milton, 744 F.3d at 669 (citing Smith v. Robbins, 528 U.S. 259, 285 (2000)). In accordance with Strickland, a petitioner alleging appellate counsel ineffectiveness must show (1) that his appellate counsel's actions on appeal were objectively unreasonable and (2) that, but for counsel's unreasonable actions, he would have prevailed on appeal. Robbins, 528 U.S. at 285-86; Miller v. Mullin, 354 F.3d 1288, 1297 (10th Cir. 2004) (quoting Ellis v. Hargett, 302 F.3d 1182, 1186-87 (10th Cir. 2002)). As previously discussed with respect to petitioner's first claim, both Strickland and the AEDPA are highly deferential standards, "and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citation omitted).

When an appellate counsel claim concerns omitted issues, Strickland's first prong requires a showing that counsel unreasonably omitted "nonfrivolous issues" from petitioner's direct appeal. Robbins, 528 U.S. at 285. When counsel has filed a brief on the merits, it is difficult to show his incompetence for failing to raise a particular claim. Robbins, 528 U.S. at 288. Appellate counsel does not have an obligation to raise every possible claim irrespective of its merit. In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751-52). "This has assumed a greater importance in an era when oral argument is strictly limited in most courts–often to as little as 15 minutes–and when page limits on briefs are widely imposed." Jones, 463 U.S. at 752-53.

In denying petitioner relief related to counsel's failure to raise particular claims, the OCCA held in pertinent part as follows:

> A review of [petitioner's] complaints shows that he can neither show that counsel's decision on which claims to include on direct appeal was unsound strategy nor that the outcome of his appeal would have been different had appellate counsel raised these issues. Appellate counsel has a duty to raise relevant issues for this Court's consideration, but there is no obligation to raise every available non-frivolous issue. See Martinez v. State, 1999 OK CR 47, ¶ 22, 992 P.2d 426, 432. It appears to us that appellate counsel presented to this Court those claims, he believed, in light of his professional judgment, had the best chances for success that would fit within this Court's page limitation in a capital case. Appellate counsel raised seven propositions of error that filled his allotted 100 pages of brief space, dedicating more than a quarter of his brief to a claim of ineffective assistance of trial counsel. Appellate counsel's efforts resulted in this Court remanding the matter for an evidentiary hearing to investigate the ineffective assistance of trial counsel claim. On this record, we cannot find that [petitioner] has shown that his appellate counsel's

performance in presenting ineffective assistance of trial counsel claims was deficient or that he was prejudiced thereby. For this reason, his claim that appellate counsel was ineffective must be denied.

Wood, No. PCD-2005-143, slip op. at 17-18.

Before addressing the merits of the claims he believes appellate counsel should have raised, petitioner presents two initial challenges to the OCCA's holding. First, petitioner challenges the following sentence: "It appears to us that appellate counsel presented to this Court those claims, he believed, in light of his professional judgment, had the best chances for success that would fit within this Court's page limitation in a capital case." Dissecting the 100-page brief filed by appellate counsel, petitioner asserts that it does not support the OCCA's conclusion that his appellate counsel exercised professional judgment in determining what claims to present.[23] Petitioner argues it was clearly unreasonable for appellate counsel to use forty percent of the brief to argue general challenges to the death penalty (and a significant portion of this forty percent to challenge the constitutionality of the three aggravators the jury found to support petitioner's death sentence).[24] Second, petitioner

_____

[23] *Petitioner also makes a footnote reference to an affidavit executed by appellate counsel in June 2011. Petitioner's Exhibit 10. In the affidavit, appellate counsel acknowledges the many ways in which he failed in his representation of petitioner. Because this affidavit was executed some four years after the OCCA adjudicated petitioner's first post-conviction application, the court cannot consider it in conducting its Section 2254(d) analysis. Pinholster, 131 S.Ct. at 1398.*

[24] *Although petitioner claims that appellate counsel's constitutional challenges to the aggravators were for naught because the OCCA has repeatedly rejected their merit, petitioner is nevertheless requesting habeas relief on the ground that Oklahoma's continuing threat aggravator is unconstitutionally vague and overbroad (Claim Four, infra). Much like appellate counsel on direct appeal, petitioner argues for relief while acknowledging that the Tenth Circuit has previously rejected this argument.*

takes issue with the OCCA's acknowledgment that appellate counsel devoted more than a quarter of the direct appeal brief to an ineffective assistance of trial counsel claim, which ultimately resulted in the grant of an evidentiary hearing. Here, petitioner faults appellate counsel for his lengthy presentation of this claim, given that he also filed a Rule 3.11 motion which covered the same information. Petition, pp. 78-80.

Through his critique of the brief appellate counsel prepared, petitioner has undoubtedly shown areas in which it might have been improved. However, this is not the standard for relief. <u>Strickland</u> warns against hindsight assessments, <u>id.</u> at 689, and the question this court must answer is whether *all* fairminded jurists would agree that the OCCA acted unreasonably when it concluded that appellate counsel was not deficient in his representation of petitioner on appeal (and that in any event no prejudice resulted). <u>See</u> <u>Frost</u>, 749 F.3d at 1225-26 ("Under the test, if *all* fairminded jurists would agree the state court decision was incorrect, then it was unreasonable and the habeas corpus writ should be granted. If, however, *some* fairminded jurists could possibly agree with the state court decision, then it was not unreasonable and the writ should be denied.") (emphasis added); <u>Stouffer</u>, 738 F.3d at 1221 (citing <u>Richter</u>, 562 U.S. at 101, for the proposition that relief is warranted "*only if all* 'fairminded jurists' would agree that the state court got it wrong") (emphasis added). Appellate counsel filed a brief focused largely on second stage issues, which, given the strong evidence of guilt (including testimony from a surviving victim and a co-defendant), was reasonable. As noted by petitioner, appellate counsel did utilize forty pages in support of his third proposition of error, but therein counsel presented *nine* various

claims challenging the aggravating and mitigating circumstances. These nine claims included challenges to the jury instructions, the constitutionality of the aggravators, and the sufficiency of the evidence, Brief of Appellant, No. D-2005-171, pp. 20-61, and the court notes that petitioner has even presented four of these claims in support of his request for federal habeas relief. See Claim Four, infra. Regarding the OCCA's acknowledgment that appellate counsel was successful in obtaining an evidentiary hearing on trial counsel ineffectiveness, the OCCA does not remand cases for an evidentiary hearing on a routine basis, and therefore the fact that appellate counsel was able to achieve this result suggests the merit of counsel's approach. See Fairchild v. Workman, 579 F.3d 1134, 1142 (10th Cir. 2009) (noting that that the OCCA remands cases for an evidentiary hearing on ineffective assistance of trial counsel "[i]n limited circumstances"). In addition, appellate counsel cannot be faulted for presenting the the ineffective assistance of trial counsel claim in both the brief-in-chief and in the Rule 3.11 motion when the same is required by OCCA rule. See Rule 3.11(B)(3)(b), Rules of the Oklahoma Court of Criminal Appeals, Title 22, Ch. 18, App.

Beyond the foregoing arguments, petitioner presents four issues which appellate counsel failed to raise. All four issues relate to trial counsel's ineffectiveness. Petitioner asserts that had these issues been raised on appeal, "there is a reasonabl[e] probability that the OCCA would have granted relief." Petition, p. 80. When examining omitted issues, the Tenth Circuit has provided the following guidance:

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has

merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, and deferential consideration must be given to any professional judgment involved in its omission; of course, if the issue is meritless, its omission will not constitute deficient performance.

Cargle v. Mullin, 317 F.3d 1196, 1202 (10th Cir. 2003) (footnote omitted) (citations omitted).

First, petitioner asserts that appellate counsel should have raised an ineffectiveness claim based on trial counsel's failure to object to jurors moving their vehicles. In both stages of trial, after closing arguments but before the jury began deliberating, the trial court permitted jurors to move their cars from garages which would soon be closed. The trial court issued strong admonishments to the jurors on both occasions, and trial counsel, who was present, failed to object either time (J.Tr. 4/2/04, 199-214; J.Tr. 4/5/04, 159-63). Petitioner asserts that the trial court's actions constituted violations of Okla. Stat. tit. 22, § 857, which sets forth the procedure for handling the jury after the charge, i.e., submission of the case.[25] Section 857 provides as follows:

After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court.

---

[25] *Submission of the case occurs after the jury has been instructed and closing arguments have been heard.* Johnson v. State*, 93 P.3d 41, 46-47 (Okla. Crim. App. 2004). In both instances here, the case had been submitted to the jury within the meaning of Section 857.*

With reliance on two OCCA cases applying this statutory provision, Bayliss v. State, 795 P.2d 1079, 1080-81 (Okla. Crim. App. 1990), and Johnson, 93 P.3d at 46-48, petitioner asserts that had trial counsel objected, prejudice would have been presumed, and he would have prevailed on appeal. Petition, pp. 80-82.[26]

Petitioner is correct that in both Bayliss and Johnson, the OCCA found reversible error due to a violation of Section 857. However, in both cases, the trial court permitted the jury to separate over defense counsel's objection. Johnson, 93 P.3d at 46-48; Bayliss, 795 P.2d at 1080-81. Johnson is clear that prejudice will be presumed only when the defendant objects to the separation, and when an objection is made, the state is then given the opportunity to prove otherwise. Johnson, 93 P.3d at 47. In Bayliss, 795 P.2d at 1081, the OCCA granted relief because the state made no attempt to rebut the presumption, and in Johnson, 93 P.3d at 47, the OCCA found that the minimal admonishments the trial court gave to the jury were insufficient to overcome the presumption. Of course, petitioner's very argument here is that trial counsel failed to object. Had counsel objected, the court agrees that prejudice would have been presumed; however, the record is insufficient to conclude that reversal would have been warranted. Without an objection and without any development of the claim by petitioner,[27] petitioner's ineffectiveness claim can be evaluated only by the

---

[26] *Here again, petitioner makes reference to appellate counsel's affidavit which the OCCA did not consider in making its decision. Petition, p. 81. The court has not considered the affidavit in adjudicating this claim. See n.23, supra.*

[27] *Respondent aptly notes that petitioner could have developed this claim by presenting affidavits from jurors or other persons indicating that the trial court's admonishments were not followed. Response, p. 83. Although petitioner takes respondent to task for this assertion, Reply,*

existing record, which shows that the separation occurred before any deliberations took place, that the breaks were brief and for the sole purpose of having the jurors move their cars, and that the trial court's admonishments were both strong and clear. Under these circumstances, the court cannot conclude that the OCCA unreasonably determined that appellate counsel was not ineffective for failing to raise this claim.[28]

The second and third claims that petitioner contends appellate counsel should have raised concern trial counsel's actions related to Zjaiton and his first stage testimony that he, not petitioner, stabbed Mr. Wipf. Petitioner contends that trial counsel was ineffective for (1) failing to introduce co-defendant Lanita Bateman's pre-sentence investigation report (PSI) in support of Zjaiton's testimony; (2) failing to object and/or request a Daubert[29] hearing with respect to the testimony of the state's handwriting expert, who testified that

---

p. 16 n.20, the court does not interpret respondent's argument as contrary to Pinholster. The court knows of no reason why petitioner could not have further developed this claim in the manner respondent suggests in petitioner's pursuit of post-conviction relief. Had petitioner presented such information to the OCCA in his post-conviction application, the court could have considered the same in accordance with Pinholster.

[28] In a footnote, petitioner makes an additional assertion that the record is silent as to whether the bailiff was sworn as required by Section 857. Petition, p. 81 n.67. This does not change the court's analysis. The OCCA has repeatedly held that it "will not assume error from a silent record." Glossip v. State, 157 P.3d 143, 155 (Okla. Crim. App. 2007). See also Welch v. State, 968 P.2d 1231, 1245 (Okla. Crim. App. 1998); Wilson v. State, 871 P.2d 46, 49 (Okla. Crim. App. 1994); Hain v. State, 852 P.2d 744, 750 (Okla. Crim. App. 1993).

[29] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Oklahoma applies the standards set forth in Daubert to determine the admissibility of novel expert testimony. Harris v. State, 84 P.3d 731, 745 (Okla. Crim. App. 2004).

petitioner wrote a letter which contained damaging evidence of his guilt;[30] (3) failing to list as a mitigating circumstance that Zjaiton admitted to killing Mr. Wipf; and (4) failing to request an Enmund/Tison[31] instruction. Petition, pp. 82-85. For the following reasons, the court concludes that petitioner has failed to show that the OCCA made an unreasonable determination that appellate counsel was not ineffective for failing to raise these claims.

At petitioner's urging, and against the advice of counsel for both petitioner and his brother, Zjaiton testified in the first stage of petitioner's trial. Zjaiton testified that he was the one who stabbed Mr. Wipf and that he was accompanied by a man named Alex. He testified that petitioner was not present when Mr. Wipf was murdered, nor was he involved in any way (J.Tr. 4/2/04, 60-136). Wood, 158 P.3d at 472. In addition to the fact that Zjaiton's testimony was inconsistent with the presented evidence (and particularly with the testimony of co-defendant Brandy Warden),[32] Zjaiton's testimony was clearly questionable

---

[30] *In this letter to Zjaiton, petitioner responds to Zjaiton's intention to enter a guilty plea. He questions how Zjaiton will explain petitioner's DNA being on a glove found at the scene and he offers an explanation that Zjaiton might use (State's Exhibit 112).*

[31] *Tison v. Arizona, 481 U.S. 137 (1987); Enmund v. Florida, 458 U.S. 782 (1982). "The central concern of Enmund and Tison is whether a conviction for felony murder contains an adequate determination of defendants' culpability such that imposition of the death penalty does not violate the Eighth Amendment's prohibition against cruel and unusual punishment." Malicoat v. Mullin, 426 F.3d 1241, 1254 (10th Cir. 2005).*

[32] *The most obvious difference was her testimony that it was petitioner, not someone named Alex, who along with Zjaiton, Ms. Warden, and Ms. Bateman committed the charged crimes. For another example, Zjaiton testified that he and Alex came to the motel and left the motel in Alex's light blue Altima (J.Tr. 4/2/04, 92, 95). Ms. Warden testified that the four of them drove petitioner's girlfriend's car before and after the commission of the crimes (J.Tr. 4/1/04, 141, 142, 168-71). This car was a white 2000 Chrysler Sierra (J.Tr. 4/1/04, 79). In addition to the testimony given by the surviving victim (Arnold Kleinsasser) regarding a white car (J.Tr. 3/31/04, 143), two witnesses at the motel recalled seeing four people leave in a white car. One of the witnesses noted that her*

from the standpoint of credibility. Beyond the bias inherent in an older brother attempting to spare his younger brother's life, Zjaiton's testimony about Alex was sketchy. Zjaiton testified that Alex, a white man whose height and weight was similar to that of petitioner, was an associate and/or boyfriend of co-defendant Ms. Bateman, and Zjaiton admitted that he and Alex had previously sold drugs together. However, Zjaiton did not know Alex's last name, nor did he know his current whereabouts, and he testified that he had not seen Alex since the murder occurred (J.Tr. 3/31/04, 132; J.Tr. 4/1/04, 34; J.Tr. 4/2/04, 89, 101-02, 103-04). Additionally relevant to Zjaiton's believability was the fact that this was not the first murder he had admitted to. Zjaiton previously confessed to murdering Rob Andrew, the murder for which Andrew's wife, Brenda, and her paramour, James Pavatt, were both convicted (J.Tr. 4/2/05, 108-10; State's Exhibit 128). See Andrew v. Moham, No. CIV-08-832-R, 2015 WL 5254525 (W.D. Okla. Sept. 9, 2015); Pavatt v. Trammell, No. CIV-08-470-R, 2014 WL 1745019 (W.D. Okla. May 1, 2014). Although Zjaiton had written a letter to the prosecutor confessing to the murder of Andrew, Zjaiton admitted at petitioner's trial that he had never in the three years since the murder occurred told the district attorney's office or the police that he had committed this murder–a confession which had the potential, if true, to exonerate his own brother. Zjaiton had no explanation except to say, "I'm here now telling you" (J.Tr. 4/2/04, 110-11). By finding petitioner guilty of felony murder, the jury clearly rejected Zjaiton's testimony.

---

*attention was drawn to the car because the tires were squealing as it left the parking lot (J.Tr. 3/31/04, 217-18, 233-34).*

In her PSI, Ms. Bateman states she was with Zjaiton (a/k/a Jake) following the crimes against Mr. Wipf and Mr. Kleinsasser when she heard his mother ask him what he had done. Ms. Bateman heard Zjaiton tell "her that he thought he killed a guy" (O.R. III, 501). Petitioner contends that his trial counsel should have admitted the PSI to support Zjaiton's testimony that he, not petitioner, was the one who actually stabbed Mr. Wipf. Petitioner makes this assumption while acknowledging that the state attempted to present Ms. Bateman in their case-in-chief but was precluded from doing so based on Ms. Bateman's invocation of her Fifth Amendment right not to testify (J.Tr. 4/1/04, 205-20).[33] Petition, p. 82.[34] Respondent argues that even if counsel had wanted to admit the PSI, admission would have been denied on hearsay grounds. Respondent additionally asserts that admission of the PSI would not have benefitted petitioner's defense as petitioner contends. Response, p. 85. The court agrees. The very reason the state sought to admit Ms. Bateman's report in its case-in-chief was for its incriminating nature. In the PSI, Ms. Bateman implicates petitioner (erroneously referred to in the report as "Jermane") in the crimes. Consequently, it would

---

[33] *In seeking admission of Ms. Bateman's PSI, the prosecutor advised the trial court that Ms. Bateman had not been interviewed by the state and that the state's desire to have Ms. Bateman testify was based solely on her version of events contained in her PSI (J.Tr. 4/1/04, 216).*

[34] *Petitioner additionally asserts in a footnote that Ms. Bateman would have been willing to provide mitigating testimony had trial counsel investigated the matter further. Petition, p. 83 n.70. Although petitioner pleads this additional claim among the ineffective assistance of appellate counsel claims he raised in his first post-conviction application, petitioner did not raise this claim in his first post-conviction application and the affidavit supporting the claim was not even made until almost a year after his first post-conviction application was decided. See Petitioner's Exhibit 9. The court declines to address this unexhausted, unsupported, and ineptly pled single-sentence claim.*

have been inconsistent with, not supportive of, Zjaiton's testimony that he committed the crimes with Alex. Trial counsel was therefore not ineffective for failing to seek admission of Ms. Bateman's PSI, appellate counsel was not ineffective for failing to raise the claim on direct appeal, and the OCCA did not act unreasonably in its denial of this claim.

Next, petitioner claims that his trial counsel was ineffective for failing to challenge the testimony of the state's handwriting expert, David Parrett. Mr. Parrett, a "questioned document examiner" for the district attorney's office, testified about his training and experience and the principles of handwriting identification (J.Tr. 4/1/04, 268-73), and he detailed for the jury his examination and comparison of known writing samples from both petitioner and Zjaiton to the "kite" letter[35] found in Zjaiton's jail cell (J.Tr. 4/1/04, 221-27, 273-94; State's Exhibits 112 and 119). From noted characteristics in the writings, Mr. Parrett expressed his opinion as follows:

> And as a result of a comparison of the class characteristics and the individual characteristics in both [petitioner's] handwriting, . . . and Zjaiton Wood's handwriting . . . , I noted numerous, significant, individual differences in the handwriting between Zjaiton Wood and the [kite letter], leading to the opinion of excluding Zjaiton Wood as the writer of the [kite letter].
>
> In comparing the handwriting characteristics of [petitioner], the individual and the class characteristics in total of [petitioner] to the [kite letter],

---

[35] *A kite letter is a note sent from one inmate to another outside of the regular mail system. It is considered contraband (J.Tr. 4/1/04, 225-26).*

I found a sufficient number of significant, individual similarities to conclude that . . . [petitioner] prepared the text on the [kite letter].

(J.Tr. 4/1/04, 293-94).

With reference to a 2009 scientific report (issued five years after petitioner's trial) and two federal district court cases (applying Fed. R. Evid. 702), petitioner contends that had trial counsel challenged Mr. Parrett's testimony, he could have barred or at least "severely limited [the] nature and tenor" of Mr. Parrett's testimony. Petition, pp. 83-84. However, the court concludes that petitioner has failed to show that trial counsel was ineffective for failing to object to Mr. Parrett's testimony. The authority cited by petitioner fails to demonstrate a reasonable probability that he would have prevailed on appeal had appellate counsel argued this claim to the OCCA,[36] and thus he fails to show that the OCCA unreasonably denied this portion of his ineffective assistance of appellate counsel claim.

Based on Zjaiton's testimony, petitioner also faults his trial counsel for failing to include as a mitigating circumstance Zjaiton's admission that he killed Mr. Wipf. Petitioner cites Lockett v. Ohio, 438 U.S. 586, 604 (1978), for the proposition that relevant mitigation evidence includes any circumstance which might serve "as a basis for a sentence less than death." Petition, p. 84. However, the court concludes that the OCCA reasonably determined that appellate counsel was not ineffective for failing to raise this claim. As detailed above,

---

[36] *The court notes respondent's reference to* Pavatt v. State, *No. PCD-2004-25 (Okla. Crim. App. Apr. 11, 2008), attached as Respondent's Exhibit 2, wherein the OCCA rejected a similar challenge to a handwriting expert through the lens of ineffective assistance of appellate counsel. Response, p. 87. There the OCCA noted the lack of "**controlling** authority which would require exclusion of [the] evidence."* Pavatt, *slip. op. at 7 n.8 (emphasis added).*

48

Zjaiton's testimony lacked credibility and, by its first stage verdict, it is clear that the jury rejected it. Therefore, had trial counsel included Zjaiton's admission of guilt as a mitigating circumstance, there is a strong possibility that the jury would have viewed it as disingenuous. In addition, even though this additional circumstance was not specifically listed, the jury was well aware of Zjaiton's testimony, and in accordance with the instructions, if the jury wanted to consider Zjaiton's testimony as a mitigating circumstance, it was permitted to do so (O.R. IV, 634-35) ("In addition, you may decide that other mitigating circumstances exist, and if so, you should consider those circumstances as well."). Finally, the jury was instructed regarding *seventeen* specific mitigating circumstances supported by the evidence (O.R. IV, 634-35), and the court concludes that petitioner has not shown a reasonable probability that had this additional circumstance be added, the jury would have returned a different sentence.

Petitioner additionally asserts that trial counsel was ineffective for failing to request an Enmund/Tison instruction.[37] In Enmund, 458 U.S. at 797, the Supreme Court held that the Eighth Amendment prohibits the imposition of a death sentence on a defendant "who

---

[37] *Oklahoma's uniform Enmund/Tison instruction, OUJI-CR (2d) 4-71, provides as follows:*

*In determining whether a person found guilty of murder in the first degree shall be punished by death, imprisonment for life without the possibility of parole, or imprisonment for life with the possibility of parole, you are required to give individualized consideration to the defendant's degree of participation and focus on the defendant's individual culpability in the killing.*

*You are further instructed that you may not impose the death penalty unless you determine beyond a reasonable doubt that the defendant either: 1) killed a person, 2) attempted to kill a person, 3) intended a killing to take place, 4) intended the use of deadly force, or 5) was a major participant in the felony committed and was recklessly indifferent to human life.*

does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed." In <u>Tison</u>, 481 U.S. at 158, the Supreme Court found that <u>Enmund's</u> culpability requirement is satisfied where the defendant was a major participant in the felony committed and acted with reckless indifference to human life. <u>See</u> <u>Banks v. Workman</u>, 692 F.3d 1133, 1141 (10th Cir. 2012) (<u>Tison</u> is "clear that capital punishment for felony murder charges is both constitutional and not infrequently imposed when the defendant was present during the murder and acted with reckless disregard for human life"); <u>Wilson v. Sirmons</u>, 536 F.3d 1064, 1107 (10th Cir. 2008) ("Under <u>Enmund</u> and its progeny, when the defendant did not himself strike the blows that killed the victim, in order to be eligible for the death penalty he must either have intended to kill or have been a major participant in the felony who acted with a reckless indifference to human life."). Based on Zjaiton's testimony, petitioner argues that because there was conflicting evidence as to who killed Mr. Wipf, "[a] reasonable juror could have determined that [he] did not exhibit a reckless indifference to human life." Petition, p. 85.

In the first instance, if a defendant is the actual killer, then there is no <u>Enmund/Tison</u> issue. <u>See</u> <u>Harmon v. State</u>, 248 P.3d 918, 938 (Okla. Crim. App. 2011) (citing both Supreme Court and Oklahoma authority and acknowledging that "[t]he United States Supreme Court and [the OCCA] have held that the Eighth Amendment permits the execution of a defendant who actually perpetrated a killing during the commission of a felony"). Here, the state's evidence supported the conclusion that petitioner was the actual killer. The only evidence to the contrary was Zjaiton's testimony that he and Alex did it. However, since the

jury found petitioner guilty of felony murder, the jury clearly did not accept Zjaiton's testimony that petitioner had no involvement in the crimes. By rejecting Zjaiton's version of events, the jury in effect determined that petitioner and his brother were the two men who accosted the victims in the hotel room. Whether petitioner was, as the state's evidence showed, the one who actually stabbed Mr. Wipf, the evidence showed that both men burst into the motel room wearing black ski masks and gloves, that one had a knife and the other had a gun, and that both participated in the assault and robbery of the victims. So whether or not petitioner was the one who actually killed Mr. Wipf, there is no doubt that he was a major participant who acted in reckless disregard of human life. Accordingly, trial counsel was not ineffective for failing to request an Enmund/Tison instruction and the OCCA did not act unreasonably in denying this claim.

The final claim that petitioner contends his appellate counsel should have presented on direct appeal is trial counsel's failure to object to the prosecutor's arguments which he contends violated his right to remain silent. In Claim Two, supra, the court conducted a de novo review of the prosecutor's comments and concluded that no relief was warranted. Given the lack of merit to the underlying claim, trial counsel cannot be deemed ineffective for failing to object, appellate counsel cannot be found ineffective for failing to raise the argument, and the decision of the OCCA rejecting this claim cannot be judged unreasonable so as to warrant AEDPA relief. Hanson, 797 F.3d at 837, 839 (refusing to analyze a petitioner's ineffectiveness claim based on trial counsel's failure to object to instances of prosecutorial misconduct where the underlying instances of alleged misconduct were without

merit).  See Freeman v. Attorney General, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim . . . ."); Snow, 474 F.3d at 724-25 (trial counsel was not ineffective for failing to object to certain evidence that the OCCA found admissible); Spears v. Mullin, 343 F.3d 1215, 1249 (10th Cir. 2003) (trial counsel was not ineffective for failing to object to the giving of a flight instruction where the OCCA found that sufficient evidence supported the giving of the instruction).

Petitioner also claims that his appellate counsel was ineffective at the state court evidentiary hearing and in the supplemental briefing which followed.  In particular, petitioner argues that his appellate counsel was ineffective for failing (1) to discredit the testimony of petitioner's father, Mr. Gross; (2) to use information with respect to his trial counsel; and (3) to raise certain issues in the supplemental brief.  Petition, pp. 87-89.  Petitioner asserts that the court should not give deference to the OCCA's decision because the OCCA unreasonably applied Strickland.  Petitioner argues that although the OCCA reviewed the merit of each of his claims under Strickland, he faults the OCCA for not addressing the cumulative nature of the errors in conducting its prejudice assessment.[38]  Petition, pp. 86-87.

---

[38] *Petitioner raised an expansive appellate counsel ineffectiveness claim in his first post-conviction application.  The OCCA addressed each claim in detail, guided by the principles set forth in* Strickland.  Wood, *No. PCD-2005-143, slip op. at 8-18.  In* Strickland, *the Supreme Court offered the following guidance with respect to the prejudice analysis:*

> *In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.  Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.  Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.  Moreover, a*

Petitioner argues that "[t]he resultant prejudice is apparent" because appellate counsel's failures affected the trial court's credibility determinations of both Mr. Gross and petitioner's trial counsel, and had appellate counsel not made these errors, petitioner asserts that "the OCCA would have likely granted relief." Petition, pp. 89-90. For the reasons set forth below, the court concludes that the OCCA did not unreasonably apply Strickland.

Petitioner faults his appellate counsel for not discrediting his father when he testified at the evidentiary hearing. He argues that appellate counsel should have used certain records, including divorce records, criminal records, protective orders, and medical records to show that his father abused his mother more than he was willing to admit at the evidentiary hearing. Petition, pp. 87-89. In denying petitioner relief on this claim, the OCCA held as follows:

> [Petitioner] also claims appellate counsel failed to present evidence at the evidentiary hearing in support of [petitioner's] claim that his father, Raymond Gross, Jr., was abusive to his wife and children. [Petitioner] contends appellate counsel should have used documents related to

---

*verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.*

*Strickland, 466 U.S. at 695-96. As this paragraph in Strickland makes clear, every ineffectiveness claim inherently involves consideration of the totality of the circumstances–what was done, what could have been done, and whether what could have been done rises to the level of undermining the court's confidence in the proceeding. The court is convinced by the OCCA's analysis that this consideration was given, and the court declines to conclude, as petitioner contends, that the OCCA unreasonably applied Strickland by failing to add a supplementary, conclusory paragraph with further elaboration on the cumulative effect of non-prejudicial errors.*

[petitioner's] parents' divorce and to Gross' criminal conviction for feloniously pointing a weapon at [petitioner's] mother to corroborate [petitioner's] mother's testimony of abuse and to discredit Gross' testimony.

The documents [petitioner] provides now and claims should have been used at the evidentiary hearing are insufficient to convince us that appellate counsel was ineffective. The divorce petition filed by [petitioner's] mother contained nothing more than allegations that Ms. Wood was seeking a divorce in part because of Mr. Gross' "extreme cruelty" and stated that he was a "violent man." The divorce decree shows the divorce was granted on the grounds of incompatibility; it notes only that Ms. Wood was entitled to a permanent restraining order against Gross without listing any facts or reasons for the provision. Ms. Wood's requests for protective orders offer no proof that abuse occurred as they memorialize only her allegations in support of her petition. The fact that emergency protective orders were issued is of little consequence since such orders are routinely issued upon complaints; the orders were rendered practically meaningless here because all were later dismissed for failure to prosecute. We fail to see how the allegations of abuse contained in these documents would have bolstered Ms. Wood's testimony or changed the trial court's findings of fact or the outcome of the evidentiary hearing.

Wood, No. PCD-2005-143, slip op. at 12-13.

Petitioner has not shown that this determination by the OCCA was unreasonable. In the first instance, petitioner urges relief based in part on information which was not presented to the OCCA in its determination of this claim, including affidavits from his appellate counsel (Petitioner's Exhibits 10 and 11), Ms. Wood's medical records (Petitioner's Exhibits 21 and 22), and additional criminal records for Mr. Gross (Petitioner's Exhibit 30). Consideration of these exhibits is prohibited by Pinholster, 131 S.Ct. at 1398. Reviewing the OCCA's ruling in light of the arguments and information before it, it was not unreasonable for the OCCA to characterize petitioner's new information as mere allegations. The information which petitioner presented to the OCCA showed only allegations, not judicially

determined facts, and in any event, the information was simply more of the same. On direct appeal, and following the evidentiary hearing, the OCCA ultimately denied petitioner relief on his ineffective assistance of trial counsel claim (Claim One) because it found that trial "[c]ounsel presented evidence concerning [petitioner's] . . . childhood growing up in an abusive (both physically and emotionally) household," and that petitioner's new information, the information he presented at the evidentiary hearing and faulted trial counsel for not utilizing in presentation of the mitigation case, was simply "further detail to support the mitigation evidence that [petitioner] . . . grew up in an abusive home. . . ." <u>Wood</u>, 158 P.3d at 481. The additional information petitioner later presented on post-conviction review went to this same issue–the abuse which petitioner was exposed to in the home. Therefore, even if trial counsel had utilized this additional information, it was not unreasonable for the OCCA to conclude that the outcome of the evidentiary hearing and its ultimate determination of petitioner's trial counsel ineffectiveness issue would not have been different.

Next, petitioner asserts that appellate counsel was ineffective for failing to advise the OCCA that trial counsel had been suspended from the practice of law in the weeks following the evidentiary hearing. Petitioner additionally claims that appellate counsel was ineffective at the evidentiary hearing by failing to make trial counsel's affidavit a part of the record and have trial counsel affirm the statements he made therein. However, petitioner makes no argument in support of these claims. Petitioner states only that appellate counsel had "no strategic reason for failing to do these things," and he supports this statement with affidavits

from appellate counsel which the court cannot consider.[39]  Petition, p. 89.  The OCCA addressed the merits of both of these claims, ultimately concluding (1) that petitioner had not shown that "trial counsel's subsequent personal and professional difficulties" affected its direct appeal determination "that trial counsel rendered effective assistance" and (2) that "[a]ppellate counsel did, in fact, put trial counsel's performance and the affidavit in issue." Wood, No. PCD-2005-143, slip op. at 3-6, 13.  Because petitioner has failed to demonstrate that the OCCA acted unreasonably in denying these claims, relief is denied.

Petitioner's final challenge to appellate counsel's representation relates to the supplemental brief filed after the evidentiary hearing.  With reference to Claim One, petitioner asserts that appellate counsel was ineffective for failing to raise "numerous inaccuracies from the district court's findings of fact."  Petitioner additionally contends that appellate counsel should have challenged the trial court's exclusion of his mitigation expert, Dr. Allen.  Petition, p. 89.  In denying both of these claims, the OCCA held as follows:

> [Petitioner] argues that appellate counsel was ineffective for failing to cite all of the factual inaccuracies he asserts exist in the trial court's findings of fact and conclusions of law. Appellate counsel filed a ten page supplemental brief after the evidentiary hearing in accordance with this Court's order remanding the case for evidentiary hearing.  Appellate counsel went through each question this Court asked the district court to consider and explained why the district court's findings and conclusions were wrong.  Appellate counsel outlined as many inconsistencies within the limitations imposed by the page constraint set by this Court allowed. [Petitioner] has not shown that appellate counsel's decision about what to include in his limited space was anything but a sound strategic decision.  We will not second-guess that decision.[FN8] See Hanson v. State, 2009 OK CR 13, ¶ 37, 206 P.3d 1020, 1032.

---

[39] *See n.23, supra.*

[FN8] We note that appellate counsel in the supplemental brief raised complaints that the trial court's finding that trial counsel had all the records was erroneous and that the trial court's findings concerning the testimony of a former juror was wrong.

[Petitioner] contends appellate counsel was ineffective for failing to raise a claim in the supplemental brief about the exclusion of the defense mitigation expert at the evidentiary hearing. [Petitioner] concedes that appellate counsel preserved the claim by admitting the expert's report for appeal, but argues he failed to present the claim in his brief and failed to "provide what she [the expert] would have testified to had she been allowed." As noted above, appellate counsel went through the questions the district court considered and addressed the district court's findings and conclusions. Appellate counsel chose to utilize the ten page limit to challenge the trial court's decision that counsel was effective with evidence presented at the hearing rather than attack the trial court's decision excluding his expert. This was a reasonable strategy. Furthermore, appellate counsel did provide this Court with the expert's findings by admitting the expert's report below. This claim, like [petitioner's] other claims, must fail, because he can show neither deficient performance nor prejudice.

Wood, No. PCD-2005-143, slip op. at 13-14.

Petitioner has failed to show that the OCCA acted unreasonably in denying relief on these claims. Here, petitioner has once again supported his claims with reference to an affidavit from appellate counsel (Petitioner's Exhibit 10) executed almost six years after the OCCA decided his first post-conviction application. In denying petitioner relief in 2005, the OCCA found that appellate counsel performed effectively within the limited pages permitted for a supplemental brief. The OCCA acknowledged that given the page restrictions, appellate counsel was required to make strategic decisions as to what matters would be included. Because appellate counsel filed a solid brief which addressed the subject matter of the evidentiary hearing, the OCCA could not fault appellate counsel for the strategy

employed. In claiming that the OCCA acted unreasonably, it is all too convenient for petitioner to rely upon a 2011 affidavit from appellate counsel in which appellate counsel denies having any strategic reason for failing to raise certain claims. This is the very reason why Pinholster prevents consideration of later-developed evidence. The OCCA decided petitioner's claims on the merits, and its decision is due appropriate deference, deference evaluated based "on what [the OCCA] knew and did." Pinholster, 131 S.Ct. at 1399. Because petitioner has failed to demonstrate that the OCCA acted unreasonably in denying these claims, relief is denied.

In conclusion, for the foregoing reasons, the court concludes that petitioner has not shown that the OCCA unreasonably denied his challenges to appellate counsel's performance on direct appeal, including his representation at the evidentiary hearing and the supplemental brief filed. Accordingly, petitioner's Claim Three is denied in its entirety.

### D. Claim Four: Aggravating Circumstances.

In Claim Four, petitioner challenges all three of the aggravating circumstances supporting his death sentence. In particular, petitioner contends that the instruction on the especially heinous, atrocious, or cruel (HAC) aggravator was inadequate, that the HAC aggravator and the great risk of death aggravator are not supported by sufficient evidence, and that the continuing threat aggravator is both unconstitutionally vague and overbroad. Petitioner presented all of these claims to the OCCA on direct appeal. The OCCA denied relief on the merits. Wood, 158 P.3d at 475-77. Petitioner asserts that the OCCA's resolution of these claims is both legally and factually unreasonable, and he requests de novo

review and relief. Respondent argues that AEDPA deference applies, and that in light of the stringent AEDPA standard, relief must be denied.

Regarding the HAC aggravator, the instruction given to the jury was in fact incomplete because it omitted the word "physical" from the defining language "serious physical abuse" (O.R. IV, 628). The OCCA acknowledged the trial court's error but found that relief was unwarranted "because the State's evidence, particularly the photographs, clearly showed that Wipf suffered serious physical abuse prior to his death." Wood, 158 P.3d at 476-77. In denying petitioner's insufficiency claim, the OCCA elaborated on this evidence as follows:

> Kleinsasser testified that while Zjaiton pointed a gun at his head and robbed him, [petitioner], armed with a knife, struggled with Wipf. Zjaiton later joined [petitioner] in the attack, and both men struggled with Wipf who was screaming. Just before Kleinsasser fled the room, the struggling men moved closer to him and he could see blood all over Wipf's body. He never saw Zjaiton and [petitioner] switch weapons. Photographs depicting Wipf's injuries from being beaten and stabbed were admitted. Wipf also had defensive wounds (cuts) on his hands, showing that he was consciously resisting his attackers by putting his hands up in an effort to ward off blows and knife jabs. The fatal stab wound penetrated five inches into Wipf's chest; he eventually died from blood loss caused by this wound. The evidence showed that both Zjaiton and [petitioner] struggled with Wifp [sic] individually and together. Any rational jury could find beyond a reasonable doubt that Wipf's death was preceded by serious physical abuse, while he was still conscious, and that [petitioner] inflicted a significant portion of the harm done to him.

Id. at 476 (footnote omitted). The OCCA's assessment of the presented evidence, and particularly the photographs, is more than reasonable, and in similar circumstances, the Tenth Circuit has denied habeas relief for this instructional misstatement of state law. See Turrentine v. Mullin, 390 F.3d 1181, 1195-96 (10th Cir. 2004) (noting that the omission of

the word "physical" was a violation of state law, but harmless under Eighth Amendment jurisprudence given the presented evidence); Miller, 354 F.3d at 1299-1301 (finding that even without the word "physical," the given instruction "still performed its required narrowing function and imposed restraint upon the sentencer"). Accordingly, relief is denied here as well.

When reviewing the sufficiency of evidence supporting an aggravating circumstance, the OCCA applies the standard of review set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979). Thus, the OCCA "reviews the evidence in the light most favorable to the State to determine if any rational trier of fact could have found the aggravating circumstance beyond a reasonable doubt." Wood, 158 P.3d at 476. Jackson applies on habeas review as well. Lewis v. Jeffers, 497 U.S. 764, 781 (1990). "Like findings of fact, state court findings of aggravating circumstances often require a sentencer to 'resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Id. at 782 (quoting Jackson, 443 U.S. at 319). Thus, the court "'must accept the jury's determination as long as it is within the bounds of reason.'" Lockett v. Trammel [sic], 711 F.3d 1218, 1243 (10th Cir. 2013) (quoting Boltz v. Mullin, 415 F.3d 1215, 1232 (10th Cir. 2005)). In addition to the deference afforded a jury's verdict, the AEDPA adds another layer of deference to the court's review of a sufficiency claim. See Hooks v. Workman, 689 F.3d 1148, 1166 (10th Cir. 2012) ("We call this standard of review 'deference squared.'") (citation omitted). When reviewing the evidentiary sufficiency of an aggravating

circumstance under <u>Jackson</u>, the court looks to Oklahoma substantive law to determine its defined application. <u>Hamilton v. Mullin</u>, 436 F.3d 1181, 1194 (10th Cir. 2006).

Petitioner asserts that both the HAC aggravator and the great risk of death aggravator lack sufficient constitutional evidence to stand. In addressing petitioner's challenge to the HAC aggravator, the OCCA noted as follows:

> This Court upholds a jury's finding of the "especially heinous, atrocious, or cruel" aggravating circumstance when it is supported by proof of conscious serious physical abuse or torture prior to death; evidence that a victim was conscious and aware of the attack supports a finding of this aggravator. <u>Davis</u>, 2004 OK CR 36, ¶ 39, 103 P.3d at 81; <u>Black v. State</u>, 2001 OK CR 5, ¶ 79, 21 P.3d 1047, 1074.

<u>Wood</u>, 158 P.3d at 476. The OCCA then listed the evidence supporting the aggravator (as set forth above), finding that the evidence supported the jury's verdict. <u>Id.</u> Petitioner's argument here is nothing more than what he argues with respect to the HAC instruction, and because it is abundantly clear that Mr. Wipf suffered much more than a single stab wound, the court concludes that the OCCA's resolution of this claim was likewise reasonable, both legally and factually.

Regarding the great risk of death aggravator, the court reaches the same conclusion. In denying this claim on direct appeal, the OCCA stated as follows:

> To determine if a defendant knowingly created a great risk of death to more than one person, this Court reviews the evidence to determine if the defendant's conduct endangered someone other than the deceased in close proximity, in terms of time, location, and intent to the murder. <u>Harris</u>, 2004 OK CR 1, ¶ 53, 84 P.3d at 751; <u>Matthews</u>, 2002 OK CR 16, ¶ 45, 45 P.3d at 922. Liability for this aggravating circumstance can attach for a co-defendant's act that a defendant has aided and abetted. <u>Matthews</u>, 2002 OK

CR 16, ¶ 45, 45 P.3d at 922. Under these standards, the evidence here was sufficient.

> [Petitioner] and Zjaiton conspired to rob at knifepoint and gunpoint Wipf and Kleinsasser. When Wipf opened the door of the motel room, [petitioner] and Zjaiton rushed in and confronted their victims. Zjaiton pointed his gun at Kleinsasser's head and took his money. Wipf resisted and struggled with [petitioner] by the sink, fending off blows and knife jabs. When Zjaiton joined [petitioner] in the struggle with Wipf, [petitioner] told Zjaiton to shoot Wipf. Shortly thereafter Kleinsasser heard a gunshot and smelled burning gunpowder. [Petitioner] then confronted Kleinsasser and hit him on the head with the knife when he produced an empty wallet. The struggle with Wipf occurred only a few feet from Kleinsasser in the small motel room. Any rational jury could have found that [petitioner] and Zjaiton's conduct during the robbery and murder put Kleinsasser at great risk of death. This claim is denied.

Wood, 158 P.3d at 477. Petitioner argues that this decision is unreasonable because Mr. Kleinsasser did not suffer any injuries. Petitioner additionally contends that because the motel room had a partial partitioning wall between the beds and the bathroom sink, Mr. Kleinsasser was never in any real danger from the struggle which ensued among Mr. Wipf and the Wood brothers. Petition, pp. 94-96. Petitioner's arguments fall far short of demonstrating that the OCCA acted unreasonably in its determination of this claim. As noted in the OCCA's opinion, the aggravator is supported if petitioner's "conduct endangered someone other than the deceased in close proximity, in terms of time, location, and intent to the murder." Wood, 158 P.3d at 477. As the facts relied upon by the OCCA clearly demonstrate, the Wood brothers accosted both Mr. Wipf and Mr. Kleinsasser within the confines of a small motel room, and Mr. Kleinsasser was "endangered" because he was "in close proximity, in terms of time, location, and intent to the murder" of Mr. Wipf. Even

if this claim lacked the layers of deference afforded to it, the court would nevertheless conclude that relief was unwarranted. It therefore follows that when appropriate deference is given, denial of petitioner's claim is a foregone conclusion.

Petitioner's final challenge to the aggravating circumstances is to the constitutionality of the continuing threat aggravator. Although petitioner acknowledges that the Tenth Circuit has upheld its constitutionality, petitioner nevertheless asserts that it is both overbroad and vague. Petition, pp. 96-97. The OCCA rejected the merits of this claim on direct appeal. Wood, 158 P.3d at 475.

In order to satisfy the Eighth Amendment, an aggravating circumstance must meet two requirements: (1) it may not apply to every defendant convicted of murder; and (2) it may not be unconstitutionally vague. Tuilaepa v. California, 512 U.S. 967, 972 (1994). In petitioner's case, the jury was instructed that the continuing threat aggravating circumstance required a finding beyond a reasonable doubt "that [petitioner's] behavior has demonstrated a threat to society" and "a probability that this threat will continue to exist in the future" (O.R. IV, 629). Petitioner has not shown that this aggravating circumstance violates the Tuilaepa standard for constitutionality, and given that the Tenth Circuit has repeatedly upheld this aggravating circumstance in light of numerous constitutional challenges, the court concludes that relief must be denied. See Wilson v. Sirmons, 536 F.3d at 1109 ("We have repeatedly upheld the constitutionality of this aggravator."); Brown v. Sirmons, 515 F.3d at 1092 ("We have repeatedly upheld the constitutionality of this aggravating factor, finding it neither unconstitutionally vague nor overbroad."); Sallahdin v. Gibson, 275 F.3d 1211,

1232 (10th Cir. 2002) ("Tenth Circuit precedent forecloses [petitioner's] argument that Oklahoma's application of the continuing threat aggravator is unconstitutional."); Medlock v. Ward, 200 F.3d 1314, 1319 (10th Cir. 2000) ("Our Circuit has repeatedly upheld the facial constitutionality of [the continuing threat aggravator] as 'narrowed' by the State of Oklahoma, and we are bound by that body of precedent.").

Petitioner's Claim Four is denied in its entirety.

### E. Petitioner's Remaining Claims (Claims Five Through Ten).

In Claims Five through Ten, petitioner raises claims which, at the time of filing his petition, had not been presented to the OCCA. In Claim Five, petitioner asserts that the trial court impermissibly coerced the jury to return a death sentence. Petition, pp. 97-100. In Claim Six, petitioner alleges that his trial counsel was ineffective for failing to challenge the medical examiner's testimony. Petition, pp. 100-03. In Claim Seven, petitioner claims he was denied due process at the state court evidentiary hearing because the prosecution withheld certain records and created "a materially false impression." Petition, pp. 103-05. In Claim Eight, petitioner alleges that his counsel in his first post-conviction proceeding was ineffective. Petition, pp. 105-08. In Claim Nine, petitioner presents an additional claim that he was denied due process at the state court evidentiary hearing based on the "defensive testimony" given by his trial counsel at the hearing. Petition, pp. 108-10. In Claim Ten, petitioner alleges a violation of Brady v. Maryland, 373 U.S. 83 (1963), related to the prosecution's failure to disclose certain evidence regarding Ms. Warden, his co-defendant and state's witness. Petition, p. 110. In the week following the filing of his petition,

petitioner returned to state court and filed a second application for post-conviction relief containing these claims. With the exception of Claim Eight, the OCCA declined to address the merits of these claims because it concluded that they all could have been raised on direct appeal or in petitioner's first post-conviction application. Wood, No. PCD-2011-590, slip op. at 3-8. With the exception of Claim Eight, which respondent asserts fails to state a claim upon which federal habeas corpus relief may be granted, respondent argues for the application of a procedural bar to petitioner's remaining claims. Response, pp. 101-17.

In his reply, petitioner asserts that the claims should not be procedurally barred because the procedural rule applied by the OCCA, Okla. Stat. tit. 22, § 1089(D)(8), is neither adequate nor independent. Reply, pp. 20-21.[40] Petitioner additionally contends that (1) with respect to Claim Six, his default should be excused based on the ineffectiveness of his appellate counsel and first post-conviction counsel, and (2) with respect to Claims Seven and Ten, his default should be excused due to prosecutorial misconduct. Reply, pp. 22-23. Regarding Claim Eight, petitioner, with reference to the Supreme Court's decision in Martinez v. Ryan, 566 U.S. ___, 132 S.Ct. 1309 (2012), argues that this court should address the merits of his post-conviction counsel ineffectiveness claim. Reply, pp. 24-25. For the reasons set forth below, the court concludes that the merits of petitioner's Claims Five, Six,

---

[40] *In a footnote, petitioner, with reference to* Sawyer v. Whitley, *505 U. S. 333 (1992), states that he "may also alleviate a procedural default by demonstrating a miscarriage of justice." Reply, p. 20 n.23. However, because petitioner makes absolutely no argument in support of this bare statement, the court concludes that it is insufficient to raise the miscarriage of justice exception to the application of a procedural bar to his claims.*

Seven, Nine, and Ten are procedurally barred from review and that petitioner's Claim Eight fails to state a claim for which this court can grant relief.

In declining to address the merits of petitioner's Claims Five, Six, Seven, Nine, and Ten, the OCCA, referencing Section 1089(D)(8), found that these claims were not among the "[f]ew issues [that] may be reviewed in a subsequent post-conviction application." Because these claims "could have been raised either on direct appeal or in [petitioner's] original application for post-conviction relief[,]" the OCCA determined that they were waived. The OCCA held as follows:

> The law favors the legal principle of finality of judgment and [petitioner] has not shown that his claims are reviewable at this time. The information contained in the affidavits in support of [petitioner's] claims was discoverable through the exercise of reasonable diligence well before now. Under our rules, [petitioner's] claims are procedurally barred.

Wood, No. PCD-2011-590, slip op. at 2-4.

When a state court applies a state procedural rule to preclude merits consideration of a claim, a federal habeas court will follow suit if the rule is one which "is independent of the federal question and adequate to support the judgment." Coleman, 501 U.S. at 729. "To be independent, the procedural ground must be based solely on state law." Thacker v. Workman, 678 F.3d 820, 835 (10th Cir. 2012) (citing English v. Cody, 146 F.3d 1257, 1259 (10th Cir. 1998)). "To be adequate, the procedural ground 'must be strictly or regularly followed and applied evenhandedly to all similar claims.'" Thacker, 678 F.3d at 835 (quoting Sherrill v. Hargett, 184 F.3d 1172, 1174 (10th Cir. 1999)).

Although the Tenth Circuit has repeatedly recognized the OCCA's application of a procedural bar to claims which could have been raised in an initial post-conviction application but were not,[41] its validity has been questioned in recent years, as petitioner has asserted in this case, based on the OCCA's decision in Valdez v. State, 46 P.3d 703 (Okla. Crim. App. 2002), and subsequent cases in which the OCCA has reached the merits of certain claims raised in subsequent post-conviction applications. The Tenth Circuit has determined, however, that despite the OCCA's decision in Valdez and its application of Valdez in post-conviction review, the procedural rule applied by the OCCA to bar claims which could have been raised in a petitioner's first post-conviction remains both adequate and independent. Fairchild v. Trammell, 784 F.3d 702, 719 (10th Cir. 2015) (acknowledging the independence of the rule); Williams v. Trammell, 782 F.3d 1184, 1213-14 (10th Cir. 2015) (acknowledging the adequacy and independence of the rule); Black v. Tramwell [sic], 485 F. App'x 335, 335-37 (10th Cir. 2012) (rejecting an independence challenge and reaffirming the adequacy of the rule, following certification of a question to the OCCA); Banks, 692 F.3d at 1144-47 (rejecting a challenge to the adequacy and independence of the rule); Black v. Workman, 682 F.3d at 914, 916-19 (rejecting an adequacy challenge to the rule and certifying a question to the OCCA regarding independence of the rule); Thacker, 678 F.3d at 834-36 (finding the rule both independent and adequate); Spears, 343 F.3d at 1254-55 (addressing the adequacy of the rule). In light of this circuit precedent, the court

---

[41] *See Bland, 459 F.3d at 1012; Medlock, 200 F.3d at 1323; Smallwood v. Gibson, 191 F.3d 1257, 1267 (10th Cir. 1999); Moore v. Reynolds, 153 F.3d 1086, 1096-97 (10th Cir. 1998).*

rejects petitioner's challenges to the OCCA's application of Section 1089(D)(8) to bar merits review of his Claims Five, Six, Seven, Nine, and Ten.

Because the OCCA's application of Section 1089(D)(8) is both adequate and independent, the court cannot consider the merits of petitioner's Claims Five, Six, Seven, Nine, and Ten unless petitioner can satisfy an exception. Petitioner may overcome the application of a procedural bar to these claims if he can show either cause and prejudice or a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. As previously noted, see n.40, supra, petitioner has failed to sufficiently plead the fundamental miscarriage of justice exception. In addition, with respect to his Claims Five and Nine, petitioner has not asserted any cause to excuse his default of these claims.[42] Failing to satisfy an exception to the application of a procedural bar to these claims, the court concludes that Claims Five and Nine are procedurally barred. With respect to his Claims Six, Seven, and Ten, petitioner has made cause allegations. However, for the following reasons, the court nevertheless concludes that these claims are procedurally barred as well.

The cause and prejudice exception requires petitioner to demonstrate that some external objective factor, unattributable to him, prevented his compliance with the procedural rule in question. Spears, 343 F.3d at 1255. Petitioner must also show that the failure resulted in actual prejudice. Thornburg v. Mullin, 422 F.3d 1113, 1141 (10th Cir. 2005).

---

[42] *In his reply, pp. 21-22, petitioner argues against respondent's assertion that he has failed to demonstrate prejudice with respect to his Claim Five, but he makes no argument for cause. With respect to Claim Nine, petitioner makes no attempt in his reply to satisfy the cause and prejudice exception.*

As noted above, petitioner's sixth claim is a trial counsel ineffectiveness claim concerning trial counsel's failure to challenge the medical examiner's testimony.[43] In an effort to excuse his failure to present it in his first post-conviction application, petitioner blames both his appellate counsel and his first post-conviction counsel. Reply, p. 22. However, ineffective assistance of appellate counsel does not excuse petitioner's failure to present his Claim Six in his first post-conviction application, and post-conviction counsel ineffectiveness cannot serve as cause. Coleman, 501 U.S. at 752 (because there is no constitutional right to representation in state post-conviction proceedings, a petitioner "'bear[s] the risk of attorney error that results in a procedural default'") (citation omitted); Spears, 343 F.3d at 1255 (citing 28 U.S.C. § 2254(i), Coleman, and Smallwood, 191 F.3d at 1269, for the proposition that "ineffective representation in state post-conviction proceedings is inadequate to excuse a procedural default"); Thomas v. Gibson, 218 F.3d 1213, 1222 (10th

---

[43] *In his reply, pp. 22-23, petitioner attempts to recast his Claim Six as a claim alleging appellate counsel ineffectiveness as well. The claim pled in his petition, however, is one against his trial counsel only. It contains no mention of appellate counsel. Petition, pp. 100-03. The court notes that in his Claim Three petitioner asserts that his appellate counsel was ineffective for failing to raise four trial counsel ineffectiveness claims on direct appeal, but the specific trial counsel ineffectiveness claim pled in his Claim Six is not included therein. Petition, pp. 80-86. The court additionally notes that in his Claim Eight petitioner alleges that his first post-conviction counsel "failed to assert trial and appellate IAC failure to hire a forensic pathologist to challenge the autopsy findings[,]" and as a footnote to this allegation, petitioner states that he is "incorporat[ing] . . . a claim of appellate IAC in failing to raise this claim during his appeal." Petition, p. 107 & n. 86. However, this footnote is insufficient to raise a freestanding claim of appellate counsel ineffectiveness based on trial counsel's failure to hire an expert to challenge the medical examiner's testimony. For all of these reasons, the court concludes that petitioner has not sufficiently pled, in his Claim Six or elsewhere in his petition, a claim that appellate counsel was ineffective for failing to raise a trial counsel ineffectiveness claim based on trial counsel's failure to challenge the medical examiner's testimony.*

Cir. 2000) (relying on "well-established Supreme Court precedent" to reject an allegation of cause based upon post-conviction counsel's representation).[44]  Because petitioner has not demonstrated sufficient cause and prejudice to overcome the imposition of a procedural bar to his Claim Six, the court concludes that this claim is procedurally barred.

As noted above, petitioner's Claim Seven relates to the state court evidentiary hearing held on his trial counsel ineffectiveness claim.  Petitioner asserts a prosecutorial misconduct claim based on the state's failure to disclose certain medical records (of his mother) and certain criminal records (of his father) relating to the domestic abuse suffered by his mother (Petitioner's Exhibits 21, 22, and 30).  In addition to the state failing to disclose these records, petitioner alleges that because the prosecution possessed this information, its cross-examination of witnesses on the subject of his mother's abuse was misleading.  Petition, pp. 104-05.  In Claim Ten, petitioner asserts that the state may have had a deal with state's witness and co-defendant Ms. Warden that it did not disclose.[45]  Petitioner, with reference to a deferred sentence Ms. Warden received in another county, notes that even though Ms. Warden was on probation when she participated with petitioner in the crimes against Mr. Wipf and Mr. Kleinsasser, she was never prosecuted for this probation violation.

---

[44] *This remains unchanged by the Supreme Court's decisions in* <u>Trevino v. Thaler</u>, *569 U.S. ___, 133 S.Ct. 1911 (2013), and* <u>Martinez v. Ryan</u>, *132 S.Ct. 1309 (2012).* <u>Fairchild</u>, *784 F.3d at 719-23;* <u>Banks</u>, *692 F.3d at 1147-48.*

[45] *The court notes that Ms. Warden's deal with the state for her participation in the crimes against Mr. Wipf and Mr. Kleinsasser was disclosed during her testimony. Charged as a co-defendant, Ms. Warden agreed to testify truthfully in exchange for pleading guilty to accessory to murder after the fact and conspiracy to commit a felony.  Her plea resulted in a 45-year sentence (J.Tr. 4/1/04, 131-32).*

Petition, p. 110.  Citing <u>Scott v. Mullin</u>, 303 F.3d 1222, 1227-30 (10th Cir. 2002), petitioner asserts that due to the prosecution's misconduct, he could not have raised these claims in his first post-conviction application.  Reply, p. 23.

In <u>Scott</u>, the Tenth Circuit found that the petitioner had demonstrated sufficient cause and prejudice to overcome the imposition of a procedural bar to his <u>Brady</u> claim because the state failed to disclose information obtained by police investigators prior to trial regarding admissions by another person that he (and not Scott) had committed the murder for which Scott had been charged.  Because this evidence was suppressed by the state, and because Scott did not discover it until he was preparing his first post-conviction application, Scott had no knowledge of it at the time of his direct appeal.  Because Scott raised the claim in his first post-conviction application, his first opportunity to do so, his failure to raise the claim on direct appeal was therefore excused.  <u>Scott</u>, 303 F.3d at 1226-30.

Unlike <u>Scott</u>, petitioner has not shown that the prosecutor's actions prevented him from raising Claims Seven and Ten in his first post-conviction application.  First, in his petition, petitioner himself asserts that both his appellate counsel and his post-conviction counsel were at fault for not obtaining his mother's medical records and his father's criminal records.  Petition, pp. 88 & n.73 and 106.  By faulting his counsel in this regard, petitioner concedes that these records could have been previously discovered.  Second, at the state court evidentiary hearing held during the pendency of petitioner's direct appeal, petitioner's

investigator testified regarding her efforts to obtain Ms. Wood's medical records[46] and criminal records relating to Mr. Gross.[47] Although she was unsuccessful in obtaining all of the records she politely requested by letter, she acknowledged that she could have obtained the records via subpoena power once the case was remanded for the evidentiary hearing (E.H. Tr. 2/27/06, 309-10, 320-21, 325-26). The investigator's testimony reveals that the relevance of these records was known at the time of petitioner's direct appeal and that petitioner had the ability to obtain all of the relevant information via subpoena power. And finally, because petitioner raised similar claims based on similar records in his first post-conviction application, it is clear that petitioner could have presented his Claims Seven and Ten in his first post-conviction application.[48] Petitioner having failed to demonstrate cause for the default of his Claims Seven and Ten, the claims are procedurally barred.

With respect to Claim Eight, respondent is correct that this court cannot grant relief on the ground that post-conviction counsel was ineffective. Section 2254(i) plainly states that "[t]he ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under

---

[46] *The investigator obtained a medical release from Ms. Wood (E.H. Tr. 2/27/06, 325-26).*

[47] *The investigator admitted that she did not search the public court records for this information (E.H. Tr. 2/27/06, 310).*

[48] *In his first post-conviction application, petitioner claimed that his appellate counsel was ineffective at the state court evidentiary hearing because he failed to (1) investigate Mr. Gross's criminal background; (2) request records detailing the abuse Ms. Wood suffered; and (3) present evidence regarding Ms. Warden's Payne County conviction. Amended Application for Post-Conviction Relief - Death Penalty Case, Case No. PCD-05-143, pp. 11-15, 25-26 and Exhibits 12A-C, 15, 19A-C, and 21.*

section 2254[,]" and in <u>Coleman</u>, 501 U.S. at 752, the Supreme Court expressly acknowledged that

> [t]here is no constitutional right to an attorney in state post-conviction proceedings. <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); <u>Murray v. Giarratano</u>, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. <u>See</u> <u>Wainwright v. Torna</u>, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982) (where there is no constitutional right to counsel there can be no deprivation of effective assistance).

Contrary to the argument of petitioner, the Supreme Court's decision in <u>Martinez</u> does not affect the application of Section 2254(i) or <u>Coleman</u> to his Claim Eight. In <u>Martinez</u>, the Supreme Court clearly acknowledged the limited nature of its holding. <u>Martinez</u> is not "[a] constitutional ruling [providing] defendants a freestanding constitutional claim to raise[,]" and with the exception of the limited equitable ruling it delineates, "[t]he rule of <u>Coleman</u> governs in all" other respects. <u>Martinez</u>, 132 S.Ct. at 1319-20. In addition, the fact that Oklahoma recognizes the right to effective counsel in post-conviction proceedings is without consequence. Oklahoma's extension of the right to counsel to post-conviction proceedings does not implicate federal law, <u>see</u> <u>Mills v. Rogers</u>, 457 U.S. 291, 300 (1982) ("Within our federal system the substantive rights provided by the Federal Constitution define only a minimum. State law may recognize liberty interests more extensive than those independently protected by the Federal Constitution."); <u>Livingston v. Kansas</u>, 407 F. App'x 267, 273-74 (10th Cir. 2010) (rejecting a petitioner's contention that federal law is implicated when a state recognizes the right to effective assistance of counsel in post-conviction proceedings),

and Section 2254 "exists to correct violations of the United States Constitution, not errors of state law." Thomas, 218 F.3d at 1222.

In summary, for the reasons set forth above, the court concludes that petitioner's Claims Five, Six, Seven, Nine, and Ten are procedurally barred, and his Claim Eight is denied because it does not state a claim for which federal habeas relief may be granted.

## V. Request for an Evidentiary Hearing.

Petitioner has requested an evidentiary hearing on eight of his ten claims. Doc. 49. However, for the following reasons, the court concludes that an evidentiary hearing is unwarranted. First, petitioner is not entitled to an evidentiary hearing on claims which this court has denied relief pursuant to Section 2254(d) because those claims are reviewed in light of the record before the OCCA. Pinholster, 131 S.Ct. at 1400 ("evidence introduced in federal court has no bearing on § 2254(d)(1) review"); Schriro, 550 U.S. at 474 ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Accordingly, petitioner is not entitled to a hearing on his Claims One and Three. Second, there is no need to hold an evidentiary hearing on claims which can be determined from the existing record. "The purpose of an evidentiary hearing is to resolve conflicting evidence." Anderson v. Attorney General of Kansas, 425 F.3d 853, 860 (10th Cir. 2005). If there is no conflict, or if the claim can be resolved on the record before the Court, then an evidentiary hearing is unnecessary. Id. at 859. The court has concluded that petitioner's Claims Five, Six, Seven, Nine, and Ten are all procedurally barred. The court's conclusion that the procedural rule

applied by the OCCA is both adequate and independent and that petitioner has failed to demonstrate sufficient cause to overcome its application is readily determinable from the existing record. See McCleskey v. Zant, 499 U.S. 467, 494 (1991) ("The petitioner's opportunity to meet the burden of cause and prejudice will not include an evidentiary hearing if the district court determines as a matter of law that petitioner cannot satisfy the standard."). And finally, petitioner's Claim Eight fails to state a federal claim for which relief can be granted. This is purely a legal determination for which an evidentiary hearing would serve no purpose.

## VI. Conclusion.

Having rejected petitioner's grounds for relief, his petition for a writ of habeas corpus is **DENIED**, along with his request for an evidentiary hearing. Docs. 35 and 49. Judgment will enter accordingly.

**IT IS SO ORDERED**.

Dated this 30th day of October, 2015.

JOE HEATON
UNITED STATES DISTRICT JUDGE